**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

JOHN COOPER, ILYA BIRMAN, and
YOSEF BEN ZEV, Individually and on Behalf
of All Others Similarly Situated,

                       Plaintiffs,

        vs.

AMERICAN HONDA MOTOR CO., INC.,

                  Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    JURISDICTION AND VENUE ......................................................................... 4

III.   PARTIES ............................................................................................................ 5

   A. Plaintiffs ........................................................................................................ 5

   B. Defendant ....................................................................................................... 9

IV.    SUBSTANTIVE ALLEGATIONS ................................................................. 12

   A. Honda's History of Emphasizing the Quality and Reliability of Its Vehicles ...................... 12

   B. Honda's Idle Stop System and the Engine Defect ...................................... 21

   C. The Class Vehicles Sold by Honda Suffer from the Engine Defect. .................... 24

   D. Honda Knew that the Class Vehicles Suffered from the Defect Prior to Its Sale of the Class Vehicles. ................................................................................................ 55

   E. Honda Breached the Express Warranties Covering the Class Vehicles. .................... 70

V.     FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS ................. 72

VI.    TOLLING OF STATUTES OF LIMITATIONS ............................................ 74

   A. Discovery Rule ............................................................................................ 74

   B. Fraudulent Concealment ............................................................................. 74

   C. Estoppel ....................................................................................................... 75

VII.   CLASS ALLEGATIONS ................................................................................ 75

VIII.  CAUSES OF ACTION .................................................................................... 78

       Count One: Violation of The Magnuson-Moss Warranty Act ....................... 78

       Count Two: Breach of Express Warranty (UCC § 2-313) ............................ 78

       Count Three: Breach of Implied Warranty of Merchantability (UCC § 2-314) ........... 83

       Count Four: Unjust Enrichment ................................................................... 85

       Count Five: Fraudulent Concealment .......................................................... 86

       Count Six: Violation of the California Consumer Legal Remedies Act ....................... 89

       Count Seven: Violation of the California Unfair Competition Law ............................ 92

       Count Eight: Violation of the California False Advertising Law ................................ 94

       Count Nine: Breach of Express Warranty (CAL. COM. CODE §§2313, 10210) ............ 96

       Count Ten: Breach of Implied Warranty of Merchantability (CAL. COM. CODE §§ 2314, 10212) ................................................................................................ 99

       Count Eleven: Breach of Express Warranty (810 LL. COMP. STAT. 5/2-313, 810 LL. COMP. STAT. 5/2A-210) ............................................................................. 101

Page

Count Twelve: Breach of Implied Warranty Or Merchantability (810 ILL. COMP. STAT. 5/2-314, 810 LL. COMP. STAT.  5/2A-212) ................................................................. 103

Count Thirteen: Breach of the Illinois Consumer Fraud & Deceptive Business Practices Act ........................................................................................................ 106

Count Fourteen: Breach of the Illinois Consumer Fraud & Deceptive Business Practices Act ........................................................................................................ 107

IX.  PRAYER FOR RELIEF ................................................................. 108

X.   DEMAND FOR JURY TRIAL ......................................................... 109

Plaintiffs John Cooper, Ilya Birman, and Yosef Ben Zev (collectively, "Plaintiffs"), individually and on behalf of all those similarly situated, file this proposed class action suit against Defendant American Honda Motor Company, Inc. ("Honda," or "Defendant"), based upon their personal knowledge as to facts specific to each of them in an individual capacity, respectively, and based upon the investigation of counsel in all other respects, and allege as follows:

## I.    INTRODUCTION

1.      Honda markets its vehicles in a manner to convince consumers that they are buying a product of the highest quality and made with the utmost care and, most importantly, that will be dependable. Honda has actively concealed, however, that multiple vehicle models suffer from a latent defect which results in the failure of the vehicles' essential purpose: to maintain reliable engine power and safely transport passengers. The Class Vehicles[1] are 2018-2020 model year ("MY") Honda Odyssey, 2016-2020MY Honda Pilot, 2019-2020MY Honda Passport, 2015-2020MY Acura TLX, and 2015-2020MY Acura MDX vehicles equipped with the Idle Stop system (also referred to as "Auto Start/Stop" or "Auto Idle-stop"), and each Class Vehicle was delivered to consumers with an identical and inherent defect in the Class Vehicle's design and/or manufacturing process.

2.      The Idle Stop system is a feature marketed by Honda as "enhanc[ing] fuel efficiency" by eliminating wasteful fuel consumption.[2] Honda claims that the Idle Stop feature works as follows: "When the vehicle brakes to a stop for at least two seconds—such as at a traffic light—the engine automatically shuts off to save fuel. When the driver releases the brake pedal, the engine starts back up by itself." There is just one major problem: the Idle Stop feature does not function as it is described by Honda and consistently places drivers in dangerous situations while in traffic.

---

[1] Plaintiffs reserve the right to amend their definition of Class Vehicles to include additional vehicles with the same inherent defect.

[2] https://www.hondainfocenter.com/2020/Odyssey/Feature-Guide/Engine-Chassis-Features/Idle-Stop-System/ (last accessed Sept. 20, 2022).

3.     Each Class Vehicle suffers from a safety defect that causes the Idle Stop feature to suddenly, without any warning, fail to restart the engine after the feature automatically turns off the engine at red stoplights and other momentary stops (the "Engine Defect"). Although the Idle Stop feature is designed to restart after the driver releases pressure on the brake pedal, since at least 2015, scores of drivers have reported incidents where their Class Vehicles stalled and left them unable to move at intersections and highway entrances.

4.     The seriousness of the safety risks created by the undisclosed Engine Defect cannot be overstated. As detailed in the scores of customer complaints detailed below, the Defect has left drivers stranded in their stalled vehicles in the middle of oncoming traffic. One driver reported that after the Idle Stop engaged and they removed their foot from the brake the "Honda Pilot stalled in the middle of an intersection, waiting to turn left, of a busy main highway, with my husband and young children inside."[3] The driver warned that "this car has placed myself and my family in danger now on multiple occasions." Drivers have also reported that it takes multiple attempts to restart the vehicle after stalling, which can take up to fifteen minutes.[4]

5.     Honda knew, and/or was on notice of the fact, that its Class Vehicles suffered from the Engine Defect even before commencing sales. Honda is experienced (and touts itself as such) in the design and manufacture of consumer vehicles and conducts extensive pre-sale tests on all of its components, including the Idle Stop feature, to verify the vehicle is free from defects and complies with its specifications.

6.     Honda also has access to and monitors numerous sources of reports of Class Vehicle failures caused by the Engine Defect, including their own records of customer complaints, dealership repair records, warranty claims, third-party websites, and NHTSA complaints, which it is required under the TREAD Act, Pub. L. No. 106-414, 114 Stat.180 (2000) to monitor in order identify potential defects in their vehicles.

---

[3] *See*, *e.g.*, NHTSA ID Number: 11243735.

[4] *See*, *e.g.*, NHTSA ID Number: 11480730.

7.    At least as early as January 12, 2017, Honda's engineering team at its Torrance, California headquarters had begun an investigation into the Engine Defect. Critically, Honda only notified its dealerships through "Dealer Messages" of the investigation and specifically warned them that "[the] message is solely directed to Honda dealership personnel; please handle accordingly."[5]

8.    After years of customer complaints, on March 30, 2022, Honda publicly conceded that certain Class Vehicles (2015-2020 Acura TLX vehicles) contain the Engine Defect, which prevents the vehicle from restarting after the Idle Stop feature is engaged.[6]

9.    The prevalence of the Engine Defect in the Class Vehicles further came to light on June 2, 2022, when the National Highway Traffic Safety Administration's ("NHTSA") Office of Defects Investigation ("ODI") disclosed that it is conducting an investigation into Honda's Idle Stop feature and the Engine Defect.[7] The investigation was prompted by 221 complaints and several field reports ODI received relating to the Engine Defect in 2016-2019MY Honda Pilot vehicles alone. It was also revealed that after numerous meetings between ODI and Honda, Honda admitted that it has "found a correlation with customers' allegations for the Auto Start/Stop failure to restart the vehicle when the system is activated" in other models equipped with 3.5L engines (i.e., the Class Vehicles).

10.    Honda recently conceded in a letter to owners and lessees of 2015-2020 Acura TLX Class Vehicles that "[u]nder certain circumstances, after coming to a stop and the idle stop feature

---

[5] NHTSA ID Number: 10106849, Manufacturer Communication Number: APAS02032017902, https://static.nhtsa.gov/odi/tsbs/2017/MC-10106849-9340.pdf.

[6] NHTSA ID Number: 10210101, Manufacturer Communication Number: B22-009, https://static.nhtsa.gov/odi/tsbs/2022/MC-10210101-0001.pdf.

[7] NHTSA Action Number: PE22005, "*No Restart After Auto Start/Stop Engages*," https://static.nhtsa.gov/odi/inv/2022/INOA-PE22005-9303.PDF.

engages, [their] vehicle[s] may not automatically restart."[8] But Honda still has not disclosed to Plaintiffs and all other class members that the Engine Defect is found in their vehicles. Nor has Honda issued an adequate remedy for the Engine Defect for any Class Vehicle. Consequently, Plaintiffs are left with an unreliable vehicle that can leave them stranded at an intersection and put their family's lives in danger.

11.     If Plaintiffs and/or other Class members knew of the Engine Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them. Plaintiffs and other Class members were denied the benefit of the bargain in connection with their purchases and/or leasing of the Class Vehicles.

12.     The conduct described herein makes Defendant liable for, among other things, breach of express and implied warranties, and unfair, deceptive, and/or fraudulent business practices. In turn, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendant caused Plaintiffs and the members of the Class damages, including, but not limited to, loss of value, loss of use of the vehicles, and repair costs.

13.     Accordingly, Plaintiffs bring this action to redress Defendant's misconduct. Plaintiffs seek recovery of damages and a repair under state consumer protection statutes and applicable express and implied warranties, and reimbursement of all expenses associated with the repair or replacement of the Class Vehicles.

## II.     JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d)(2) and (6) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are

---

[8] NHTSA ID Number: 10215500, Manufacturer Communication Number: Defect Code 6AX, https://static.nhtsa.gov/odi/tsbs/2022/MC-10215500-0001.pdf.

citizens of different states. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

15.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because Honda transacts substantial business in this district. Honda advertised in this district and Honda received substantial revenue and profits from sales and/or leases of the Class Vehicles in this district. Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

16.    This Court has personal jurisdiction over Honda by virtue of its transactions and business conducted in this judicial district. Honda has transacted and done business, and violated statutory and common law, in the State of Illinois and in this judicial district.

## III.    PARTIES

### A.    Plaintiffs

#### 1.    John Cooper

17.    Plaintiff John Cooper is a citizen of Illinois and resides in Lincolnshire, Illinois. Plaintiff Cooper purchased a new 2020 Honda Odyssey equipped with the Idle Stop system, from Muller Honda, located at 550 Skokie Valley Road, Highland Park, Illinois 60035, on January 9, 2020.

18.    Muller Honda is part of Honda's network of authorized dealers across the United States. Honda features Muller Honda on its website as an authorized Honda dealer, with links to lists of inventory of Honda vehicles.[9]

19.    When shopping for his Class Vehicle, Plaintiff Cooper researched and considered the reliability and quality of the make and manufacturer, and was familiar with Honda's representations about Honda's vehicle quality, safety, and warranties.

20.    Prior to purchasing his Class Vehicle, Plaintiff Cooper was aware of and/or reviewed Honda's promotional materials on the internet and/or at Muller Honda, saw stickers the

---

[9] *See* https://automobiles.honda.com/tools/dealership-locator (last accessed Sept. 19, 2022).

dealer placed on the vehicle, and interacted with Honda sales agents at Muller Honda. Each of those information sources failed to disclose the presence of the Defect in 2020 Honda Odyssey models or the other Class Vehicles.

21. Through his exposure and interaction with Honda, Plaintiff Cooper was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Cooper purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Engine Defect, which creates unreasonable safety risks.

22. Plaintiff Cooper purchased his Class Vehicle with the Engine Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Cooper did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Engine Defect has significantly diminished the value of Plaintiff Cooper's Class Vehicle.

23. Had Honda disclosed the Defect, Plaintiff Cooper would not have purchased his Class Vehicle, or would have paid less to do so.

24. Plaintiff Cooper would purchase another vehicle from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

### 2. Ilya Birman

25. Plaintiff Ilya Birman is a citizen of Florida and resides in Naples, Florida. Plaintiff Birman purchased a new 2019 Honda Odyssey equipped with the Idle Stop system, from Napleton Honda of Morton Grove (then known as Castle Honda and Castle Motor Sales Inc.), located in Morton Grove, Illinois, on September 3, 2018.

6

26.     Napleton is part of Honda's network of authorized dealers across the United States. Honda features Napleton Honda on its website as an authorized Honda dealer, with links to lists of inventory of Honda vehicles.[10]

27.     When shopping for his Class Vehicle, Plaintiff Birman researched and considered the reliability and quality of the make and manufacturer, and was familiar with Honda's representations about Honda's vehicle quality, safety, and warranties.

28.     Prior to purchasing his Class Vehicle, Plaintiff Birman was aware of and/or reviewed Honda's promotional materials on the internet and/or at Napleton Honda, saw stickers the dealer placed on the vehicle, and interacted with Honda sales agents at Napleton Honda. Each of those information sources failed to disclose the presence of the Defect in 2019 Honda Odyssey models or the other Class Vehicles.

29.     Through his exposure and interaction with Honda, Plaintiff Birman was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Birman purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Engine Defect, which creates unreasonable safety risks.

30.     After purchasing the vehicle, Plaintiff Birman experienced issues with his Class Vehicle as a result of the Defect. Plaintiff Birman does not have a vehicle that is safe or reliable as advertised by Honda.

31.     Plaintiff Birman purchased his Class Vehicle with the Engine Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Birman did not receive the benefit of his

---

[10]  *See* https://automobiles.honda.com/tools/dealership-locator (last accessed Sept. 19, 2022).

bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Engine Defect has significantly diminished the value of Plaintiff Birman's Class Vehicle.

32.    Had Honda disclosed the Defect, Plaintiff Birman would not have purchased his Class Vehicle, or would have paid less to do so.

33.    Plaintiff Birman would purchase another vehicle from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

### 3.    Yosef Ben Zev

34.    Plaintiff Yosef Ben Zev is a citizen of Illinois and resides in Chicago, Illinois. Plaintiff Ben Zev purchased a new 2020 Honda Odyssey equipped with the Idle Stop system, from North City Honda, located at 6600 N. Western Ave., Chicago, Illinois 60645, on July 19, 2021.

35.    North City Honda is part of Honda's network of authorized dealers across the United States. Honda features North City Honda on its website as an authorized Honda dealer, with links to lists of inventory of Honda vehicles.[11]

36.    When shopping for his Class Vehicle, Plaintiff Ben Zev researched and considered the reliability and quality of the make and manufacturer, and was familiar with Honda's representations about Honda's vehicle quality, safety, and warranties.

37.    Prior to purchasing his Class Vehicle, Plaintiff Ben Zev was aware of and/or reviewed Honda's promotional materials on the internet and/or at North City Honda, saw stickers the dealer placed on the vehicle, and interacted with Honda sales agents at North City Honda. Each of those information sources failed to disclose the presence of the Defect in 2020 Honda Odyssey models or the other Class Vehicles.

38.    Through his exposure and interaction with Honda, Plaintiff Ben Zev was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable,

---

[11] *See* https://automobiles.honda.com/tools/dealership-locator (last accessed Sept. 19, 2022).

which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Ben Zev purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Engine Defect, which creates unreasonable safety risks.

39.    Plaintiff Ben Zev purchased his Class Vehicle with the Engine Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Ben Zev did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Engine Defect has significantly diminished the value of Plaintiff Ben Zev's Class Vehicle.

40.    Had Honda disclosed the Defect, Plaintiff Ben Zev would not have purchased his Class Vehicle, or would have paid less to do so.

41.    Plaintiff Ben Zev would purchase another vehicle from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

**B.    Defendant**

42.    Defendant American Honda Motor Company, Inc. is incorporated in California with its principal place of business in Torrance, California. Honda is the wholly owned subsidiary in North America of Honda Motor Company Limited ("HML"), a Japanese corporation.

43.    Honda is a holding company of sales, manufacturing, engineering, design, and research and development strategies of HML in the United States. Honda is in the business of designing, engineering, testing, validating, manufacturing, distributing, marketing, selling, and servicing Honda- and Acura-branded vehicles in the United States through its hundreds of dealerships.

44.     Honda began its U.S. operations in Los Angeles, California in 1959 by selling motorcycles. In 1969, Defendant began marketing and selling automobiles, with its operations still centered in California.

45.     By 1991, Honda added production to its U.S. operations and oversaw all aspects of production, including research and development, from its headquarters in California.  In 1986, Honda launched Acura, its luxury line of vehicles for the U.S. market. By 2012, Honda established research and development facilities dedicated to the Class Vehicles in Torrance, California, with related facilities dedicated solely to the creation of "future Honda and Acura automobile and mobility design concepts" in downtown Los Angeles, California.[12]

46.     Honda is now responsible for "[s]ales, marketing, service, distribution, import and export of Honda and Acura products in the U.S."[13] As a center point of Honda's global operations, Honda has made $1.8 billion in capital investments in California.[14]

47.     Honda Development & Manufacturing of America, LLC and Honda R&D Americas, LLC are affiliated with Honda, and operate 19 major manufacturing plants in North America and 14 major research and development centers in North America which jointly fully design, develop, and engineer many of the products the company makes in North America.

48.     At its Torrance, California headquarters, Honda reportedly combines product sales, service, and coordinating functions for HML in North America, and is responsible for the manufacture, development, distribution, marketing, sales, and servicing of Honda vehicles. The decisions regarding the marketing and sale of the Class Vehicles, the development of the internal Service Bulletins relating to the Engine Defect in the Class Vehicles, and the disclosure or non-

---

[12]  https://www.automotiveworld.com/news-releases/honda-rd-americas-opens-new-advanced-design-studio-in-downtown-los-angeles/ (last accessed Sept. 19, 2022).

[13]  https://hondanews.com/en-US/honda-corporate/releases/release-554e3d8539c7f6db3b88b571930280ab-honda-2020-digital-factbook (last accessed Sept. 20, 2022).

[14]  https://hondainamerica.com/investment/ (last accessed Sept. 19, 2022).

disclosure of the Engine Defect were in whole or in substantial part made by Honda at its Torrance headquarters. For example, in addition to Honda's C-Suite, Honda's Vice President of Marketing & Customer Experience (responsible for "overseeing marketing and public relations for both the Honda and Acura automobile brands as well as the company's customer experience initiatives");[15] Assistant Vice President of Honda's Marketing Division (responsible for "leading the company's marketing efforts for both the Honda and Acura automobile brands");[16] Vice President of the Product Regulatory Office (responsible for "overseeing the U.S. regulatory compliance activities for all automobile . . . products, including the areas of product safety, environmental strategy, and energy reporting and compliance");[17] Division Head of Product Safety (responsible for automobile "product safety, including compliance with the Transportation Recall Enhancement, Accountability and Documentation [("TREAD")] Act[,]" "compliance with government regulations[,]" and managing "Honda's relationship with U.S. government agencies, including the National Highway Traffic Safety Administration [("NHTSA")] . . . on matters related to incident reporting, safety investigations, and product recall management");[18] and Manager of Auto Campaigns and Recalls (responsible for communicating with Honda dealerships concerning potential defects in Honda vehicles and overseeing internal investigations)[19] are each based in Torrance.

---

[15] https://hondanews.com/en-US/releases/jay-joseph-bio (last accessed Sept. 20, 2022).

[16] https://hondanews.com/en-US/releases/ed-beadle (last accessed Sept. 20, 2022).

[17] https://hondanews.com/en-US/releases/jenny-gilger-bio (last accessed Sept. 20, 2022).

[18] https://www.linkedin.com/in/jeff-chang-2a0195107/ (last accessed Sept. 20, 2022).

[19] https://www.linkedin.com/in/brad-ortloff-7210039a/ (last accessed Sept. 20, 2022); *see also* https://static.nhtsa.gov/odi/tsbs/2022/MC-10210085-0001.pdf (last accessed Sept. 20, 2022).

49.    Honda's warranty and customer service departments for Honda vehicle owners and

lessees are operated from its Torrance headquarters.[20]

## IV.    SUBSTANTIVE ALLEGATIONS[21]

### A.    Honda's History of Emphasizing the Quality and Reliability of Its Vehicles

50.    Through its network of over 1,000 dealerships across the United States,[22] Honda

has become one of the top automakers in the United States in terms of sales.

51.    In 2019 and 2020, Honda sold 1.34 million and 1.6 million vehicles, respectively.[23]

In 2019, more than 90% of the Honda and Acura automobiles sold in the United States were

produced in North America.

52.    A 2019 McKinsey & Company report noted that over twice as many second-owner

used vehicles are sold in the United States each year compared to new vehicles.[24]

53.    Honda has metamorphosed into such a large player in the United States auto-market

based on its assurances to consumers of care, durability, and quality. Consistent with its marketing

and public statements, Honda falsely represents its vehicles as safe and dependable so that

consumers can rely upon the build and quality of the vehicles for daily use.

---

[20]    *See* https://automobiles.honda.com/information/customer-
relations#:~:text=Call%201%2D866%2D864%2D5211 (last accessed Sept. 20, 2022).

[21]    Emphasis added throughout, unless stated otherwise.

[22]    https://hondanews.com/en-US/honda-automobiles/releases/release-
4be8cbb0bfe64f9daefc3d10829d0da7-honda-celebrates-25-years-of-odyssey-with-25th-
anniversary-accessory-package-and-10-speed-automatic-transmission-for-all-trims (last accessed
Sept. 20, 2022).

[23]    https://www.best-selling-cars.com/usa/2020-full-year-usa-honda-and-acura-sales-by-
model/ (last accessed Sept. 20, 2022).

[24]    Ben Ellencweig, et al., *Dealers, investors, and disruptors can up their games to cater to
digitally savvy used-car consumers* (June 6, 2019),
https://www.mckinsey.com/industries/automotive-and-assembly/our-insights/used-cars-new-
platforms-accelerating-sales-in-a-digitally-disrupted-market#.

54.    Honda dedicates a page on its website entitled "safety," where Honda represents the safety of its vehicles.[25] Therein, Honda states that it conducts "Virtual & Real-World Tests[,]" and touts that it has "developed two of the world's most advanced crash-test facilities – including the largest ever built and first to allow multi-directional crashes." Further, Honda states that it also "dreamt bigger to create some of the most advanced virtual crash tests in the world. All this combines to make safer roads for everyone."

55.    Notwithstanding the presence of the Defect in the Class Vehicles which prevents drivers from operating their vehicles and causes engine stalls, Honda calls itself "a mobility company–we move people. But, for us, safety is an enormous priority. We don't just want to move you; we want to move you safely."[26]

56.    In addition to the real-world test performed at the "most advanced crash-test facilities[,]"[27] Honda "supplement[s] these tests" with "software that results in extremely reliable, accurate, and cost-effective crash simulations." Honda claims that the safety testing procedures it utilizes "allows [it] to make the road safer for everybody on it by engineering for worst case scenarios in an unprecedented way."

57.    A "rugged" webpage on Honda's website represents that Honda conducts "COLD-WEATHER TESTING[,]" including "on 23 different driving courses in the frozen prairies of Northern Minnesota" and in "-40-degree cold cells."[28] Further, Honda states that it "test[s] everything" at "the Honda Proving Center of California, spanning 3,840 acres of sun-scorched desert."

---

[25]  https://www.honda.com/safety (last accessed Sept. 20, 2022).

[26]  https://www.honda.com/safety/virtual-and-real-world-tests (last accessed Sept. 20, 2022).

[27]  *Id.*

[28]  https://automobiles.honda.com/rugged (last accessed Sept. 20, 2022).

58.     Honda's website has a section devoted to safety, called "Safety For Everyone."[29] Therein, it includes promotional videos touting the pre-sale safety testing it conducts. For example, the webpage includes a video interview with Bryan Hourt, Chief Engineer for North America Safety Strategy and Planning, in which he touts the various pre-sale tests that Honda conducts and its "development of core safety technologies."[30]

59.     Honda's YouTube channel similarly displays a commercial titled "Each Honda is engineered with Safety for Everyone in mind," dated January 8, 2021.[31] In the commercial, Honda's Manager/Principal Engineer of Crash Safety touts Honda's "safety for everyone philosophy." The video description reads, "[f]rom our own family members to yours, safety is a top priority when engineering our vehicles. When you or your loved ones get behind the wheel of a Honda, you're driving a vehicle that's been designed with Safety for Everyone in mind." A screenshot of the advertisement is included below.



---

[29]  https://hondanews.com/en-US/safety (last accessed Sept. 20, 2022).

[30]  https://hondanews.com/en-US/safety/channels/channel-ca54ead83e3667d0b2045585b001b6d4?sortOrder=PublishedAscending&selectedTabId=channel-ca54ead83e3667d0b2045585b001b6d4-videos&modal=video-37608fb76eaa9e3e3e588b6f5d00d80d (last accessed Sept. 20, 2022).

[31]  https://www.youtube.com/watch?v=t5VltkR4J_w (last accessed Sept. 20, 2022).

60.     The consistently uniform marketing message from Honda concerning the reliability of its vehicles is also found in the marketing materials unique to the Class Vehicles.

61.     Featured prominently in Honda's marketing materials are claims of excellence in quality, design, safety, and reliability.

62.     On August 21, 2015, Honda issued a press release from its headquarters in Torrance, California, in which it states that the "2016 Pilot offers the most comprehensive set of advanced safety and driver-assistive technologies ever available on a Honda vehicle."[32] Jeff Conrad, then-Honda's senior vice president and general manager, is quoted in the release, claiming that "[t]he 2016 Pilot is not only the most technologically advanced Honda vehicle on the road today, but the top choice for family SUV buyers interested in safety performance…. No other midsize mainstream SUV on the market today can match the comprehensive suite of Honda Sensing advanced safety and driver-assistive technologies on the new Honda Pilot."

63.     In a second press release announcing the 2016 Honda Pilot, Honda claimed that "the Pilot will include available Idle Stop technology that shuts off the engine when the vehicle is stopped, ***instantly and smoothly restarting the engine when the driver lifts their foot off the brake pedal***." Honda further claimed that its 3.5-liter engine "deliver[s] notably refined, responsive and fuel-efficient performance."[33]

---

[32] https://hondanews.com/en-US/honda-automobiles/releases/release-8654832fcf5942648682f6320185bf2e-all-new-2016-honda-pilot-earns-a-2015-top-safety-pick-rating-from-the-insurance-institute-for-highway-safety-iihs (last accessed Sept. 20, 2022).

[33] https://hondanews.com/en-US/honda-automobiles/releases/release-5fccfe8e6c0b43f7b78737cfbcd2606d-all-new-2016-honda-pilot-makes-world-debut-and-redefines-the-midsize-three-row-suv-at-2015-chicago-auto-show (last accessed Sept. 20, 2022).

64.    In its brochure for the 2016 Pilot, Honda promotes the durability, performance, and reliability of the vehicle, stating "Outperform every day."[34] In particular, the brochure touts the vehicle's engine performance and efficiency, stating that "[w]hen it comes to performance, the Pilot delivers in more ways than one. Take the new 3.5-liter direct-injection V-6 EarthDreams® Technology engine, for example. It produces 280 horsepower* and 262 lb-ft of torque,* but still helped the Pilot receive an impressive 27-mpg highway rating." Further, the brochure promotes the reliability of the vehicle with a page titled "confidence":



65.    The 2016 Pilot is also promoted in its brochure as "[s]ensible safety" and that it offers a "full suite of available technologies … [to] help keep potential hazards on the road from turning into something more."

66.    On information and belief, Honda requires its marketing brochures to be provided to prospective customers at its network of dealerships.

67.    Honda's marketing brochure for the 2016 Odyssey claims that "[t]he Odyssey delivers groundbreaking technology and conveniences that keep your family connected and

---

[34] https://automobiles.honda.com/images/2016/pilot/downloads/2016-pilot-brochure.pdf (last accessed Sept. 20, 2022).

comfortable. Top it all off with sleek, modern styling, and you've got a minivan that really hits it home."[35]

68.    In its brochure for the 2016 Odyssey, Honda states that "[y]our safety is our priority[:]" "Every Odyssey is equipped with advanced safety features designed to help protect you and your passengers, mile after mile."[36] Honda also touts the performance of its 3.5-Liter V-6 engine and fuel efficiency:



69.    Honda promotes the reliability of the 2017 Pilot in its marketing brochure, stating: "UPGRADE EVERY OUTING[.] A spur-of-the-moment day trip, or a night on the town. A

---

[35] https://www.auto-brochures.com/makes/Honda/Odyssey/Honda_US%20Odyssey_2016.pdf (last accessed Sept. 20, 2022).

[36] https://www.auto-brochures.com/makes/Honda/Odyssey/Honda_US%20Odyssey_2016.pdf (last accessed Sept. 20, 2022).

weekend drive to your favorite getaway, or a quick detour to satisfy that sweet tooth. Wherever your next adventure leads you, the sleek and versatile Honda Pilot will help you make the most of it."[37] Honda also promotes the dependability of the vehicle and its engine by stating "THE WORLD IS CALLING[.] Finding adventure in the Pilot is easy, thanks to the available intelligent Variable Torque ManagementTM (i-VTM4TM) AWD system. Because it allows you to get out and explore the world from the comfort of the driver's seat." Honda also touts the "performance" of its engine, stating: "AT THE TOP OF ITS GAME[.] The Pilot comes with a 3.5-liter direct-injection V-6 EarthDreams® Technology engine that helps produce 280 horsepower and 262 lb-ft of torque. The best part about all that power? The Pilot still received an impressive 27-mpg highway rating." Similarly, Honda touts the "mobility" of the vehicle, stating: "LIMIT, LESS[.] Life is all about variety. One day you're shopping for groceries, the next day you're off to the mountains for a completely different kind of adventure. That's why you need a vehicle that's as versatile as you…."

70.    Honda again touts the performance of the engine and fuel efficiency in its brochure for the 2018 Pilot, stating that "[t]he Pilot comes with a 3.5-liter direct injection V-6EarthDreams® Technology engine that helps produce 280 horsepower12 and 262 lb-ft of torque. The best part about all that power? The Pilot still received an impressive 27-mpg highway rating." Honda also represented that the 2018 Pilot is a dependable vehicle, stating that "[t]he world is calling. Finding adventure in the Pilot is easy … you'll be able to get out and explore the world from the comfort of the driver's seat.

71.    In its brochure for the 2018 Odyssey, Honda states the vehicle is its "most sophisticated, technologically advanced minivan yet."[38] Honda further states the vehicle is "Technology, driven. Whatever the destination, the Odyssey is loaded with engaging state-of-the-

---

[37] https://automobiles.honda.com/-/media/Honda-Automobiles/Vehicles/2017/Pilot/Pilot-Brochures/V2/MY17_Pilot_Online_Brochure.pdf (last accessed Sept. 20, 2022).

[38] https://cdn.dealereprocess.org/cdn/brochures/honda/2018-odyssey.pdf (last accessed Sept. 20, 2022).

18

art features to ensure that everyone enjoys the journey." Honda specifically touts the vehicle's
engine performance, stating "[t]he Odyssey features a 280-hp, V-6 engine with an available 10-
speed automatic transmission and received a 28-mpg highway rating. With technology that helps
keep your drive smooth, you've got a truly refined vehicle that can go wherever life takes you."
Honda also claims that the vehicle is "[a]t the forefront of safety."

72.    In its brochure for the 2019 Odyssey, Honda states that the vehicle is "[e]quipped
for journeys big and small," "[w]hether you're driving crosstown or cross country, enjoy the
exceptional fuel efficiency, power and versatility offered by this modern take on the minivan."[39]
Honda further claims that it is "[a]t the forefront of safety."

73.    In its 2016 Acura TLX brochure, Honda touts the extreme pre-sale testing its
vehicles undergo:



---

[39] https://cdn.dealereprocess.org/cdn/brochures/honda/2019-odyssey.pdf (last accessed Sept.
20, 2022).

74.     For its 2020 Acura TLX brochure, Honda states that the vehicle is "one of [its] most exciting vehicles ever"[40] and the company touts the safety of the vehicle, stating "[t]he TLX delivers a full suite of advanced, active safety and driver assistance technologies as standard equipment":



75.     On January 29, 2019, Honda issued a press release announcing "[t]he all-new 2019 Honda Passport is designed for adventure-seekers who want the superior off-road capability of Honda's available i-VTM4™ torque-vectoring all-wheel drive, the power and towing capability of its 3.5-liter i-VTEC® V6, and the more personal and rugged character of a five-passenger SUV."[41] Honda further claimed that "[w]ith Passport, drivers also benefit from the latest technology,

---

[40] https://cdn.dealereprocess.org/cdn/brochures/acura/2020-tlx.pdf (last accessed Sept. 20, 2022).

[41] https://hondanews.com/en-US/releases/2019-honda-passport-press-kit (last accessed Sept. 20, 2022).

including standard Honda Sensing® suite of advanced safety and driver-assistive technologies."
Honda also specifically touted the "fully integrated" Idle Stop system, which "boasts quicker
restarts when accelerating immediately after engine stop, making it less noticeable in heavy traffic
and similar driving situations.… Additionally, when in Idle Stop, the engine remains off after
shifting to Park for a more natural driving experience."

76.    On August 12, 2019, Honda issued a press release from its headquarters in
Torrance, California, promoting the 2020 Honda Odyssey.[42] Therein, Honda touted the inclusion
of the Idle Stop system, stating "all 2020 Odyssey minivans now come standard with Idle Stop and
Honda's 10-speed automatic, the company's newest and most advanced transmission."

**B.    Honda's Idle Stop System and the Engine Defect**

77.    As concern over automobile emissions grew along side the fuel shortages of the
1970s, automobile manufacturers sought to reduce the amount of gasoline that cars required. One
idea that took hold over the industry was the engine auto-stop feature. The idea was simple: when
the vehicle does not require use of the engine, namely, when it is not in motion, turn off the engine.

78.    In 1974, Toyota became the first manufacturer to install an auto-stop feature in its
engines. Toyota's design utilized a control unit that shut off the vehicle's ignition whenever it
stopped for 1.5 seconds. Next came Fiat and Volkswagen in the 1980s with their version of an
auto-stop feature which utilized similar devices to turn off the engine after a short period of non-
use.

79.    Over time, as engine efficiency and emission standards around the world became
more stringent, the auto-stop feature became more common in consumer vehicles. For instance,
BMW began including this feature in many of its cars in 2008, and Ford began to utilize this feature
in non-hybrid models in 2012.

---

[42]  https://hondanews.com/en-US/honda-automobiles/releases/release-
4be8cbb0bfe64f9daefc3d10829d0da7-honda-celebrates-25-years-of-odyssey-with-25th-
anniversary-accessory-package-and-10-speed-automatic-transmission-for-all-trims (last accessed
Sept. 20, 2022).

80.    Honda was a quick adopter of the technology amongst the major automobile manufacturers. In 1999, HML integrated the auto-stop feature in its first hybrid-engine models sold in Japan.

81.    The Idle Stop feature installed in the Class Vehicles works as follows: every time a driver starts the engine of a Class Vehicle the feature is engaged.[43]  When the vehicle comes to a stop, the feature automatically shuts off the engine, in order to conserve fuel. If functioning properly, the Idle Stop feature automatically restarts the engine once the driver releases the brake pedal after a stop, or the accelerator pedal is depressed, if the brake hold is active.

82.    If the Idle Stop feature does not function as intended, though, the safety risks to passengers are considerable. When the Idle Stop fails to restart the engine, drivers are forced to turn off their vehicles and restart their engines. This process though can take up to fifteen minutes,[44] a significant amount of time for drivers to be so vulnerable to being rear-ended.

83.    Moreover, drivers have reported that after their Class Vehicles fail to automatically restart with the Idle Stop feature, they are unable to turn off and restart their vehicle. Some driver reported having to have their vehicles towed and jump started after the Engine Defect cause their vehicles to stall in oncoming traffic.[45]

84.    Honda has acknowledged that having a stalled engine while in traffic is a safety hazard, which is why it states that "[i]n certain traffic conditions, the idle-stop function may not be desirable."[46]

---

[43]https://techinfo.honda.com/rjanisis/pubs/OM/AH/BTZ31919OM/enu/BTZ31919OM.PDF (last accessed Sept. 20, 2022); *see also* https://www.acurainfocenter.com/the-latest/auto-idle-stop-explained (last accessed Sept. 20, 2022).

[44] *See*, *e.g.*, NHTSA ID Number: 11480730.

[45] *See*, *e.g.*, NHTSA ID Number: 11257165.

[46] https://www.hondainfocenter.com/2020/Odyssey/Feature-Guide/Engine-Chassis-Features/Idle-Stop-System/ (last accessed Sept. 20, 2022).

85. Each Class Vehicle contains Honda's 3.5 liter engine, equipped with Honda's Idle Stop system. On information and belief, the 3.5 liter engine and the Idle Stop system were developed by Honda at its research and development department located in California.

86. The first Class Vehicle models to have the Idle Stop system installed were the 2015MY Acura TLX and MDX, which had the feature in their most expensive SH-AWD package.[47] In 2018, Honda began to install the Idle Stop system as a standard feature for all MDX models beginning with 2019MY vehicles.[48]

87. The Idle Stop system was first introduced to the Pilot line as a standard feature in the Touring and Elite trim packages for 2016MY vehicles.[49] For the 2020MY Pilot, the Idle Stop feature was also added as a standard feature to the highest trim package called the "Black Addition."[50]

88. The Idle Stop system was first introduced to the Odyssey line as a standard feature in the Touring and Elite trim packages for 2018MY vehicles.[51] In 2019MY Odyssey vehicles, the feature is found in Touring and Elite models, and it is standard in all 2020MY Odyssey vehicles.[52]

---

[47] https://acuranews.com/en-US/releases/release-f80159b6590d4549ad9bd60d00f0e44c-2015-acura-tlx-specifications-and-features (last accessed Sept. 20, 2022); https://acuranews.com/en-US/releases/release-0100e5e925c747de98a7c5a405d5128c-2015-acura-mdx-specifications (last accessed Sept. 20, 2022).

[48] https://acuranews.com/en-US/releases/release-b815a17778944b48a636e6f7e33de46e-2019-acura-mdx-specifications-and-features (last accessed Sept. 20, 2022).

[49] https://hondanews.com/en-US/honda-automobiles/releases/release-15b0c1766f454753a1f02db004937d1f-2016-honda-pilot-specifications-and-features (last accessed Sept. 20, 2022).

[50] https://hondanews.com/en-US/honda-automobiles/releases/release-84197a508e1244bda90703a9fe913733-2020-honda-pilot-specifications-features (last accessed Sept. 20, 2022).

[51] https://hondanews.com/en-US/honda-automobiles/releases/release-0768583a802044d9b9b1d7f1849f5fb1-2018-honda-odyssey-specifications-features (last accessed Sept. 20, 2022).

[52] https://hondanews.com/en-US/honda-automobiles/releases/release-3eff8d4ea13b4a169396647f4e298ea0-2019-honda-odyssey-specifications-features (last accessed

Beginning with its 2016MY MDX vehicles, Honda installed the Idle Stop system as a standard feature for all MDXs.[53]

89.    When Honda reintroduced its Passport model to the U.S. market for 2019MY, it included the Idle Stop system as a standard feature for all trim packages.[54]

**C.    The Class Vehicles Sold by Honda Suffer from the Engine Defect.**

90.    Honda, upon information and belief based on the facts alleged herein, has knowingly sold the Class Vehicles which suffer from a serious Engine Defect. The Engine Defect provides no discernable warning to drivers and thus creates an unreasonable risk to each driver.

91.    Hundreds of complaints submitted to the NHTSA reveal the magnitude of the Defect's impact of the Class Vehicles and consumers. Indeed, as of June 3, 2022, ODI found at least 221 complaints and several field reports relating to the Engine Defect in 2016-2019MY Honda Pilot vehicles alone. As shown below, scores of similar complaints relating to the Defect in other Class Vehicles were also reported to NHTSA.

92.    A list of representative complaints filed with the NHTSA detailing the Engine Defect found in the 2016 Honda Pilot Class Vehicles includes:[55]

- NHTSA ID Number: 11111894, dated July 17, 2018:

    o   THE CAR STALLS INTERMITTENTLY WHEN AUTO IDLE STOP IS ENGAGED AND CAR IS STATIONARY. ***INSTEAD OF THE ENGINE STARTING UP AGAIN AFTER TAKE FOOT OFF THE BRAKE AND PRESS***

---

Sept. 20, 2022); https://hondanews.com/en-US/honda-automobiles/releases/release-9e8b2314c9704a67adfbbe1babe53729-2020-honda-odyssey-specifications-features (last accessed Sept. 20, 2022).

[53] https://acuranews.com/en-US/releases/release-97ad21e7cf904818ad72162988d0097f-2016-acura-mdx-specifications-features (last accessed Sept. 20, 2022).

[54] https://hondanews.com/en-US/honda-automobiles/releases/release-5f514877290e43cfa4b2d2d5d237c8ab-2019-honda-passport-specs-features (last accessed Sept. 20, 2022).

[55] NHTSA complaints are publicly available online and searchable by NHTSA ID Number at https://www.nhtsa.gov/recalls. All capitalization, typographical errors, and grammatical errors are original, unless stated otherwise.

*THE GAS PEDAL, THE CAR STALLS COMPLETELY AND HAVE TO PUT THE CAR IN PARK, PRESS THE BRAKE PEDAL AND PUSH THE START BUTTON TO GET IT ON AGAIN.* SOMETIMES HAVE TO TRY SEVERAL TIMES BEFORE CAR RESTARTS. DEALER HAS BEEN UNABLE TO FIND ANYTHING OR REPLICATE PROBLEM. FIRST REPORTED TO DEALER OCT. 2017, DID SOFTWARE UPDATE, BUT HAPPENED AGAIN JUNE AND JULY.

- NHTSA ID Number: 11120858, dated August 18, 2018:

  - ABOUT 4 MONTHS AGO I WAS AT A STOPLIGHT, MY ENGINE SHUT DOWN, AS IT WAS SUPPOSED TO WITH THE 'AUTO IDLE STOP' FUNCTION. IT IS SUPPOSED TO START BACK UP WHEN YOU TAKE YOUR FOOT OFF THE BRAKE, BUT THIS TIME THE CAR STALLED. IT STALLED MANY TIMES AFTER THIS AND IT WAS ALWAYS UNEXPECTED AND SCARY. I TOOK IT INTO MY DEALER ON JUNE 6, 2018 AND THEY SAID THEY COULD SEE THAT THEY COULD SEE IN THE COMPUTER THAT IT STALLED A FEW TIMES, BUT COULD NOT REPRODUCE THE PROBLEM WHILE TEST DRIVING IT. THEY DID A RESET ON THE ELECTRONICS. THAT DID NOTHING. I STALLED A WHILE AFTER I LEFT THE SHOP. I STALLED MANY MORE TIMES AFTER THAT. IT DOES HAVE AN OVERRIDE TO THIS 'AUTO IDLE STOP' SYSTEM, BUT YOU HAVE TO ALWAYS REMEMBER TO PUSH THE BUTTON AND IF I FORGOT AND THE CAR WAS IN 'AUTO IDLE STOP' MODE AND I PUSHED THE BUTTON, MANY TIMES THE CAR WOULD STALL. I NOW ALSO HAVE A PROBLEM STARTING THE CAR. WHEN I PUSH THE START BUTTON, MANY TIMES THE ENGINE WON'T START. I HAVE TO PUSH IT 3-4 TIMES TO GET IT TO START. THIS MAKES MY STALLING EVEN MORE DANGEROUS, AS IF IT WAS NOT DANGEROUS ENOUGH, BECAUSE IT WILL TAKE ME MUCH LONGER TO START THE CAR FROM A STALL. I CAN IMAGINE BEING IN SITUATIONS WHERE I WOULD HAVE TO BE ABLE TO GET OUT A SITUATION QUICKLY AND IF I STALL I WOULD NOT BE ABLE TO. IF I AM ON A FREEWAY AND STALL IN HEAVY TRAFFIC, OR STALLING ON TRAIN TRACKS IF I AM IN HEAVY TRAFFIC AND I HAPPEN TO BE THE CAR LEFT ON THE TRACKS AND CAN'T START. OR IF A CAR OR OBJECT IS HEADING TOWARDS ME AND WILL CRASH INTO ME AND I CAN AVOID IT BE SPEEDING AWAY. IF I STALL I CAN'T. HERE IS A THREAD FROM A HONDA PILOT FORUM WITH MANY OWNERS WITH THE SAME PROBLEM. HTTPS://WWW.PILOTEERS.ORG/FORUMS/114-2016-THIRD-GENERATION-PILOT/157005-ELITE-SHUTS-OFF-STOP-LIGHT.HTML NOT ONE OF THEM HAS HAD IT FIXED BY THERE REPAIR SHOP. MY CAR HAS BEEN IN THE SHOP FOR THE 2ND TIME SINCE AUGUST 8, 2018.

- NHTSA ID Number: 11129882, dated September 17, 2018:

  - ***AUTO IDLE STOP MALFUNCTION** WHILE IN MOVING TRAFFIC ON A HIGHWAY IN NORTHERN VIRGINIA, THE PILOT HAS STALLED AND EVEN POWERED OFF WHILE THE AUTO IDLE STOP FUNCTION WAS ENGAGED*. THE CAR POWERED DOWN AND REQUIRED A RE-START WHICH NEEDED MULTIPLE ATTEMPTS TO ACTUALLY TAKE EFFECT (UP TO 20 SECONDS-MULTIPLE ATTEMPTS). *THE DEALERSHIP HAS NO SOLUTION TO OFFER AND HONDA HAS NO RECALL AVAILABLE TO COVER THE ISSUE*. THIS HAS HAPPENED THREE TIMES IN THE LAST TWO WEEKS WHEN THE AUTO IDLE FEATURE HAS BEEN TURNED OFF.

- NHTSA ID Number: 11271053, dated October 25, 2019:

  - *TWICE NOW MY 2016 HONDA PILOT ELITE WITH AUTO IDLING STOP FEATURE HAS STALLED AT INTERSECTION LIGHTS*. WHILE STOPPED AT THE RED LIGHT THE ENGINE GOES OFF AND NORMALLY WHEN I LIFT MY FOOT OFF THE BRAKE IT RESTARTS AND ACCELERATES WHEN I PUSH THE GAS PEDAL. HOWEVER, IN THESE INSTANCES WHEN I LIFTED MY FOOT OFF THE BRAKE AND WENT TO ACCELERATE, THE ENGINE COMPLETELY STALLED. A COUPLE OF WARNING LIGHTS CAME ON, UNFORTUNATELY I DIDN'T READ WHICH ONES BECAUSE I WAS AT BUSY INTERSECTIONS. THE CAR WOULD NOT START EVEN AFTER PUTTING IT INTO PARK. IT TOOK ABOUT 2 MINUTES BEFORE THE ENGINE WOULD START. OTHER DRIVERS WERE TRYING TO GET AROUND ME, HONKING. THE 2ND TIME, I WAS GOING TO MAKE A LEFT TURN AND JUST HAD TO WAIT UNTIL I COULD START IT, WATCHING IN MY REAR VIEW MIRROR HOPING I WOULDN'T GET REAR-ENDED. *I DRIVE 75+ MILES TO WORK ON A VERY BUSY AND SLOW MOVING CALIFORNIA FREEWAY WITH LOTS OF STOP AND GO TRAFFIC. I AM VERY CONCERNED ABOUT OUR SAFETY IF THIS WERE TO HAPPEN ON A BUSY FREEWAY WHERE DRIVERS DON'T REALIZE I AM DEAD IN THE WATER.* I CALLED AMERICAN HONDA AND THEY ADVISED ME TO GET IT INTO A DEALER RIGHT AWAY. I GOT AN APPOINTMENT FOR THIS AM AT 0700 BUT AS OF NOW (11:30AM) HAVEN'T HEARD A WORD. THEY ARE CHARGING ME $125 JUST TO RUN DIAGNOSTICS DESPITE THE FACT I HAVE AN EXTENDED WARRANTY. THE SERVICE PERSON HAD A DEFINITE "COULD CARE LESS ATTITUDE". AFTER READING ON THIS WEBSITE AND OTHERS, THIS IS HAPPENING A LOT AND HONDA DOESN'T SEEM TO HAVE AN ANSWER. THIS IS THE 2ND MAJOR ISSUE WITH THIS CAR. THE LAST ISSUE INVOLVED MY CAR BASICALLY SHUTTING DOWN ON THE FREEWAY AT 70MPH, GOING INTO A LOWER GEAR, EVERY POSSIBLE WARNING LIGHT ON THE DASH LIT UP. HAD TO DRIVE ONE MILE ON THE SHOULDER TO GET IT OFF THE FREEWAY. THIS HAPPENED TWICE TO ME AND A "COMPUTER PATCH WAS DONE".

IT SEEMS FIXED BUT NOW I AM NOT SURE AT ALL WHAT IS GOING ON WITH THIS CAR.

- NHTSA ID Number: 11208345, dated May 17, 2019:

  o IDLE STOP FUEL SAVER FEATURE CAUSES CAR TO STALL WHEN BRAKE IS DISENGAGE. MY CAR HAS STALLED NUMEROUS TIMES. IT DOES NOT ALLOW A QUICK RESTART. IT HAS TO RESET BEFORE CAR CAN RESTART ENGINE. HONDA BLOGS SITE ON THIS ISSUE IS NUMEROUS. THIS PRESENTS A HAZARD FOR CAR STUCK IN THE MIDDLE OF THE ROAD AND IN TRAFFIC CONDITIONS. PLEASE HELP. HONDA HAS NOT PROVIDED ANY SOLUTIONS.

93.    A list of representative complaints filed with the NHTSA detailing the Engine Defect found in the 2017 Honda Pilot Class Vehicles includes:

- NHTSA ID Number: 11243735, dated August 13, 2019:

  o I JUST PURCHASED MY HONDA CERTIFIED '17 PILOT ELITE ONE MONTH AGO. I WOULD NOTICE THAT THE CAR WOULD LAG WHEN USING THE AUTO IDLE STOP FUNCTION, IT WOULD SPUTTER, AND EVENTUALLY AND NOW MULTIPLE TIMES, IT WOULD STALL OUT AT A STOP LIGHT OR STOP SIGN WHEN I WAS IN AUTO IDLE-STOP AND TOOK MY FOOT OFF OF THE BRAKE TO GO. MY HONDA PILOT STALLED IN THE MIDDLE OF AN INTERSECTION, WAITING TO TURN LEFT, OF A BUSY MAIN HIGHWAY, WITH MY HUSBAND AND YOUNG CHILDREN INSIDE. WHEN IT WAS SAFE TO TURN, TOOK FOOT OFF OF THE BRAKE AND THE CAR STALLED. IT TOOK MANY FRANTIC ATTEMPTS TO GET THE CAR TO TURN BACK ON TO BE ABLE TO MOVE SAFELY OUT OF THE INTERSECTION. ***THIS CAR HAS PLACED MYSELF AND MY FAMILY IN DANGER NOW ON MULTIPLE OCCASIONS. TOOK TO DEALERSHIP WHERE THEY INFORM THAT THEY HAVE NEVER HEARD OF THIS HAPPENING, AND THAT THEY DO NOT KNOW WHAT IS WRONG.*** CAR HAS BEEN TO THE DEALERSHIP TWICE FOR SAME ISSUE NOW, IN ONE MONTH.

- NHTSA ID Number: 11246340, dated August 26, 2019:

  o HAVE A 2017 HONDA PILOT TOURING WITH 39K MILES. USUALLY THE CAR GOES INTO 'ACCESSORY' MODE WHEN THE AUTO IDLE STOP KICKS IN BUT A COUPLE OF MONTHS AGO SOMETHING NEW STARTED- I EXPERIENCED A TOTAL STALL FOR THE FIRST TIME, AND IT HAS HAPPENED 3 MORE TIMES SINCE. THE CAR TURNED COMPLETELY OFF, BUT IT DID NOT RESTART AUTOMATICALLY. THE DASHBOARD WAS LIT UP WITH PROBLEMS. I PUT THE CAR IN PARK AND FRANTICALLY TRIED TO RESTART IT AS I WAS ON A HIGHWAY IN TRAFFIC. ONCE IT WAS RESTARTED, I DISABLED AUTO IDLE STOP

AND I'VE BEEN DISABLING IT EVER SINCE. HOWEVER, THIS IS A MANUAL FIX AND IS NOT ALWAYS SOMETHING ONE REMEMBERS TO DO, ESPECIALLY SINCE WE HAVE A NEW 16-YEAR-OLD DRIVER ENTERING THE FRAY IN OUR HOME SOON. AFTER RESEARCHING THIS EXTENSIVELY ONLINE, THERE APPEARS TO BE A KNEE-JERK REACTION FROM HONDA TO REPLACE THE BATTERIES IN THESE AFFECTED VEHICLES, BUT IT IS NOT STOPPING THE ISSUE, ACCORDING TO MULTIPLE ACCOUNTS. THE NHTSA HAS MANY DOCUMENTED CASES OF THIS AND IT IS AN OBVIOUS SAFETY ISSUE, BUT NO RECALL IS YET IN PLACE. ***CALLED HONDA USA CUSTOMER SERVICE AT 9:30 AM TODAY AND VERIFIED THERE ARE NO RECALLS REGARDING THIS PROBLEM AND IF THE CAR IS OUT OF WARRANTY THAT THERE WOULD BE NO FINANCIAL RELIEF FOR NECESSARY PARTS/LABOR RELATED TO THIS ISSUE***.

- NHTSA ID Number: 11257165, dated September 21, 2019:

  o AUTO ENGINE IDLE STOP MALFUNCTIONING, LEAVING VEHICLE STALLED AND STRANDED IN THE MIDDLE OF TRAFFIC. HAS HAPPENED TWO TIMES IN LAST MONTH (SEPT 2019) NOW WITH LAST BEING ON A BUSY HIGHWAY WITH YOUNG SON IN CAR. ***REQUIRED A TOW ($174 TOWING BILL) AND THEN JUMP (VEHICLE HAD TO BE REMOVED FROM BUSY TRAFFIC ASAP) AND VERY FORTUNATE WE WERE NOT HIT AS VEHICLE WAS STALLED IN THE MIDDLE OF 60 MPH TRAFFIC FOR NEARLY 2 HOURS***. THE ISSUE HAPPENS AFTER THE ENGINE IDLE AUTO OFF KICKS OFF THE ENGINE BUT THEN WILL NOT RESTART WHEN FOOT IS TAKEN OFF THE BRAKE. THIS DOES NOT APPEAR TO BE A BATTERY ISSUE AS BATTERY HAS BEEN FINE SINCE AND HAS NOT BEEN REPLACED. ENGINE IDLE AUTO STOP FEATURE CANNOT BE TURNED OFF PERMANENTLY AND ONE MUST REMEMBER TO TURN IT OFF EVERY TIME YOU DRIVE THE VEHICLE TO MITIGATE THIS PROBLEM. ***THIS IS A HUGE SAFETY ISSUE! CAR IS APPROX 2.5 YEARS OLD AND HAS APPROX 34K MILES.*** ISSUE HAS ONLY SURFACED RECENTLY HOWEVER. TOWING BILL ATTACHED.

- NHTSA ID Number: 11287574, dated December 6, 2019:

  o UPON EXITING STOP/START EVENTS(AUTO SHUT OFF AT STOP SIGNS/LIGHTS/PARKING LOTS), ENGINE DOES NOT RESTART. INSTEAD, IT SHIFTS INTO PARK, LIGHTS UP ALL INSTRUMENTS ON DISPLAY PANEL, AND REQUIRES A MANUAL RESTART. VEHICLE IS DEAD UNTIL RESTARTED, POSING A HAZARD TO OCCUPANTS/ONCOMING TRAFFIC. HAS HAPPENED MULTIPLE TIMES IN PAST WEEKS. WE ALSO HAVE READ OF MANY OTHER OWNERS OF '16/'17 HONDA PILOT OWNERS HAVING THE EXACT SAME ISSUE.

94.     A list of representative complaints filed with the NHTSA detailing the Engine Defect found in the 2018 Honda Pilot Class Vehicles includes:

- NHTSA ID Number: 11317205, dated March 10, 2020:

    o   THE VEHICLE WOULD "STALL OUT" AT A STOP LIGHT OR STOP SIGN WHEN I WAS IN "AUTO IDLE-STOP" AND PRESSED ON THE GAS. I FIRST NOTICED THAT THE AUTO IDLE-STOP WAS HESITATING WHEN IT WOULD START UP. I ALSO NOTICED THAT THE RADIO WOULD "CUT OUT". AFTER THAT, THE VEHICLE WOULD JUST STALL OUT AND I WOULD HAVE TO PUSH PARK, PUT MY FOOT ON THE BRAKE AND THEN PUSH START. THIS HAS HAPPENED SEVERAL TIMES.

- NHTSA ID Number: 11415486, dated May 7, 2021:

    o   THE CAR SHUT OFF WHEN TRYING TO RECOVER FROM IDLE STOP MODE. ALL LIGHTS TURNED OFF. THE CAR BECOMES INVISIBLE WHEN DARK.

- NHTSA ID Number: 11417954, dated May 20, 2021:

    o   THE AUTO ENGINE IDLE FEATURE ENGAGED AT A STOP LIGHT AS USUAL. WHEN I MOVED MY FOOT FROM THE BRAKE TO THE ACCELERATOR, THE CAR SHUT OFF, SHIFTED INTO NEUTRAL AND WOULD NOT START. THIS WAS ON A MAJOR HIGHWAY. IT TOOK SEVERAL MINUTES TO START AGAIN, WHILE I WAS STALLED IN DANGEROUS TRAFFIC.

- NHTSA ID Number: 11418363, dated May 24, 2021:

    o   WHEN MY VEHICLE HAS THE AUTO IDLE STOP FEATURE TURNED ON, THERE ARE SEVERAL TIMES WHEN I HAVE BEEN SITTING AT A STOP LIGHT OR IN A MEDIAN WAITING TO PULL ACROSS OR MERGE INTO TRAFFIC, AND THIS FEATURE ENGAGES AND WHEN YOU TAKE YOUR FOOT OFF THE BRAKE AND THE ENGINE IS SUPPOSED TO AUTO RESTART, THE ENGINE STOPS COMPLETELY INSTEAD AND SHIFTS ITSELF INTO NEUTRAL WHICH REQUIRES YOU TO HAVE TO PUT VEHICLE IN PARK AND COMPLETELY RESTART THE WHOLE CAR. HAS BEEN HAPPENING SEVERAL TIMES IN THE LAST YEAR. I HAVE TAKEN IT IN TO HAVE THE BATTERY CHECKED AND IT CHECKS FINE. THE CAR IS NOT THROWING ANY CODES. THIS CAN BE PARTICULARLY DANGEROUS WHEN YOU ARE IN A MEDIAN TRYING TO PULL ACROSS A BUSY HIGHWAY AS YOUR CAR JUST COMPLETELY DIES ON YOU. ALSO A PROBLEM WHEN YOU ARE AT A RED LIGHT AND IT TURNS GREEN AND EVERYONE STARTS ROLLING AND YOUR CAR COMPLETELY DIES, THIS INCREASES YOUR CHANCE OF BEING REAR-ENDED. IF I MANUALLY TURN THE AUTO IDLE STOP FEATURE OFF

WHEN I INITIALLY TURN THE CAR ON, THIS PROBLEM DOES NOT
HAPPEN...... BUT THIS IS EVERY EASY TO FORGET AS THIS IS AN
AUTOMATIC FEATURE WHEN YOUR CAR IS INITIALLY STARTED.

- NHTSA ID Number: 11426596, dated July 27, 2021:

  O   "IDLE STOP SYSTEM" FAILS TO SUCCESSFULLY RESTART THE ENGINE
      AND RESULTS IN A STALL. SAFETY IS PUT AT RISK AS THE CAR
      BECOMES IMMOBILIZED AT A TRAFFIC INTERSECTION, RED LIGHTS,
      MIDDLE OF THE HIGHWAY. ANYWHERE THAT YOU CAME TO A
      COMPLETE STOP AND WERE NOT ABLE TO GET THE VEHICLE TO
      REENGAGE. I HAVE NOT YET TAKEN THE VEHICLE TO THE DEALER,
      THIS ISSUE HAS HAPPENED MULTIPLE TIMES AND HAS ALSO BEEN
      VERY WELL DOCUMENTED BY OTHERS ON THE INTERNET
      HTTPS://WWW.CARPROBLEMZOO.COM/HONDA/PILOT/CAR-STALL-
      PROBLEMS.PHP      HTTPS://WWW.PILOTEERS.ORG/THREADS/ELITE-
      SHUTS-OFF-AT-STOP-LIGHT.157005/ THE VEHICLE HAS NOT BEEN
      INSPECTED AT THIS TIME NO WARNING LAMPS OR SYMPTOMS
      APPEAR PRIOR. WHEN YOU LIFT YOUR FOOT OFF THE BRAKE PEDAL
      THE VEHICLE STALLS AND YOU ARE UNABLE TO DRIVE THE VEHICLE

- NHTSA ID Number: 11450663, dated February 6, 2022:

  o   THE AUTO-IDLE FEATURE WILL UNEXPECTEDLY OVER-ENGAGE
      WHILE COMING TO A STOP AND THE ENTIRE VEHICLE WILL SHUT OFF.
      I AM UNABLE TO SHIFT, STEER, ETC. IT WILL ALSO COMPLETELY
      SHUT THE ENGINE DOWN WHEN AT A COMPLETE STOP. TO BE CLEAR,
      THIS IS NOT THE NORMAL AUTO-IDLE. WHEN THE FULL ENGINE
      DISENGAGE HAPPENS, THE ENTIRE VEHICLE LOSES POWER AND THE
      DASH FLASHES. THE VEHICLE STATES, "PUT INTO P". ONCE IN "P" FOR
      PARK, THE VEHICLE STILL WILL NOT RESTART. IT IS AS IF THE
      VEHICLE HAS TO "RESET" ITSELF. IT HAS TAKEN UPWARDS OF 4
      MINUTES FOR THE VEHICLE TO RESTART. THIS HAS HAPPENED ON A
      HIGHWAY DURING CONSTRUCTION TRAFFIC, APPROACHING A STOP
      SIGN, SLOWING AT A RED LIGHT ON MULTIPLE OCCASIONS. I HAVE
      ALMOST BEEN REAR-ENDED AS A RESULT ON MUTIPLE OCCASIONS. I
      AM NOT EVEN ABLE TO PUT THE VEHICLE IN NEUTRAL TO MOVE IT
      TO A SAFE SPOT. HONDA INFORMED ME THAT I "JUST NEED TO
      DISENGAGE THIS FEATURE EACH AND EVERY TIME I START THE
      VEHICLE" . THAT IS NOT THE SOLUTION. THIS FEATURE SHOULD BE
      PERMANENTLY DISABLED BY HONDA. IMMEDIATELY.

    95.    A list of representative complaints filed with the NHTSA detailing the Engine

Defect found in the 2019 Honda Pilot Class Vehicles includes:

- NHTSA ID Number: 11353603, dated September 7, 2020:

- CAR SHUTS OFF COMPLETE AND DOESN'T START BACK WHEN USING AUTO IDLE STOP. I GOT STUCK AT AT HEAVY TRAFFIC ROADS AND TRAFFIC LIGHTS FREQUENTLY. I AM ALSO EXPERIENCING LOSS OF POWER OR THE CAR; HESITATION AND RAVING WHEN GASING. I HAVE TAKEN THE CAR TO HONDA SERVICE FEW TIMES ALREADY, BUT THEY WERE UNABLE TO FIND ANY ISSUES. AT LAST VISIT TO HONDA SERVICE, BATTERY WAS TESTED AND INSPECTED EVERYTHING ELSE AND WAS DOCUMENTED NO ISSUES FOUND. THIS ISSUE IS BEING HAPPENING SINCE APRIL. PLEASE ADVICE WHAT I NEED TO DO TO FIX THIS ISSUE. DID I BUY A LEMON?

- NHTSA ID Number: 11415484, dated May 6, 2021:

  - THE AUTO IGNITION SHUTOFF TURNS THE VEHICLE OFF WHEN STOPPED, SUCH AS AT A STOP SIGN OR STOP LIGHT. THE VEHICLE IS SUPPOSED TO TURN BACK ON AUTOMATICALLY WHEN THE BRAKE IS RELEASED, BUT INSTEAD THE VEHICLE DIES REQUIRING YOU TO SCRAMBLE TO PUT THE VEHICLE IN PARK AND HIT THE IGNITION BUTTON. THE AUTO IGNITION SHUTOFF MUST BE TURNED OFF MANUALLY EVERY TIME YOU USE THE VEHICLE.

- NHTSA ID Number: 11425989, dated July 22, 2021:

  - WHILE STOPPED AT A RED LIGHT, THE ENGINE WOULD COMPLETELY SHUT OFF. I HAD TO RESTART THE CAR AND IT WOULD TAKE MULTIPLE ATTEMPTS TO TURN IT BACK ON. THE FIRST TIME IT HAPPENED, I THOUGHT IT WAS A BATTERY ISSUE. ***BUT I HAD SINCE CHANGED THE BATTERY AND THE PROBLEM STILL OCCURS.*** IT SEEMS TO HAPPEN WHEN THE IDLE MODE IS NOT TURNED OFF. ***THIS IS DANGEROUS AS IT COULD CAUSE AN ACCIDENT TO HAVE YOUR CAR SUDDENLY STOP WORKING IN THE MIDDLE OF TRAFFIC.***

- NHTSA ID Number: 11442641, dated December 4, 2021:

  - WHILE AT A STOP LIGHT THE IDLE STOP ENGAGED BUT WHEN I LIFT MY FOOT OFF THE BRAKE TO BEGIN MOVING FORWARD THE AUTO-START FAILED TO START AND VEHICLE REPORTED BATTERY FAILURE. PUT PILOT IN PARK AND MADE 3-5 ATTEMPTS TO RESTART BEFORE SUCCESSFUL. ***CARS NEARLY REAR ENDED ME AND MY CHILDREN WHO WERE IN THE BACK.***

- NHTSA ID Number: 11468738, dated June 11, 2022:

  - 1. THE ENGINE TURNED OFF AT AN INTERSECTION WITH THE START/STOP FEATURE, ALSO CALLED THE AUTO IDLE STOP SYSTEM, AND DID NOT RESTART. JUMPER CABLES WERE NEEDED TO RESTART THE VEHICLE. 2. SAFETY CONCERN - THIS ISSUE PUT MY FAMILY'S

31

SAFETY AT RISK WHILE BEING OUT OF THE VEHICLE AT A VERY BUSY INTERSECTION AT DUSK WHEN VISIBILITY WAS DECREASING. 3. POLICE ARRIVED BRIEFLY TO ASSIST AFTER 45 MINUTES OF BEING IN A DEAD VEHICLE BUT VEHICLE SUCCESSFULLY STARTED AFTER SEVERAL "JUMPING" ROUTINES AND POLICE LEFT SCENE. 4. THERE WERE NO OTHER VISUAL ISSUES OR MESSAGES PRIOR TO THIS PROBLEM.

96.     A list of representative complaints filed with the NHTSA detailing the Engine Defect found in the 2020 Honda Pilot Class Vehicles includes:

- NHTSA ID Number: 11468211, dated June 8, 2022:

  o THE CONTACT OWNS A 2020 HONDA PILOT. THE CONTACT STATED THAT THE VEHICLE WAS EXPERIENCING HARD STARTS. ADDITIONALLY, THE CONTACT STATED THAT THE AUTO START/STOP FUNCTION FAILED TO ENGAGE AUTOMATICALLY WHILE ATTEMPTING TO DRIVE FROM A COMPLETE STOP. THERE WERE NO WARNING LIGHTS ILLUMINATED. THE CONTACT STATED THAT THE FAILURE RECURRED AND THE VEHICLE TURNED OFF WHILE AT A COMPLETE STOP. THE CONTACT WAS ABLE TO RESTART THE VEHICLE. THE VEHICLE WAS TAKEN TO THE DEALER WHERE THE BATTERY WAS REPLACED; HOWEVER, THE FAILURE PERSISTED. ADDITIONALLY, THE CONTACT STATED WHILE DRIVING THROUGH AN INTERSECTION, THE VEHICLE STALLED. THE CONTACT WAS ABLE TO RESTART THE VEHICLE AFTER SEVERAL ATTEMPTS. THE VEHICLE WAS TAKEN TO THE LOCAL DEALER WHERE IT WAS DIAGNOSED THAT THE BATTERY NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 30,000.

- NHTSA ID Number: 11468624, dated June 10, 2022:

  o AUTO START/STOP FEATURE; ENGINE FAILED TO RESTART FROM A COMPLETE STOP AT A RED LIGHT, HAPPENED ON MULTIPLE OCCASIONS. I WOULD HAVE TO PRESS ON THE BRAKE AND ACCELERATOR AND PRESS THE START BUTTON TO START THE CAR AND BE ABLE TO DRIVE.

- NHTSA ID Number: 11468757, dated June 11, 2022:

  o WHEN ENGINE AUTO-SHUTOFF WAS ON (AS IT IS AUTOMATICALLY EVERY TIME THE CAR IS STARTED) I CAME TO A COMPLETE STOP AND THE VEHICLE TURNED OFF COMPLETELY. I WAS IN THE MIDDLE OF THE ROAD ON EVERY OCCASION THIS OCCURRED. THE VEHICLE WOULD NOT RESTART FOR AT LEAST 30 SECONDS.

- NHTSA ID Number: 11472590, dated July 6, 2022:

  o ON MULTIPLE OCCASSIONS, MY ENGINE AUTO IDLE START/STOP HAS MALFUNCTIONED. IN PARTICULAR, WHEN THE CAR GOES INTO IDLE WHILE STOPPED AT A TRAFFIC LIGHT, THERE ARE TIMES WHEN THE CAR COMPLETELY SHUTS OFF. ***THIS IS DANGEROUS AT ANY TIME BECAUSE IT HAS BEEN UNPREDICTABLE. THE PROBLEM GETS MORE FREQUENT UNTIL FINALLY THE CAR WON'T START***. UPON TAKING THE CAR TO KEATING HONDA IN CONROE TX TWICE FOR THE INABILITY TO START THE CAR, I HAVE HAD MY BATTERY REPLACED TWICE WITHIN THE LAST YEAR. THEY HAVE NOT BEEN ABLE TO IDENTIFY ANY PARASITIC DRAINS TO THE BATTERY. AT 39,000 MILES, MY 2020 HONDA PILOT ELITE REQUIRED IT'S 3RD BATTERY. THE PROBLEM HAS BEEN LABELED BATTERY FAILURE, ***BUT FRANKLY THE PROBLEM HAS BEEN THE ENGINE AUTO IDLE START/STOP FEATURE*** AND I AM CERTAIN THIS FEATURE IS DIRECTLY RELATED TO THE BATTERY FAILING.

- NHTSA ID Number: 11473435, dated July 11, 2022:

  O VEHICLE SHUT DOWN AND FAILED TO START AT STOPLIGHT. IT WAS AS OF IT SHIFTED OFF OR IN TO NEUTRAL. BATTERY LIGHT SHOWED RED WHEN INITIALLY TRIED TO RESTART. FINALLY ENGINE STARTED AFTER TUNING OFF AND BACK ON AGAIN. I BELIEVE IT WAS A FAILURE OF THE AUTO ENGINE STOP SYSTEM CURRENTLY UNDER INVESTIGATION. IT HAS HAD REPEATED ISSUES LATELY GETTING GOING AT STOP LIGHTS BUT THIS WAS THE FIRST COUPLE SHUTDOWN

- NHTSA ID Number: 11474549, dated July 18, 2022:

  O ONCE THE ENGINE STOPS (IDLE ENGINE AUTO STOP FEATURE) ON THE INTERSECTION WHEN I YIELD TO ANOTHER VEHICLE BEFORE A LEFT TURN AND AUTO-STARTS BUT TEH CAR REFUSED TO MOVE - WAS SOLVED BY SHUTTING DOWN THE CAR AND STARTING IT AGAIN. ALL THAT ON A BUSY INTERSECTION IN THE MIDDLE OF THE ROAD. VERY UNCOMFORTABLE AND UNSAFE SITUATION TO BE IN.

97. A list of representative complaints filed with the NHTSA detailing the Engine Defect found in the 2018 Honda Odyssey Class Vehicles includes:

- NHTSA ID Number: 11062395, dated January 12, 2018:

  - OUR 2018 HONDA ODYSSEY ELITE HAS A FEATURE CALLED IDLE STOP. THE FEATURE HAS MANY CRITERIA THAT MUST BE MET BEFORE IT WILL ACTIVATE. IT SHOULD JUST TURN OFF THE ENGINE WHEN THE CRITERIA HAVE BEEN MET IN AN EFFORT TO CONSERVE

FUEL IN LIEU OF IDLING. ***WE ARE SEEING A RANDOM ISSUE WHEN THIS FEATURE ACTIVATES WHERE THE VEHICLE WILL SHUT OFF THE CAR ENTIRELY AND PLACE IT IN PARK. WE MUST MANUALLY START OUR VEHICLE AGAIN THEN PLACE IT BACK IN DRIVE TO PROCEED.*** WE'VE HAD IT HAPPEN THREE TIMES. ALL HAVE TAKEN PLACE AT STOP LIGHTS FOLLOWING A COMPLETE STOP. THE MOST RECENT OCCURRENCE TOOK PLACE AT A STOP LIGHT AFTER LEAVING THE HIGHWAY. ***I'M CONCERNED WE WILL BE REAR ENDED DUE TO OUR VEHICLE BEING DISABLED AT AN INTERSECTION.*** IT'S CURRENTLY AT THE DEALERSHIP FOR THE FIFTH TIME (MULTIPLE ISSUES WITH THIS VEHICLE) TO HOPEFULLY FIND A SOLUTION.

- NHTSA ID Number: 11246051, dated August 23, 2019:

  - THE VEHICLE COMPLETELY SHUTS DOWN AND OFF INTERMITTENTLY WHEN THE AUTO IDLE STOP FUNCTION IS ENGAGED. ***THIS HAPPENS WHEN WE ARE IN TRAFFIC ON A HIGHWAY AND STREETS OR AT STOP SIGNS AND STOPPING BRIEFLY AND AND THE VEHICLE GOES INTO PARK AND MUST BE RE-STARTED BY PRESSING THE "ON/OFF" BUTTON. IT IS VERY SCARY AND DANGEROUS***.

- NHTSA ID Number: 11472050, dated July 1, 2022:

  - WHEN COMING TO A STOP, USUALLY IN STOP / GO TRAFFIC AND AT TIMES WHEN COMING TO A COMPLETE STOP, THE AUTO-IDLE STOP KICKS IN, BUT THEN IMMEDIATELY SHUTS THE ENGINE DOWN AND SHIFTS VEHICLE INTO PARK. ***VEHICLE HAS TO BE ENTIRELY SHUT DOWN AND RESTARTED TO BRING THE ENGINE BACK***. WE HAVE BEEN TAKING THE VEHICLE TO THE DEALERSHIP SINCE WE BOUGHT IT A COUPLE OF YEARS AGO. SEEMS TO BE MOSTLY OCCURRING IN WARM SUMMER MONTHS. ALSO AFFECTS THE AUDIO ENTERTAINMENT, ALL SOUNDS STOP. AND AFTER THE MOST RECENT REPAIR BY THE DEALERSHIP (REPLACING THE TUNER), THE DISPLAY SCREEN WILL NOT COME ON FOR 10-15 MIN WHEN FIRST STARTING THE VEHICLE (INCLUDING THE BACK-UP CAM AND WARNINGS)

- NHTSA ID Number: 11484513, dated September 14, 2022:

  - ON AT LEAST 3 OCCASIONS, THE "AUTO ENGINE IDLE STOP" HAS CAUSED MY VEHICLE TO COMPLETELY DIE WHILE STOPPED AT A STOP LIGHT. WHEN THE CAR SHUTS OFF/DIES, THE SYSTEM PROMPTS YOU TO SHIFT THE CAR IN PARK AND RESTART THE CAR, BUT ON THESE OCCASIONS, THE CAR DID NOT START, LEAVING ME STALLED IN ACTIVE TRAFFIC. ***I FELT VERY UNSAFE TO BE STALLED WITH NO WAY TO OPERATE THE VEHICLE.*** THE DEALERSHIP CHECKED THE BATTERY TO ENSURE IT WASN'T A BATTERY ISSUE AND FOUND IT TO

34

BE COMPLETELY FINE. AT THE TIME WE DID NOT REALIZE THAT IT COULD BE A PROBLEM WITH THE AUTO ENGINE IDLE STOP FEATURE, OTHERWISE WE WOULD'VE HAD THEM CHECK THAT SYSTEM SPECIFICALLY. FURTHER RESEARCH FROM OTHER CUSTOMER FORUMS ONLINE PROMPTED US TO TURN THIS FEATURE OFF, BUT WE HAVE TO DO THAT EVERY TIME WE START THE CAR. THERE IS NO WAY FOR US TO TURN IT OFF PERMANENTLY. THE CAR GIVES YOU NO WARNING THAT THIS WILL HAPPEN. WHEN YOU REMOVE YOUR FOOT FROM THE BREAK TO RESUME DRIVING, THE CAR SHUTS OFF WITHOUT IMMEDIATELY RESTARTING, LEAVING YOU STRANDED. I AM HOPING THAT HONDA WILL ISSUE A RECALL ON AFFECTED MODELS. AT THIS POINT THEY AREN'T OFFERING ANY HELP OTHER THAN TO TELL US TO TURN IT OFF, BUT YOU HAVE TO REMEMBER TO DO THAT EVERY TIME YOU START YOUR VEHICLE.

98.    A list of representative complaints filed with the NHTSA detailing the Engine Defect found in the 2019 Honda Odyssey Class Vehicles includes:

o   NHTSA ID Number: 11301286, dated January 23, 2020:

    o   INITIALLY THE VEHICLE WOULD RANDOMLY TURN OFF WHILE DRIVING, IT WAS NOT THE IDLE STOP SINCE IT IS DEACTIVATED BEFORE DRIVING. THE DEALER EVENTUALLY SAID IT WAS THE BATTERY. THEN THE INFOTAINMENT SYSTEM STOPPED WORKING, THE RADIO WAS REPLACED AFTER A WEEK OF BEING AT THE DEALER. NOW 3 WEEKS AFTER REPAIR, THE INFOTAINMENT SYSTEM DOES NOT WORK. HAS A NOISE THAT COMES OUT OF THE SPEAKERS LIKE SPARKS, HAS A CHEMICAL SMELL, NO RES USAGE, NO CABIN WATCH OR CABIN TALK. EVERYTHING THAT MADE THE ELITE TRIM DESIRED DOES NOT WORK.

o   NHTSA ID Number: 11455296, dated March 5, 2022:

    O   I WAS DRIVING MY 2019 HONDA ODYSSEY ON THE HIGHWAY AND IT STOPPED SUDDENLY IN THE MIDDLE OF THE HIGHWAY. THE CAR WENT TO IDLE MODE AND CHANGED ITSELF TO PARK GEAR. WE HAD TO OFF THE CAR AND RESTART IT WHICH WAS DANGEROUS IN THE MIDDLE OF THE HIGHWAY. THIS SAME INCIDENT HAPPENED EARLIER TOO BUT IN A RESIDENTIAL STREET. WE TOOK IT TO THE DEALERSHIP BUT THEY SAID THEY COULDN'T FIND ANYTHING WRONG. THEN I HEARD THE NEWS STORY ABOUT NHTSA INVESTIGATION INTO THIS PROBLEM WITH HONDA AND WANTED TO REPORT MY EXPERIENCE. THIS IS DANGEROUS AND THEY NEED TO FIGURE OUT WHAT IS GOING ON.

o   NHTSA ID Number: 11468548, dated June 9, 2022:

   o   FREQUENTLY THE ENGINE WILL STALL ON RESTART AFTER IDLE STOP SYSTEM CUTS THE ENGINE OFF AT A LIGHT. ***OCCASIONALLY THE STALL WILL LEAD TO A FULL REBOOT OF THE CONTROL SYSTEM TAKING UP TO 3 MINUTES TO ALLOW A RESTART OF THE ENGINE***.

o   NHTSA ID Number: 11473467, dated July 11, 2022:

   o   ***THIS IS A PROBLEM WITH THE AUTO ENGINE IDLE SHUT OFF.*** THE ENGINE SHUTS OFF NORMALLY WHEN I COME TO A STOP WHEN I HAVE THE SYSTEM ENGAGED. THE PROBLEMS BEGIN WHEN I TAKE MY FOOT OFF THE BREAK EXPECTING THE ENGINE TO START UP AGAIN. WHAT HAPPENS CONSISTENTLY (THOUGH NOT ALL THE TIME) IS THAT WHEN I TAKE MY FOOT OFF THE BRAKE, THE ENGINE SHUTS OFF, SHIFTS ITSELF INTO PARK, AND I HAVE TROUBLE GETTING THE ENGINE TO START UP AGAIN. A NUMBER OF WARNING MESSAGES SHOW UP ON THE CENTER CONSOLE AS WELL. THINGS LIKE, COLLISION MITIGATION BRAKING SYSTEM, ROAD DEPARTURE MITIGATION, BRAKE SYSTEM WARNINGS START DISPLAYING. ***SOMETIMES, I CAN GET THE ENGINE TO START UP AGAIN WITHIN 30 SECONDS. SOMETIMES, IT'S BEEN MORE THAN A MINUTE***. IT ALMOST LOOKS/SOUNDS LIKE THE BATTERY IS DEAD TOO (MAKES THAT CLICKING SOUND AND THE RPM GAUGE JIGGLES AROUND ZERO). MY HONDA SERVICE SHOP SAYS THEY COULDN'T REPLICATE THE ISSUE, THAT THERE ARE NO CODES, AND NO SERVICE ADVISORIES. THIS STARTED HAPPENING AROUND 6-8 MONTHS AGO AND THE INCIDENTS HAVE RECENTLY INCREASED SIGNIFICANTLY IN FREQUENCY. ***THIS IS A SIGNIFICANT SAFETY ISSUE AS EVERY TIME THIS HAPPENS, WHICH IS NOW DAILY, I AM VULNERABLE TO BEING REAR-ENDED AND OTHER VEHICLES ARE VULNERABLE TO BEING IN AN ACCIDENT BY TRYING TO GO AROUND ME WHILE I'M WAITING FOR MY VEHICLE TO BE ABLE TO RESTART***.

o   NHTSA ID Number: 11479488, dated August 16, 2022:

   o   WHEN I COME TO A COMPLETE STOP AND THE START/STOP MOTOR GOES INTO IDLE MODE (SHUTS THE ENGINE DOWN), I HAVE A PROBLEM THAT OCCURS AFTER IT. IT IS UNPREDICTABLE BUT WHEN I COME OUT OF THE IDLE AND THE ENGINE IS SUPPOSED TO KICK BACK ON, MY MINIVAN STALLS OUT. THIS HAS HAPPENED IN HEAVY TRAFFIC AREAS AND IT TAKES 30 SECONDS TO A MINUTE TO GET THE VAN TO TURN BACK ON AS THE ELECTRICAL SYSTEM MALFUNCTIONS. BIG SAFETY ISSUE THAT CAN BE SCARY IN THE MOMENT. THERE ARE ERROR MESSAGES THAT COME UP ON THE DASH INCLUDING "COLLISION MITIGATION SYSTEM PROBLEM",

36

"BRAKE SYSTEM", AND THE CENTER CONSOLE SYSTEM WILL RESTART. THIS PROBLEM DOESN'T HAPPEN WHEN I DISABLE THE START/STOP MOTOR AS IT DOESN'T GO INTO IDLE-STOP MODE. I HAVE READ THROUGH ONLINE FORUMS RECENTLY AND IT APPEARS THIS ISSUE HAS HAPPENED IN OTHER HONDA MODELS DATING BACK TO 2016 MODELS. THIS IS CLEARLY AN ISSUE ACROSS YEARS/MODELS AND NEEDS TO BE ADDRESSED. THE LOCAL HONDA DEALERSHIP SAID THEY HAVEN'T HEARD OF THIS PROBLEM AND COULDN'T REPLICATE. THEREFORE, THERE WAS NO REPAIR PROVIDED.

99.    A list of representative complaints filed with NHTSA detailing the Engine Defect found in the 2020 Honda Odyssey Class Vehicles includes:

o   NHTSA ID Number: 11468251, dated June 8, 2022:

    o   HONDA IDLE STOP FEATURE IS THE ISSUE. MY WIFE DRIVES THIS CAR AND ON AT LEAST 20 OCCASIONS, THE CAR SHUT OFF WHEN SHE WAS STOPPED AT A STOP LIGHT WHEN IDLE STOP WAS ENABLED. THE CAR SHUTS OFF WHEN SHE TRIED TO ACCELERATE ONCE THE TRAFFIC LIGHT TURNS GREEN. THE CAR THEN HAS TO BE RESTARTED. THIS IS A SAFETY ISSUE BECAUSE CARS BEHIND US COULD EASILY REAR-END OUR VEHICLE SINCE THE STOP LIGHT HAS TURNED GREEN AND CARS ARE MOVING. HONDA CLAIMS THAT THEY CANNOT REPLICATE THE ISSUE BUT IT IS CLEARLY A LARGE ISSUE WITH THE IDLE STOP FEATURE. IT SEEMS AS IF THE VEHICLE DOES NOT HAVE ENOUGH POWER TO GET THE ENGINE BACK TO NORMAL MODE AND THEREFORE IT SHUTS OFF. MOST OF THE TIME THAT AIR CONDITIONING IS RUNNING SO PERHAPS THE EXTRA LOAD FROM THAT CONTRIBUTES. REGARDLESS, THIS IS SOMETHING THAT NEEDS TO BE FIXED QUICKLY.

o   NHTSA ID Number: 11468886, dated June 12, 2022:

    o   THE AUTO IDLE STOP AUTOMATICALLY TURNS ON WHEN THE VAN ENGINE IS STARTED. I WAS STOPPED AT A STOP SIGN WHILE TRYING TO CROSS A DUAL LANE HIGHWAY (55 MPH SPEED LIMIT). WAS NOT AWARE THAT THE AUTO IDLE STOP HAD SHUT OFF THE ENGINE. WHEN I HAD AN OPPORTUNITY TO CROSS THE HIGHWAY I LET OF THE BRAKE AND PRESSED THE ACCELERATOR AND THE ENGINE WAS ATTEMPTING TO START AND FELT LIKE WE WERE GOING TO BE STRUCK BY CROSS TRAFFIC BEFORE THE ENGINE STARTED AND WE WERE ABLE TO CROSS. I AM AWARE THAT THIS FEATURE CAN BE TURNED OFF. BUT IT HAS TO BE TURNED OFF EACH TIME THE VEHICLE IS STARTED. NEEDS TO BE A WAY TO PERMANENTLY DISABLE THIS FEATURE.

o  NHTSA ID Number: 11480126, dated August 19, 2022:

   o  THE "AUTO ENGINE IDLE STOP" SYSTEM IN MY MINIVAN IS MALFUNCTIONING. THIS IS A SAFETY ISSUE BECAUSE THE ENGINE DOES NOT ALWAYS RESTART WHEN I TAKE MY FOOT OFF THE BRAKE. I AM EVENTUALLY GOING TO BE HIT FROM BEHIND BY A DRIVER BEHIND ME THAT ASSUMES MY MINIVAN WILL ACCELERATE FROM A STOP WHEN IT IS SUPPOSED TO. EVERY TIME THE MALFUNCTION OCCURS, THE DASHBOARD DISPLAYS A MESSAGE "COLLISION MITIGATION SYSTEM PROBLEM". HOWEVER, I HAVE BEEN TOLD BY THE DEALERSHIP MECHANICS THAT THIS MESSAGE IS ERRONEOUS AND THAT IT IS DISPLAYING BECAUSE THERE ISN'T A PRESET ERROR MESSAGE ASSOCIATED WITH THE AUTO-ENGINE IDLE STOP MALFUNCTION. MY MINIVAN WAS 2 YEARS OLD WHEN I BROUGHT IT TO THE DEALERSHIP FOR REPAIR THE FIRST TIME. THAT WAS IN OCTOBER-2021 AND THE DEALERSHIP IS HONDA ON GRAND IN ELMHURST, ILLINOIS. I BROUGHT THE VEHICLE TO THEM ON SEVEN DIFFERENT OCCASIONS BETWEEN OCTOBER-2021 AND NOW. EVEN THOUGH THEY WERE ABLE TO REPRODUCE THE PROBLEM, THEY SAY THEY DON'T KNOW HOW TO FIX IT. SO, THEY MADE MINOR REPAIRS EACH TIME TO DIFFERENT ELECTRICAL AND DRIVE TRAIN SYSTEMS IN HOPES THAT THE MALFUNCTION WILL CEASE. AFTER 10 MONTHS AND 7 ATTEMPTED REPAIRS, MY VEHICLE IS STILL MALFUNCTIONING. THE DEALERSHIP INSTRUCTED ME TO CONTACT THE CORPORATE LEVEL HONDA CUSTOMER SERVICE DEPARTMENT, WHICH I DID ON JULY 8, 2022. I WAS ISSUED A CASE NUMBER AND A CUSTOMER SERVICE REPRESENTATIVE, WALTER, TO ASSIST IN RESOLVING THIS PROBLEM. AFTER MANY FOLLOW-UP PHONE CALLS TO THEM, THEY WILL NOT RETURN MY CALL TO DISCUSS MY VEHICLE. I RECENTLY CONTACTED THE ELMHURST, IL DEALERSHIP AND SPOKE WITH THE SERVICE MANAGER, DAVID ABRAHAM, WHO SAID HE WOULD FOLLOW UP WITH WALTER. HOWEVER, I STILL HAVE NOT BEEN CONTACTED. I AM VERY CONCERNED FOR MY SAFETY AND THE SAFETY OF MY TWO TEENAGE CHILDREN WHO ARE NOW DRIVING MY VEHICLE. THIS WILL UNDOUBTEDLY LEAD TO A COLLISION IF NOT REPAIRED.

o  NHTSA ID Number: 11480980, dated August 24, 2022:

   O  THE SIGNAL TURNED RED, AS I WAS BRAKING, THE CAR ENGINE STUTTERED AND CAR SHUT OFF. STARTLED, PUSH THE PARK BUTTON, AND PRESSED THE ENGINE START BUTTON BUT NO RESPONSE, PRESSED AGAIN AND IT STARTED. THIS HAPPENED 6 MONTHS BEFORE BUT DIDN'T REPORT IT AS I THOUGHT IT WAS A ONCE OFF EVENT. 6 MONTHS AGO, THE CAR WAS AT A RED LIGHT, THE IDLE WAS ON AND WHEN I ACCELERATED CAUSE THE LIGHT

CHANGED GREEN, THE CAR SHUT OFF. GET THE FEELING ITS DUE TO
THE IDLE BUT WANTED TO REPORT THIS MATTER

100.    A list of representative complaints filed with NHTSA detailing the Engine Defect

found in the 2015 Acura TLX Class Vehicles includes:

o   NHTSA ID Number: 11047571, dated November 20, 2017:

    o   ENGINE FAILED TO RESTART DURING 'AUTO IDLE-STOP/START' AT A
        TRAFFIC LIGHT ON A BUSY ROAD. IN ORDER TO RESTART I HAD TO
        PRESS THE 'START' BUTTON MULTIPLE TIMES AND RETURN THE CAR
        TO 'PARK' BEFORE BEING ABLE TO RESUME OPERATION.

o   NHTSA ID Number: 11128338, dated September 9, 2018:

    o   WHEN STOP AT A TRAFFIC LIGHT. THE CAR GOES INTO AUTO- OFF
        MODE. WHEN THE LIGHT CHANGES GREEN AND YOU APPLY THE GAS.
        THE CAR SHIFTS TO NETRAUL AND WILL NOT GO INTO DRIVE.I HAVE
        TO SHUT THE CAR OFF AND TURN IT BACK ON. I HAVE HAD THIS
        HAPPEN THREE TIMES SINCE I PURCHASED THIS VEHICLE THREE
        WEEKS AGO. THE CAR HAS 29632 MILES ON IT.

o   NHTSA ID Number: 11162430, dated December 19, 2018:

    o   *I HAVE HAD THE VEHICLE INTO THE DEALER 3 TIMES (FEB 2018,
        JULY 2018 AND NOV 18) FOR THE SAME PROBLEM.* EACH TIME THE
        VEHICLE STALLS AND MUST BET INTO PARK AND RESTARTED WHEN
        AT A STOP SIGN, STOP LIGHT OR STOPPED FOR ROAD CONSTRUCTION
        ON THE HIGHWAY. THE AUTOMATIC IDLE CAUSES THE CAR TO
        STALL. IN ORDER TO GET IT GOING MUST SHIFT INTO PARK AND
        RESTART. *IT IS VERY FRIGHTENING BECAUSE IT HAPPENS
        INTERMITTENTLY. THIS HAPPENS WITH NO WARNING AND
        PRESENTS A SAFETY ISSUE. THE CAR IS NOT SAFE AND IS A HAZARD*

o   NHTSA ID Number: 11221372, dated June 20, 2019:

    o   VEHICLE HAS STALLED MULTIPLE TIMES AFTER RESTART
        FROM IDLE STOP. UPON RELEASING OF THE BRAKES OR MOVEMENT
        OF THE STEERING WHEEL, A HALF RESTART INITIATES FOLLOWED BY
        A TOTAL STALL AND ALL LIGHT ON THE DASH FLASHING. THIS HAS
        HAPPEN ABOUT 7 TIMES FROM A FULL STOP RANDOMLY. THIS
        RESULTS IN A FULL STALL AND INABILITY TO RESTART THE CAR FOR
        ABOUT 10 SECONDS.

o   NHTSA ID Number: 11383216, dated December 13, 2020:

   o   2015 ACURA TLX FREQUENTLY STALLS, DOES NOT RESTART WHEN
       IDLE STOP FEATURE IS USED. THIS IS A SAFETY ISSUE WHEN AT AN
       INTERSECTION AND I AM STALLED, HAVING TO PUT THE CAR IN PARK
       AND THEN RESTART THE CAR. BROUGHT THE CAR IN TWICE TO
       ACURA IN 2016 WHEN I INITIALLY PURCHASED THE VEHICLE,
       BROUGHT IT IN AGAIN TO ACURA THIS WEEK AND THEY ARE UNABLE
       TO FIX IT, INDICATING THIS HAS BEEN AN ISSUE WITH TLX'S AND
       MLX'S. SAID REPLACING THE STARTER HELPED ONE CUSTOMER BUT
       SINCE NOT UNDER WARRANTY AND MY STARTER (AND BATTER AND
       ALTERNATOR) ALL CHECK OUT FINE, THEY DIDN'T RECOMMEND
       TRYING THAT. NORMALLY I TURN OFF THE FEATURE (WHICH THEY
       ARE UNABLE TO PERMANENTLY DISABLE) WHICH IS WHY I HAVEN'T
       BROUGHT IT BACK IN MORE FREQUENTLY BUT IT IS VERY
       CONCERNING IF I FORGET TO PRESS THE BUTTON TO TURN OFF THE
       FEATURE AND IT STALLS.

   101.   A list of representative complaints filed with NHTSA detailing the Engine Defect

found in the 2016 Acura TLX Class Vehicles includes:

o   NHTSA ID Number: 11408575, dated April 17, 2021:

   o   I HAVE SOME SERIOUS ISSUES WITH ACURA TLX WITH IDLE STOP
       FEATURE. MY CAR HAD THE SAME ISSUES LAST YEAR, WHEN THE
       CAR DIDN'T TURN BACK ON AUTOMATICALLY AFTER THE IDLE STOP
       FEATURE ACTIVATED. I TOOK MY CAR TO THE DEALERSHIP(ACURA
       OF FREMONT, CA) AND THEY CAN'T ABLE TO FIGURE OUT THE ROOT
       CAUSE AND MY CAR BATTERY DIED IN THE MIDDLE OF THE ROAD. IT
       TOOK 3 -4 HOURS TO TAKE THE CAR TO THE DEALERSHIP AND THEY
       REPLACED THE BATTERY BUT NOW THIS ISSUE STARTED HAPPENING
       AGAIN. I CALLED ACURA CUSTOMER SERVICE AND THEY PROVIDED
       ME THIS CASE NUMBER # [XXX] AND FORWARD THE CASE TO LOCAL
       DEALERSHIP (ACURA OF FREMONT, CA). I HAVE DROPPED THE CAR
       AT THE DEALERSHIP BUT THEY ARE NOT VERY HOPEFUL TO FIND
       OUT THE ROOT CAUSE OF THIS ISSUE. THIS ISSUE IS REALLY A
       SAFETY RISK AND NOT SURE WHAT YOU ARE PLANNING TO DO TO
       ADDRESS THIS ISSUE. IT'S SEEMS TO BE A KNOWN ISSUE WITH IDLE
       STOP FEATURE. HTTPS://WWW.TLXFORUMS.COM/THREADS/ENGINE-
       FAILING-TO-START-AFTER-IDLE-STOP.31809/ I AM HOPEFUL THAT
       YOU WILL ADDRESS MY CONCERN. PLEASE FEEL TO REACH OUT TO
       ME AT [XXX]. THANKS INFORMATION Redacted PURSUANT TO THE
       FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).

   o  NHTSA ID Number: 11469900, dated June 18, 2022

       o  IDLE STOP DOES NOT RESTART CAR & IS DIFFICULT TO RESTART SINCE CAR REMAINS IN DRIVE AFTER RESTART FAILS. A RECALL NOTICE WAS ISSUED, BUT THE SOFTWARE UPDATE IS NOT AVAILABLE AT ANY DEALERS AS OF JUNE 18, 2022. PRODUCT UPDATE REQUIRED FOR PGM-FI SOFTWARE.

102.    A list of representative complaints filed with NHTSA detailing the Engine Defect found in the 2017 Acura TLX Class Vehicles includes:

   o  NHTSA ID Number: 11468073, dated June 7, 2022:

       o  AUTO START-STOP SYSTEM FAILED ON SEVERAL OCCASIONS, THE CAR SHUT ITSELF DOWN SINCE THEN EVERY TIME I START THE CAT I DISABLE IT. TRANSMISSION FEELS CLUNKY, THERE IS KICK TO IT BETWEEN 2ND AND 3RD GEAR, ***MANY COMPLAINTS FOUND ON THE WEB***. BOUGHT THE CAR WITH 16XXX MILES 2 YEARS OLD.

   o  NHTSA ID Number: 11468113, dated June 8, 2022:

       o  AUTO STOP/START FEATURE FAILS TO RESTART VEHICLE, RENDERING VEHICLE INOPERABLE. POWERING OFF THE VEHICLE AND THEN POWERING UP THE VEHICLE THUS FAR HAS RESTARTED EVERYTHING, MUCH TO THE FRUSTRATION OF MYSELF AND THE DRIVERS BEHIND ME.

103.    A list of representative complaints filed with NHTSA detailing the Engine Defect found in the 2018 Acura TLX Class Vehicles includes:

   o  NHTSA ID Number: 11459222, dated April 1, 2022:

       o  ENGINE FAILS TO START AFTER IDLE STOP, WHEN THE IDLE-STOP OFF BUTTON IS NOT ENGAGED, AND THE BATTERY DOESN'T HAVE ENOUGH POWER TO RE-START THE VEHICLE. ESSENTIALLY, THE ENGINE TRIES TO START UP AT A TRAFFIC LIGHT/INTERSECTION BUT FAILS, CAUSING THE CAR TO TURN OFF AND SHIFT TO NEUTRAL WITHOUT WARNING. I THEN HAVE TO REALIZE WHAT IS HAPPENING, SHIFT THE CAR FROM NEUTRAL TO PARK, AND HIT THE START BUTTON TO BE ABLE TO RE-START THE CAR. THERE IS NO WARNING FROM THE CAR THAT THE BATTERY IS GOING TO BE UNABLE TO KEEP THE CAR RUNNING, SO THE STALL IS 100% UNEXPECTED. ***THIS IS UNSAFE, AS THE RE-START PROCEDURE IS NOT INTUITIVE, TAKES TIME, AND CAUSES CARS BEHIND YOU TO START HONKING. IT COULD VERY EASILY CAUSE A CRASH***. EITHER ACURA NEEDS TO FIX THIS ISSUE WITH A BATTERY WARNING, OR PROVIDE THE OPTION OF

TURNING THE AUTO-IDLE STOP OFF BUTTON ON PERMANENTLY (WHICH SOME MEMBERS OF OUR GOVERNMENT WOULDN'T LIKE, BUT WOULD FIX THE PROBLEM AND KEEP SOMEONE FROM BEING SERIOUSLY INJURED). THIS IS ALSO A KNOWN ISSUE BY HONDA/ACURA, AS MANY OTHER OWNERS ARE REPORTING IT: HTTPS://WWW.TLXFORUMS.COM/THREADS/ENGINE-FAILING-TO-START-AFTER-IDLE-STOP.31809/

o   NHTSA ID Number: 11458976, dated March 30, 2022:

    o   THE CONTACT OWNS A 2018 ACURA TLX. THE CONTACT STATED THAT WHILE DRIVING AT AN UNDISCLOSED SPEED, THE VEHICLE STALLED APPROXIMATELY TEN TIMES. THE VEHICLE INADVERTENTLY SHIFTED INTO NEUTRAL. THE VEHICLE WAS RESTARTED AFTER FIVE MINUTES. THE LOCAL DEALER WAS CONTACTED. THE VEHICLE WAS DIAGNOSED AND REPAIRED. THE MANUFACTURER WAS NOT CONTACTED. THE FAILURE MILEAGE WAS APPROXIMATELY 47,700. CONSUMER STATED THERE WAS A KNOWN SOFTWARE BUG IN THE AUTO IDLE FEATURE, THAT NEEDED UPDATING. CONSUMER TOOK THE CAR TO THE DEALER AND HAD THE SOFTWARE UPDATED.

    104.   A list of representative complaints filed with NHTSA detailing the Engine Defect found in the 2019 Acura TLX Class Vehicles includes:

o   NHTSA ID Number: 11323447, dated May 5, 2020:

    o   I STOPPED(STATIONARY) AT A LIGHT TO MAKE A LEFT TURN INTO THE FREEWAY. WHILE STATIONARY THE ENGINE WENT INTO AUTOMATIC IDLE STOP TO SAVE GAS AND ONCE THE LIGHT TURN GREEN THE CAR WAS NOT ABLE TO TURN ON AT ALL AND HAD TO CALL AAA. IT WAS GIVING ME ERROR MESSAGES IN REGARDS FUEL PUMP AND BRAKE SYSTEM ETC. IN THE DASH. *TR

o   NHTSA ID Number: 11427429, dated August 2, 2021:

    o   IDLE STOP SYSTEM WORKS PROPERLY 99.9% OF THE TIME. HOWEVER, THREE TIMES IN THE LAST 12 MONTHS, I WAS STOPPED AT A LIGHT AND WHEN I TOOK MY FOOT OFF THE BRAKE THE CAR DID NOT START. I TRIED TO RE-START, BUT IT DID NOT START IMMEDIATELY, TOOK ABOUT 10 TO 20 SECONDS TO START. IN EACH OF THE CASES, I WAS ABLE TO RESTART JUST NOT RIGHT AWAY. THESE THREE INSTANCES WERE ABOUT FOUR MONTHS OR SO APART. THE SYSTEM WAS CHECKED BY ACURA SERVICE TWICE, AND NO ISSUES FOUND.

o   NHTSA ID Number: 11468127, dated June 8, 2022:

    O   THE AUTO START STOP FEATURE FAILED TO START VEHICLE IN 3 DIFFERENT OCCASIONS, LEADING TO A TRAFFIC JAM EVERY TIME AND VEHICLES BEHIND ME ALMOST HITTING ME BECAUSE THEY THOUGHT I WILL BE MOVING WITH TRAFFIC, STILL WAITING ON ACURA FOR APPOINTMENT TO BRING VEHICLE

105.    A list of representative complaints filed with NHTSA detailing the Engine Defect found in the 2020 Acura TLX Class Vehicles includes:

o   NHTSA ID Number: 11420145, dated June 8, 2021:

    o   TWO TIMES IN THREE WEEKS WITH THE AUTO IDLE STOP ACTIVE THE CAR FAILED TO RESTART ON A GREEN LIGHT. ***FOLLOWING ALL THE PROMPTS IN THE CAR IT TAKES OVER A MINUTE TO RE START THE CAR WHILE BLOCKING TRAFFIC.***

o   NHTSA ID Number: 11479316, dated August 15, 2022:

    o   AFTER COMING TO A STOP AT A RED LIGHT, THE VEHICLE ENGINE TURNED OFF AS DESIGNED WITH AUTO START STOP. WHEN THE LIGHT TURNED GREEN, THE VEHICLE TEMPORARILY RESTARTED WHEN I RELEASED THE BRAKE PEDAL, BUT IMMEDIATELY STALLED AND WOULD NOT RESTART. ***THIS IS A MAJOR SAFETY CONCERN AS I WAS ON A FOUR LANE ROAD WITH TRAFFIC ALL AROUND AND I WAS UNABLE TO MOVE.*** I HAD PLACE THE VEHICLE INTO PARK, TURN OFF THE IGNITION FULLY, AND ATTEMPT TO RESTART THE CAR. IT EVENTUALLY RESTARTED, BUT IT TOOK NEARLY 90 SECONDS. ***THIS IS A DANGER TO MYSELF, AND TO THE TRAFFIC AROUND ME AS I WAS FULLY STOPPED ON A ROAD WITH 40 MPH LIMITS AND A LOT OF TRAFFIC***.

106.    A list of representative complaints filed with the NHTSA detailing the Engine Defect found in the 2016 Acura MDX Class Vehicles includes:

o   NHTSA ID Number: 11233636, dated July 21, 2019:

    o   MY 2016 ACURA MDX. STALLED TWICE. BOTH TIMES IN START AND STOP TRAFFIC WHEN STOPPED THE CYLINDER DEACTIVATION ENGAGED, HOWEVER THEN THE POWER WENT OUT COMPLETELY WITHOUT WARNING, IT TOOK ABOUT 5-10 MIN THEN THE PUSH TO START WORKED AND THE CAR RESTARTED. AFTER THE FIRST STALL WE TOOK IT ACURA, HOWEVER THEY SAID THERE WAS NOTHING WRONG. I AM WRITING THIS REPORT AFTER THE SECOND STALL TODAY.

o    NHTSA ID Number: 11373683, dated November 8, 2020:

    o    IN THE LAST 6 MONTHS, MY SUV HAS STALLED EITHER AT A STOP LIGHT OR WHEN PARKED. IT WOULD SPUTTER ON TRYING TO RESTART. BATTERY WAS NOT AN ISSUE. THOUGHT IT WAS A STARTER ISSUE AND GOT A NEW STARTER. BUT IT HAPPENED AGAIN TODAY AND THE TOW TRUCK GUY POWERED WITH JUMP START (EVEN THOUGH IT WAS NOT A BATTERY ISSUE) AND IT STARTED.

o    NHTSA ID Number: 11389169, dated January 21, 2021:

    o    IN SEPTEMBER 2020, CAR RANDOMLY TURNED OFF WHEN STOPPED AT A RED LIGHT (ON BUSY INTERSECTION) DURING IDLE MODE CAUSING THE CAR BEHIND US TO HIT WHEN LIGHT TURNED GREEN. NO DAMAGE WAS DONE TO MY CAR SINCE THE CAR WASN'T MOVING AT WAS HIT AT LOW SPEED.

o    NHTSA ID Number: 11427269, dated July 31, 2021:

    o    WHEN AIR CONDITIONER IS RUNNING IN HOT SUMMER DAYS, THE CAR HESITATES TO RESTART (SOMETIMES) FOLLOWING IDLE STOP ENGINE SHUTOFF AFTER COMING TO A FULL STOP AT A STOP SIGN OR RED LIGHT. I STRONGLY FEEL THIS IS A SAFETY CONCERN AS THIS IMPEDES TRAFFIC AND CAN CAUSES ROAD RAGE. IF NEEDED I CAN SHARE VIDEO OF THIS SITUATION RECURRING TIME TO TIME. CAR STARTS JUST FINE EVERY SINGLE TIME OUTSIDE OF IDLE STOP SITUATIONS AND BATTERY HEALTH IS NEAR PERFECT. THERE ARE HUNDREDS OF FORUMS TALKING ABOUT THIS EXACT CONDITION ACROSS ACURA MODELS.

    107.    A list of representative complaints filed with the NHTSA detailing the Engine Defect found in the 2017 Acura MDX Class Vehicles includes:

o    NHTSA ID Number: 11098373, dated May 29, 2018:

    o    ACURA MDX 2017 BOUGHT BRAND NEW. ***HAS SHUT OFF COMPLETELY 5 TIMES IN THE LAST 60DAYS. 3 TIMES IN THE LAST 2 DAYS.*** COME TO A STOP, ENTIRE CAR SHUTS OFF ALONG WITH ***ELECTRONICS. OCCURED THE LAST THREE TIMES AT AN INTERSECTION WAITING TO TURN LEFT OR AT A RED LIGHT***. . CAN'T MOVE. HAVE TO RESTART THE CAR. ***DANGEROUS. I'VE TAKEN IT TO ACURA AND THEY SAY NOTHING IS WRONG. SERVICE TECH TOLD ME ANOTHER MDX OWNER IS HAVING SAME ISSUE.***

o   NHTSA ID Number: 11466572, dated May 29, 2022:

    o   ***THE VEHICLE STALLS AND LOSES ALL POWER WHEN COMING OUT OF AUTO IDLE STOP***. THIS IS A DEFAULT FEATURE THAT SHUTS THE ENGINE OFF WHEN THE VEHICLE STOPS TO CREATE FUEL EFFICIENCY. BUT IT IS CREATING A TERRIBLE SAFETY ISSUE OF HAVING VEHICLES UNEXPECTEDLY STOPPED ON THE ROADWAY. THE FEATURE CANNOT BE PERMANENTLY TURNED OFF. ***COMMON ISSUE ON MDX FORUMS WITHOUT ANY REAL SOLUTION FROM DEALERSHIP MECHANICS.***

o   NHTSA ID Number: 11482647, dated September 2, 2022:

    o   THE CAR SEVERAL TIMES NOW HAS STOPPED IN TRAFFIC AND DIED AFTER THE IDLE STOP WAS INITIATED WHILE STOPPED IN TRAFFIC. IT WILL NOT START UP FOR AT LEAST 30 SECONDS TO A MINUTE. ***WE WERE ALMOST REAR-ENDED BECAUSE WE WERE STUCK IN THE MIDDLE OF THE ROAD.*** I WAS TOLD THAT CANADA HAS ISSUED A RECALL BECAUSE OF THIS ISSUE

108.   A representative complaint filed with the NHTSA detailing the Engine Defect found in the 2018 Acura MDX Class Vehicles is copied below:

o   NHTSA ID Number: 11099303, dated June 2, 2018:

    o   ***STARTER FAILED WITH AUTO START/STOP WHILE STOPPED IN TRAFFIC***. SINCE ENGINE WOULDN'T START, CAR SHIFTED TO PARK AUTOMATICALLY AND CAN NOT SHIFT TO NEUTRAL WITH THE ENGINE OFF AND UNABLE TO START. THE BATTERY WAS FINE AND COULD GO INTO AUX MODE, BUT STILL WON'T SHIFT TO NEUTRAL. ***ASIDE FROM QUALITY ISSUES RELATED TO STARTER, SIGNIFICANT SAFETY DESIGN FLAW.***

109.   A list of representative complaints filed with the NHTSA detailing the Engine Defect found in the 2019 Acura MDX Class Vehicles includes:

o   NHTSA ID Number: 11456636, dated March 14, 2022:

    o   WHEN AT A RED LIGHT, I PUSHED THE BRAKE AND THE AUTO IDLE STOP FEATURE BECOME ENGAGED. WHEN THE LIGHT TURNED GREEN AND I LIFTED MY FOOT OFF THE BRAKE, THE CAR WENT INTO NEUTRAL AND WOULD NOT MOVE OR START. ***IN ORDER TO TURN THE CAR BACK ON, I NEEDED TO PUT THE CAR IN PARK MODE AND THEN RESTART THE CAR. THIS IS A SAFETY HAZARD SINCE THIS HAPPENED AT A BUSY INTERSECTION, WITH NO WARNING, AND CARS NEEDED TO GO AROUND ME***. THIS HAPPENED TWICE BEFORE I

COULD BRING MY CAR IN TO GET IT CHECKED. THE ACURA SERVICE DEPARTMENT CHANGED OUR BATTERY

o   NHTSA ID Number: 11457242, dated March 18, 2022:

   O   ON SEVERAL OCCASIONS WHEN AUTO START/STOP IS ENGAGED THE VEHICLE WILL SHIFT INTO NEUTRAL ON ITS OWN UPON RESTART. THE ENGINE WILL JUST REV AND NOT GO BACK INTO DRIVE UNTIL YOU PUT IT IN PARK AND THEN DRIVE AGAIN. ***THIS HAS CAUSED US TO STALL IN FRONT OF A SEMI AND 2 OTHER VEHICLES. THE DEALER HAS REPLICATED THE ISSUE ON MULTIPLE OCCASIONS AND IS NOW THERE FOR A 3RD TIME***. FIRST 'FIX' WAS CHARGE THE BATTERY SECOND 'FIX' WAS ADJUST EXHAUST AND TRANSMISSION VALVES THIRD 'FIX' IS REPLACING THE FUEL PUMP THERE WAS A 2019 RECALL FOR ACURA MDX BUT THIS VIN DOES NOT SHOW UP FOR THAT.

o   NHTSA ID Number: 11473342, dated July 11, 2022:

   O   I HAVE HAD PROBLEMS WITH THE CAR STALLING OR SHIFTING TO NEUTRAL FROM DRIVE AFTER THE AUTO STOP FEATURE IS ENGAGED. THIS TYPICALLY HAPPENS WHEN THE ENGINE TRIES TO RESTART AFTER HAVING SHUTOFF AT THE STOP. IT IS DIFFICULT TO REPLICATE THE PROBLEM AND THE DEALER CAN'T SEEM TO REPLICATED THE PROBLEM BUT IT HAS HAPPENED TO ME MANY TIMES, PARTICULARLY IN HOT WEATHER OR AFTER LONG DRIVES. TYPICALLY IT HAPPENS AFTER A LONG DRIVE OR A LOT OF AROUND TOWN DRIVING (MAYBE WHEN THE ENGINE IS HOT?). THE DEALER DOES NOT BELIEVE IT IS RELATED TO THE FUEL PUMP REPLACEMENT BUT THAT IS WHEN IT SEEMED TO HAVE STARTED HAPPENING BUT THIS IS ENTIRELY SPECULATION. ***VERY FRUSTRATING AS I HAVE BEEN TO THE DEALER 3 TIMES WITH THE PROBLEM*** AND THEY CANNOT "REPLICATE" IT. THEY SUPPOSEDLY ALSO REPLACED THE BATTERY AND UPDATED THE SOFTWARE IN THE CAR BUT THAT HAS NOT SOLVED IT. ***I AM GROWING CONCERNED BECAUSE IT IS VERY DANGEROUS, PARTICULARLY WHEN STOPPED AT A BUSY INTERSECTION. THE LAST STALL HAPPENED AND IT TOOK A MINUTE OR SO TO GET THE CAR RUNNING AGAIN AT A BUSY AND LARGE INTERSECTION. I AM ALSO WORRIED ABOUT THE HAPPENING WHEN ON AN INCLINE.*** IT DOESN'T HAPPEN ALL OF THE TIME, SOMETIMES THERE IS JUST A HESITATION BUT THE CAR STARTS AND LURCHES FORWARD. I HAVE A 2019 WITH ABOUT 35K MILES ON IT AND HAVE USED PRIMARILY FOR LONG DISTANCE TRIPS AND NOT MUCH AROUND TOWN DRIVING. I HAVE ATTACHED THE DEALER WORK ORDERS FOR THE THREE VISITS BUT STOPPED BRINGING THE CAR IN BECAUSE IT HAS BEEN A WASTE OF TIME AS THEY ARE UNABLE TO FIND THE ISSUE. ***ALSO, I HAVE REPORTED THE ISSUE TWICE TO***

> *AMERICAN HONDA AND THEY HAVE SENT ME BACK TO THE DEALER WITH NO RESULTS.* THIS IS A DANGEROUS SITUATION AND I NOTICED THAT THERE IS A RELATED RECALL FOR THE ACURA TLX MODEL WITH THE SAME ENGINE. THIS PROBLEM IS ONGOING AND HAS HAPPENED TO ME TWICE IN THE PAST 2 DAYS IF I FORGET TO DISABLE THE AUTO SHUTOFF FEATURE. THANKS.

- NHTSA ID Number: 11474707, dated July 19, 2022:

  > *I WAS DRIVING MY CAR WITH MY INFANT DAUGHTER IN THE BACKSEAT.* WE WERE STOPPED AT A RED LIGHT IN THE MIDDLE OF A BUSY INTERSECTION. THE CAR WAS IN IDLE MODE. WHEN I WENT TO TURN LEFT THE CAR SHIFTED INTO NEUTRAL. I COULD NOT GO INTO DRIVE. I HAD TO TURN THE CAR OFF AND TURN IT BACK ON AGAIN TO GET IT TO MOVE OUT OF THE INTERSECTION. *WE ALMOST GOT REAR ENDED. WHEN MY HUSBAND BROUGHT THE CAR IN THE SHOP THEY RAN DIAGNOSTIC TESTING AND SAID NOTHING WAS WRONG.* ONLY THAT THE PROBLEM MAY BE CAUSED BY A LOW BATTERY. THEY REPLACED THE BATTERY AND LET MY HUSBAND DRIVE HOME. I WANT TO KNOW WHY THERE WAS NO LOW BATTERY WARNING LIGHT? ALSO WHY DO I HAVE TO ALMOST HAVE A COLLISION TO FIND OUT THE BATTERY DOESN'T WORK?

- NHTSA ID Number: 11480221, dated August 19, 2022:

  - ON A FEW OCCASIONS, WHILE AT A STOP LIGHT THE AUTO IDLE ENGAGED. WHEN I LIFTED MY FOOT FROM THE BRAKE PEDAL, WHICH SHOULD RESTART THE ENGINE, THE CAR SHIFTS AUTOMATICALLY INTO NEUTRAL AND CANNOT RESTART THE ENGINE. THE DASH SHOWS A MESSAGE SAYING THAT I MUST NOW SHIFT TO PARK. I HAVE TO THEN TURN THE CAR OFF, WHILE IN TRAFFIC, AND THEN RESTART. THIS HAPPENS WHILE IN TRAFFIC, CAUSING EVERYONE BEHIND ME TO WAIT OR DRIVE AROUND. I HAVE TAKEN THIS TO ACURA OF STAMFORD TWICE ALREADY, AND THEY CANNOT RECREATE IT. I HAVE PICTURES OF THE CAR WHEN IT WAS IN NEUTRAL. OTHER PEOPLE HAVE REPORTED THIS OCCURRING ON A 2019 MDX AS WELL.

- NHTSA ID Number: 11480455, dated August 21, 2022:

  - WHEN THE IDLE STOP COMES ON IT SHIFTS THE CAR TO NEUTRAL AND I MUST SHUT OFF THE CAR TO GET IT TO START AGAIN. *THIS HAPPENS WHILE ON THE HIGHWAY AND IS UNSAFE.*

- NHTSA ID Number: 11481550, dated August 27, 2022:

  o THE AUTO STOP FEATURE IS ENABLED BY DEFAULT WHEN THE CAR IS STARTED. WHEN STOPPED AT A TRAFFIC LIGHT OR IN A TRAFFIC JAM, THE AUTO STOP TURNS OFF THE ENGINE AND IS SUPPOSED TO RESTART WHEN THE DRIVERS FOOT IS OFF THE BRAKE. THE ENGINE UNEXPECTEDLY WILL NOT RESTART, AND THE CAR MUST BE PUT IN PARK, TURNED OFF, AND RESTARTED. THIS IS DANGEROUS IN HEAVY TRAFFIC. THE DEALER REPLACED THE BATTERY AS AN ATTEMPTED REPAIR. THE PROBLEM REOCCURRED. ***THE DEALER THEN UPDATED THE SOFTWARE, WHICH ALSO DID NOT SOLVE THE PROBLEM***. ***THE DEALER ADVISED THAT HONDA IS AWARE OF THE PROBLEM AND CURRENTLY HAS NO SOLUTION***. I WAS ADVISED TO MANUALLY TURN OFF THE AUTO STOP FEATURE UNTIL A SOLUTION CAN BE FOUND.

- NHTSA ID Number: 11483337, dated September 7, 2022:

  o THE CONTACT OWNS A 2019 ACURA MDX. THE CONTACT STATED WHILE AT A STOP LIGHT AND ATTEMPTING TO MAKE A LEFT TURN, THE VEHICLE LOST MOTIVE POWER AND STALLED. THE CONTACT STATED THAT A WARNING MESSAGE TO "PARK AND RESTART" THE VEHICLE WAS DISPLAYED. THE CONTACT SHIFTED THE VEHICLE INTO PARK(P) AND ATTEMPTED TO RESTART THE VEHICLE HOWEVER, THE VEHICLE WOULD NOT START IMMEDIATELY. THE CONTACT STATED THAT AFTER SEVERAL ATTEMPTS THE VEHICLE RESTARTED.

110.    A list of representative complaints filed with the NHTSA detailing the Engine Defect found in the 2020 Acura MDX Class Vehicles includes:

- NHTSA ID Number: 11473786, dated July 13, 2022:

  o MY CAR WAS STOPPED AT A LIGHT WITH IDLE AUTO ON. THE CAR SHUT OFF AND SWITCHED INTO NEUTRAL WITH CHECK ENGINES LIGHTS ON THE DASH. I WAS NOT ABLE TO SWITCH THE CAR TO DRIVE. I HAD TO RESTART THE CAR. THIS HAS HAPPENED TWICE IN 2 WEEKS AT BUSY INTERSECTIONS. I HAVE BROUGHT THE CAR TO THE DEALERSHIP BUT THEY ARE UNABLE TO REPLICATE. ***THERE WAS NO PRIOR WARNING LAMPS OR SIGNS PRIOR TO THIS HAPPENING.***

- NHTSA ID Number: 11482425, dated September 1, 2022:

  o ***CAR WILL NOT RESTART FROM THE AUTO IDLE STOP WHEN AT A STOP LIGHT***. THE DASH GOES BLANK THEN FLASHES EVERYTHING AND IT TAKES A MINUTE OR SO TO RESTART. IT HAS HAPPENED 3-4 TIMES IN THE LAST 6 MONTHS. ONCE ON A 55 MPH HIGHWAY. VERY

DANGEROUS SAFETY ISSUE. I HAVE TAKE IT TO THE ACURA DEALERSHIP SERVICE DEPARTMENT AND THEY SAY DIAGNOSTICS DOES NOT SHOW WHY. HOWEVER, THEY SAID IT HAS HAPPENED TO THEIR TXL MODEL AND A SOFTWARE UPDATE WAS THE SOLUTION AND THEY ARE HOPEFUL THEY WILL GET ON UPDATE SOON. SERVICE ASSOCIATE DID SAY OTHERS HAVE BEEN CALLING IN ABOUT THE SAME ISSUE. BUT DO NOT KNOW IF ACURA IS WORKING ON A *FIX. I DID REPORT THE INCIDENTS TO THE NATIONAL ACURA CUSTOMER SERVICE DEPARTMENT AND HAVE A CASE NUMBER*.

111.    A list of representative complaints filed with the NHTSA detailing the Engine Defect found in the 2019 Honda Passport Class Vehicles includes:

- NHTSA ID Number: 11462960, dated May 1, 2022:

  o I STOPPED AT RED-LIGHT AND THE AUTO STOP IDLE WAS ENGAGED*. ONCE THE LIGHT CHANGED, AND I REMOVED MY FOOT FROM THE BRAKE TO DISENGAGE THE AUTO IDLE, UNEXPECTEDLY THE GEAR JUST SHIFTED TO NEUTRAL . I THEN HAD PUT IT IN PARK , AND PRESS THE IGNITION START BUTTON . IT TOOK A COUPLE TIMES BEFORE RESTARTING. I HAD TO ENDURE OTHER DRIVERS HONKING AND YELLING AT ME, BECAUSE I WAS THE 1ST CAR AT THE STOP LIGHT. THIS HAS HAPPENED AT LEAST 8-10 TIMES IN THE PAST 4 MONTHS*. AFTER HAVING MY VEHICLE FOR 3 DAYS, THE DEALER SAID THEY COULDN'T FIND THE PROBLEM . WIH ROAD RAGE WHAT IT IS IN THESE TIMES, SOMETHING LIKE THAT COULD SPARK ALOT OF FRUSTRATION IN OTHER DRIVERS. I HAVE READ BLOGS ABOUT OTHER HONDA PASSPORT OWNERS HAVING THE SAME ISSUE. HONDA REALLY NEEDS TO FIND OUT WHAT THE ISSUE IS BEFORE SOMEONE GETS INTO AN ACCIDENT BECAUSE OF THIS ISSUE![56]

- NHTSA ID Number: 11465997, dated May 24, 2022:

  o *3X IN THE LAST 6MONTHS MY PASSPORT HAS FAILED TO START AFTER THE AUTO STOP AT IDLE HAS ENGAGED*. THE DEALERSHIP SAID THE BATTERY IS FINE AND *ONE TECHNICIAN JUST SAID "DISABLE THE FEATURE "*. TODAY WHEN ADAPTIVE CRUISE CONTROL WAS ENGAGED, THE CAR INCREASED IN SPEED FROM THE SET 72 TO OVER 80MPH. *I ALSO EMAILED HONDA CORP AND THEIR RESPONSE WAS TO SEE A DEALER AND DID NOT ACKNOWLEDGE IF THE AUTO STOP/START ISSUE WAS KNOWN FOR OTHER VEHICLES*.

[56] Capitalization in original.

- NHTSA ID Number: 11468248, dated June 8, 2022:

  o THE ISSUE IS WITH HONDA'S IDLE STOP FEATURE. SEVERAL TIMES I HAVE BEEN STOPPED AT A STOP LIGHT AND ONCE I TRY TO ACCELERATE, THE ENGINE HAS TURNED COMPLETELY OFF AND THE GEAR HAS SHIFTED TO NEUTRAL. I THEN HAVE TO PUT THE VEHICLE BACK IN PARK AND RESTART THE ENGINE. FORTUNATELY I HAVE NOT BEEN REAR-ENDED YET BUT THAT IS INEVITABLE. HONDA CLAIMS THEY CANNOT REPLICATE THE ISSUE BUT IT HAS HAPPENED TO ME ON MANY OCCASIONS.

- NHTSA ID Number: 11468125, dated June 8, 2022:

  O ENGINE WILL NOT START AFTER AUTO START/STOP SHUTS DOWN THE ENGINE AFTER A COMPLETE STOP. CAR REQUIRES A JUMP START TO GET ENGINE RUNNING. DUE TO DESIGN OF HONDA TRANSMISSION, CAR CAN NOT BE PUT IN NEUTRAL AN PUSHED OFF THE ROAD, IT BLOCKS TRAFFIC UNTIL IN CAN BE RESTARTED OR TOWED

- NHTSA ID Number: 11468164, dated June 8, 2022:

  O THE AUTO START/STOP WAS THE COMPONENT THAT MALFUNCTIONED. I WAS AT A STOP LIGHT, AND WHEN I WENT TO ACCELERATE THE CAR WOULD NOT GO. IT AUTOMATICALLY SHIFTED INTO NEUTRAL. I THEN COULD NOT SHIFT TO PARK OR DRIVE. IT WOULD NOT LET ME SHUT THE CAR DOWN. I WAS IN THE MIDDLE OF TRAFFIC WHEN THIS HAPPENED. ***IT CAUSED A SAFETY ISSUE FOR ME AND OTHERS WHO HAD TO GO AROUND ME. I HAD TO PUT MY FLASHERS ON AND CONTINUOUSLY KEPT TRYING TO SHUT THE CAR DOWN***. I'M NOT SURE WHAT CAUSED MY CAR TO RESTART OR ALLOW ME TO SHIFT INTO DRIVE, BUT EVENTUALLY I WAS ABLE TO DO SO.

- NHTSA ID Number: 11472219, dated July 3, 2022:

  O AFTER EXITING INTERSTATE AND SITTING AT TRAFFIC LIGHT ON OFF RAMP, CAR CUT OFF DUE TO AUTO STOP/START SYSTEM. WE NORMALLY PUSH THE BUTTON TO TURN THIS OFF AS WE DO NOT LIKE THE FEATURE, HOWEVER, WE HAD FORGOTTEN TO DO THIS WHEN WE FIRST STARTED DRIVING. WHILE SITTING AT THE LIGHT AND AFTER CAR ENGINE CUT OFF, I PUSHED THE AUTO STOP/START BUTTON TO START THE ENGINE AND CUT OFF THE FUNCTION FOR THE REST OF OUR TRIP. AS SOON AS I PRESSED THE BUTTON, THE CAR MADE A NOISE, THE BRAKE LOCKED UP, AND A NOTIFICATION CAME UP ON THE DASH THAT HAD AN EXCLAMATION POINT SAID SOMETHING ABOUT SYSTEM. I COULD NOT RESTART THE CAR

50

BECAUSE THE BRAKE WAS FROZEN. AFTER ABOUT 5 MINUTES, THE BRAKE RELEASE AND I WAS ABLE TO START THE CAR. WE WERE IN A PANIC BECAUSE OF THE BACKED UP TRAFFIC WE WERE CAUSING. PLUS WE WERE ABOUT 6 HOURS FROM HOME. I TOOK IT TO THE DEALER AND HE COULD FIND NOTHING WRONG.

- NHTSA ID Number: 11474374, dated July 17, 2022:

  o THE VEHICLE STALLS AFTER THE AUTO-SHUTOFF/IDLE IS ENGAGED. AS I LIFT MY FOOT OFF THE BREAK PEDAL TO DISENGAGE IT, THE CAR SHUTS OFF AND INDICATES THAT IT HAS BEEN PLACED IN PARK MODE. I THEN HAVE TO TURN THE VEHICLE BACK ON. IT CAN TAKE UP TO 25-30 SECONDS. I ONLY EVER HAVE ISSUES RESTARTING THE VEHICLE AFTER IT STALLS AS A RESULT OF THE AUTO-SHUTOFF BEING ENGAGED.

- NHTSA ID Number: 11476695, dated July 30, 2022:

  o THIS PROBLEM HAS OCCURRED 4 TIMES SINCE PURCHASED. THE FIRST WITHING THE FIRST 8 MONTHS, THE LAST YESTERDAY (7/29/2022). WHAT HAPPENS IS ONCE STOPPED AT LIGHT, WHEN THE CAR STOPS RUNNING TO SAVE GAS AND IS SUPPOSED TO START UP WHEN THE BRAKE IS RELEASED, *THE CAR DOES NOT RESTART LEAVING YOU DEAD STOPPED IN THE ROAD.* THE INDICATOR SHOWS YOU ARE IN NEUTRAL GEAR, ENGINE NOT RESTARTING FROM THE RELEASING BREAK. HITTING THE START BUTTON DOES NOTHING. ONLY ONCE DID I GET A MESSAGE ON DASH THAT SAID PUT IN PARK, THAN PUT IN DRIVE. OUT OF THE 4 TIMES THIS HAPPENED, ALL BUT ONE HAPPENED AT A STOP WHERE THE ENGINE WENT OFF WAITING FOR FOOT TO COME OFF BREAK. ONCE IT HAPPENED WHEN I MADE A U TURN AND COMING OUT OF THE TURN, THE ENGINE WAS IN N. IT HAPPENS SO UNEXPECTED THAT IT IS DIFFICULT TO STAY COMPOSED AND WORK THROUGH A ROUTINE TO GET IT STARTED AGAIN, ESPECIALLY WHEN THERE IS A LINE OF CARS BEHIND WAITING TO GO. I HAVE NOT BEEN ABLE TO DUPLICATE THE PROBLEM. *I HAVE REPORTED IT TO MY HONDA SERVICE CENTER AND THEY SAY THERE IS NOTHING IN THE COMPUTER TO HELP THEM FIND AND FIX THE PROBLEM. THE CONCERN IS A SAFETY ISSUE WHEN THIS OCCURS AND A CAR COMES UP BEHIND ME SEEING A GREEN LIGHT, EXPECTING ME TO GO AND THEY NOT SLOWING DOWN. THIS PROBLEM HAS BEEN REPORTED ON THE HONDA PASSPORT BLOG BY A COUPLE OTHERS.*

- NHTSA ID Number: 11476797, dated July 31, 2022:

  o THE AUTO-STOP-START MALFUNCTIONED AT A STOP SIGN AND WOULD NOT WORK UNTIL I TURNED OFF THE ENGINE and opened the door and then it worked. Overall, very unhappy with this vehicle.

- NHTSA ID Number: 11477836, dated August 5, 2022:

  o WHEN STOPPED AND THE IDLE OFF FEATURE SHUTS THE ENGINE OFF, THE VEHICLE DOES NOT RESTART WHEN FOOT IS REMOVED FROM BRAKE. VEHICLE SHIFTS ITSELF INTO NEUTRAL AND THE DASH READS SOMETHING TO THE EFFECT OF "SHIFT TO PARK TO START VEHICLE". *AMAZED I HAVE NOT BEEN REAR ENDED YET....* THIS HAPPENS RANDOMLY AND NOT EVERY TIME AT IDLE OFF. DEALERSHIP COULD NOT REPRODUCE IN THE 5 MINUTES THEY TOOK TO LOOK AT IT.

- NHTSA ID Number: 11479459, dated August 15, 2022:

  o AUTO ENGINE IDLE HAS AN INCONSISTENT ISSUE WITH NOT RESTARTING. WHEN AT A FULL STOP, THE ENGINE GOES TO NEUTRAL AND DOES NOT RESTART. *THIS HAS LEFT ME TEMPORARILY STRANDED WHILE I ATTEMPT A FULL RESTART.* THE DEALER CLAIMS TO NOT BEING ABLE TO DUPLICATE THE ISSUE. THE BATTERY HAS CONSISTENTLY TESTED FINE. I NOW MANUALLY SHUT OFF THIS OPTION BEFORE DRIVING.

- NHTSA ID Number: 11479652, dated August 16, 2022:

  o WHEN THE AUTOMATIC IDLE START/STOP FEATURE IS ENABLED, THE ENGINE WOULD PROPERLY SHUT OFF WHEN STOPPED AT A TRAFFIC LIGHT. *HOWEVER, THE ENGINE WOULD NOT RE-START WHEN THE BRAKE WAS RELEASED LEAVING THE CAR STRANDED AT THE INTERSECTION.* AFTER PRESSING THE AUTO IDLE START/STOP ENABLE/DISABLE BUTTON SEVERAL TIMES AND THE ENGINE START STOP BUTTON SEVERAL TIMES, THE ENGINE WOULD EVENTUALLY START AGAIN. *THIS HAS HAPPENED NUMEROUS TIMES.* UPON TAKING THE CAR TO THE HONDA DEALERSHIP FOR EVALUATION, WE WERE TOLD THE BATTERY WAS BAD AND NEEDED REPLACING. SINCE A NEW BATTERY IS $400, WE DECIDED TO HAVE THE BATTERY TESTED INDEPENDENTLY AND THE BATTERY, WHICH IS RATED AT 650 CCA, TESTED TO HAVE 651 CCA. ADDITIONALLY, THE BATTERY WAS TESTED FOR HOLDING A CHARGE AND PASSED THAT TEST TOO. UPON RETURNING TO THE HONDA DEALERSHIP WITH THIS INFORMATION, THE SERVICE ADVISOR THEN STATED THE STARTER WAS BAD AND NEEDED TO BE REPLACED FOR NEAR $900. AS WE HAVE HAD NO PROBLEMS WITH THE BATTERY OR THE STARTER UP

TO THIS POINT, OTHER THAN WHEN THE AUTO IDLE STOP ENGAGES AT A TRAFFIC LIGHT, WE DID NOT REPLACE THE STARTER. SINCE LEAVING THE DEALERSHIP, APPROXIMATELY 2 MONTHS AGO, THE CAR HAS CONTINUED TO START AS EXPECTED WHEN MANUALLY STARTING. HOWEVER, THE AUTO IDLE START/STOP FEATURE CONTIUES TO FAIL INTERMITTENTLY. *WE URGE YOU TO HOLD HONDA ACCOUNTABLE FOR RECALLING AND REPAIRING THIS DEFECT THAT CREATES A SERIOUS SAFETY HAZARD FOR HONDA OWNERS AS WELL AS OTHER DRIVERS ON THE ROAD. HONDA'S CURRENT PUBLIC RESPONSE THAT THE AUTO IDLE START/STOP FEATURE CAN BE DISABLED BY PRESSING THE OFF BUTTON IS NOT ACCEPTABLE AS THE FEATURE IS AUTOMATICALLY ENABLED EACH TIME WE START THE CAR. FORGETTING TO DISABLE THIS FEATURE IS A SAFETY HAZARD. THANK YOU!*

- NHTSA ID Number: 11480333, dated August 20, 2022

  o MY CAR HAS AN AUTOMATIC STOP START. I CAME TO A FULL STOP AT A RED LIGHT AND THE ENGINE AUTOMATICALLY TURNED OFF. THE LIGHT TURNED GREEN AND I DEPRESSED THE GAS PEDAL AND NOTHING HAPPENED, IN OTHER WORDS THE ENGINE DID NOT TURN ON. WITHIN A FEW MINUTES, I COULD TURN THE ENGINE BACK ON ALTHOUGH SITTING STALLED AT A LIGHT ON A HIGH SPEED EXPRESSWAY WAS DANGEROUS.

- NHTSA ID Number: 11480730, dated August 23, 2022:

  o PROBLEM WITH THE AUTO START/STOP. AUTO START/STOP CAUSED THE CAR TO COMPLETELY SHUT OFF AT A STOPLIGHT AND THE CAR WOULD NOT RESTART. I TRIED APPLYING THE BREAK AND RE-STARTING THE CAR USING THE START BUTTON, BUT THE CAR DID NOT RESPOND. THE CAR WAS COMPLETELY INOPERABLE FOR AT LEAST 15 MINUTES AND LEFT US STRANDED AT A BUSY INTERSECTION. THE AUTO START/STOP WILL OFTEN SHUT DOWN THE CAR COMPLETELY AT STOPS AND IT WILL NOT RESTART AUTOMATICALLY. THERE WERE NO WARNINGS PRIOR TO SHUT DOWN. I'VE ONLY HAD THIS CAR A FEW MONTHS AND IT HAS HAPPENED TWICE IN TWO MONTHS. I AM FORCED TO TURN THE AUTO START/STOP FEATURE OFF EVERY TIME I GET IN THE CAR NOW.

- NHTSA ID Number: 11480974, dated August 24, 2022:

  o THE CONTACT OWNS A 2019 HONDA PASSPORT. THE CONTACT STATED THE AUTO START/STOP FEATURE INTERMITTENTLY FAILED TO OPERATE AS NEEDED WITHOUT WARNING. THE CONTACT STATED THAT UPON RELEASE OF THE BRAKE PEDAL, THE VEHICLE STALLED, CAUSING THE CONTACT TO MANUALLY RESTART THE VEHICLE. THE

CONTACT HAD TAKEN THE VEHICLE TO A DEALER HOWEVER, THE MECHANIC WAS UNABLE TO DUPLICATE THE FAILURE. THE CONTACT HAD THE BATTERY REPLACED; HOWEVER, THE FAILURE PERSISTED. THE MANUFACTURER HAD BEEN INFORMED OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 10,000.

- NHTSA ID Number: 11481648, dated August 28, 2022:

  o AUTO ENGINE IDLE STOP FUNCTION DOESN'T WORK RIGHT SOMETIMES. SOMETIMES WHEN IT TRIED TO START THE ENGINE AGAIN FROM STOP, ENGINE HAD HARD TIME START AGAIN AND SOMETIMES IT IS ALMOST DIE. ***ONE TIME ENGINE DIED IN THE TRAFFIC STOP AND GO SITUATION AND HONDA DEALER SAID THE BATTERY WAS BAD AND THEY REPLACED IT BUT IT DIDN'T SOLVE THE PROBLEM.*** WHEN I TOOK MY CAR TI THE DEALER AGAIN, THEY SAID 'WHEN THE TEMP SETTING WAS SET TO LO, IDLE START/STOP FUNCTION WILL NOT WORK.' BUT EVEN THOUGH TEMP SETTING WAS NOT LOW, IDLE START/STOP FUNCTION DOESN'T WORK WELL.

- NHTSA ID Number: 11482090, dated August 30, 2022:

  o WHEN THE AUTO ENGINE IDLE IS ENGAGED (WHICH IS THE DEFAULT SETTING), WHEN YOU STOP, THE ENGINE IDLE WORKS AS ADVERTISED, THEN AFTER A FEW MOMENTS THE CAR WILL TOTALLY SHUT OFF AND PLACE ITSELF IN NEUTRAL. AFTER SEVERAL FAILED ATTEMPTS, THE ONLY WAY TO RESTART IT, IS TO PLACE THE KEYFOB AGAINST THE START BUTTON HOLD IT THERE WHILE PRESSING THE START BUTTON AND HOLDING THE BRAKE PEDAL. THIS CARS MAINTENANCE HAS BEEN COMPLETED ON TIME AND SOLELY BY THE PURCHASING DEALERSHIP. A BATTERY REPLACEMENT FINALLY IN DECEMBER OF '21 PUT THE PROBLEM AT BAY FOR APPROXIMATELY 8 MONTHS AND HERE WE GO AGAIN. HONDA IS ALSO NOT BEING HONEST WITH THE DEALERSHIPS, THIS IS A KNOWN ISSUE JUST CHECK THE BLOGS. THE DEALER IS THE ONE THAT WENT ONTO GOOGLE AND STARTED RESEARCHING THE ISSUE. ***AS FOR AN ACCIDENT, IT'S ONLY A MATTER OF TIME BEFORE THIS CAUSES AN ACCIDENT, MOST LIKELY SOMEONE GETTING REARENDED!***

- NHTSA ID Number: 11482864, dated September 4, 2022:

  o THE VEHICLE HAS AUTO IDLE STOP AND WE HAVE HAD SEVERAL INCIDENTS WHERE THE ENGINE WOULD NOT START AGAIN AFTER THE IDLE STOP AND IT REQUIRED PUTTING THE VEHICLE IN PARK, SHUTTING OFF THE IGNITION AND THEN RESTARTING THE CAR. ***WE HAVE HAD A CLOSE CALL WITH A VEHICLE HAVING TO SWERVE***

*AROUND US AFTER THE RED LIGHT TURNED GREEN AND WE WERE NEEDING TO TOTALLY RESTART THE CAR.*

- NHTSA ID Number: 11485021, dated September 18, 2022:

  o I WAS IN A STOP AND GO SITUATION AT A STOP LIGHT WHEN I DECIDED TO TURN THE AUTO STOP/START OFF. THE CAR FROZE UP ON ME IN THE MIDDLE OF TRAFFIC. IT TURNED OFF, COULD NOT TURN IT BACK ON, THE BRAKES LOCKED UP AND A LOT OF LIGHTS TURNED ON MY DASH. AFTER A COUPLE OF MINUTES I WAS ABLE TO TURN THE CAR BACK ON.

**D.    Honda Knew that the Class Vehicles Suffered from the Defect Prior to Its Sale of the Class Vehicles.**

112.    Defendant, based on the facts alleged herein and on information and belief, had full knowledge of the existence of the Defect and the risk it posed to Class Vehicle owners and lessees. This knowledge is based upon, among other facts: (a) Honda's pre-sale durability testing and part sales; (b) records of customer complaints provided to Honda; (c) NHTSA complaints; (d) Honda's post-sale defect investigations; (e) dealership repair records; (f) consumer complaints posted on the internet; (g) warranty and post-warranty claims; and (h) NHTSA ODI's investigation.

113.    Honda is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Honda conducts tests, including pre-sale durability testing, on incoming components to verify the parts are free from defects and align with its specifications.

114.    Honda emphasizes its Global Honda Quality Standard ("G-HQS"), which it claims "continuously enhances quality at every stage, encompassing design, development, production, sales and after-sales service in order to realize products offering a new level of outstanding quality." [57] Honda adds: "This initiative aims to achieve the highest quality through the creation of drawings designed to facilitate manufacturing, as well as develop manufacturing control

---

[57] Honda Sustainability Report 2018, at 69, https://global.honda/content/dam/site/global/about/cq_img/sustainability/report/pdf/2018/Honda-SR-2018-en-065-078.pdf (2018) (last accessed Sept. 19, 2022).

techniques that limit process variability, by applying and reflecting design and development expertise at the production preparation and production (mass-production) stages."[58]

115.    As part of this initiative, Honda "Assur[es] Long-Term Reliability through Rigorous Durability Testing":[59]

> Honda subjects new and redesigned models to a rigorous regimen of long-distance durability testing before beginning mass production to verify that there are no quality issues.

> Honda also disassembles vehicles used in the test drives into every single part and verifies that there are no quality issues through a process consisting of several thousand checks. By accumulating data on the issues discovered through these test drives and detailed inspections as well as associated countermeasures, the Company is able to ensure a high level of quality and reliability.[60]

116.    "Honda's production departments establish manufacturing control items and criteria for each part, process and operation to prevent product quality issues[,]" conducts extensive on-site audits of its suppliers for quality assurance, and "then works to improve part quality through activities that emphasize communication with suppliers, for example, by sharing audit results and cooperating to identify opportunities for quality improvement."[61]

117.    In addition to the "quality assurance system" put in place by the G-HQS related to the production and manufacturing of the Class Vehicles, Honda has in-place procedures to investigate "quality issues after sales"; namely, through its dealerships, which dealerships "collect quality information from customers in a timely manner."[62]

118.    Honda has an interconnected network of customer service departments worldwide which it relies upon to monitor quality control issues.

---

[58] *Id.*

[59] *Id.* at 71.

[60] *Id.*

[61] *Id.* at 70-71.

[62] *Id.* at 67, 69.

119.    As part of this network, Honda utilizes a customer relations center which "receives feedback in the form of customer questions, suggestions, requests and complaints 365 days a year."[63] And to "ensure that this valuable information is put to good use in Honda's operations, the facility shares it in a timely manner with the company's R&D, manufacturing, service and sales departments."

120.    Additionally, "Honda has established a Quality Center to bring together the various components of our organization concerned with product market quality information to enhance the functions of 'preventing quality issues' and 'quickly detecting and resolving quality issues when they occur' on a global scale." [64]

121.    Honda's California headquarters also maintains a Technical Research & Support ("TRS") Group responsible for, *inter alia*, identifying and investigating potential defects in Honda vehicles.[65]

122.    Honda also regularly monitors NHTSA databases for consumer complaints as part of its ongoing obligation pursuant to the TREAD Act, 49 U.S.C. §30118, to identify potential defects in its vehicles. As shown above, numerous complaints filed by Class Vehicle owners with the NHTSA establish that Honda knew, or should have known, of the Defect ***at least*** as early as 2017 (NHTSA ID No. 11047571), based on publicly available information.

123.    Indeed, given Honda's history of skirting its monitoring obligations under the TREAD Act and subsequent fine, Honda was likely acutely aware of (or should have been) each NHTSA customer complaint regarding the Engine Defect. Specifically, in 2015, Honda was fined $70 million (the highest penalty allowed by Congress) by the NHTSA "for failing to report deaths, injuries, and certain warranty claims to the federal government in violation of the TREAD Act"

---

[63]  *Id.* at 72.

[64]  *Id.* at 73.

[65]  *See, e.g.*, NHTSA ID Number: 10106849, Manufacturer Communication Number: APAS02032017902, https://static.nhtsa.gov/odi/tsbs/2017/MC-10106849-9340.pdf.

from 2003 through 2014. As part of the Consent Order, "Honda also agreed to increased NHTSA oversight and third party audits to ensure that all required reporting is completed[.]"[66]

124.    In addition to NHTSA complaints (as detailed above), a simple google search reveals that numerous customer complaints of the Engine Defect in Class Vehicles can be found on various consumer websites and online car forums.

125.    On June 15, 2018, an owner of a 2016 Honda Pilot posted on *Piloteers.org*, a message board devoted to the vehicle model, that their vehicle "has stalled at a stoplight" "several times" and "i[t] takes time to start back up."[67] Another owner of a 2016 Honda Pilot responded that they "have experienced this same problem" and that "the vehicle would just stall out and I would have to push park, put my foot on the brake and then push start." A different person responded that they experienced the Engine Defect and reported it to Honda's customer service department, but Honda did not offer a solution:

> Honda customer service is a complete waste of time so far. The case manager said because the dealer is unable to replicate the issue, they advised that the next time the car stalls we should not attempt to restart the car but should instead call Honda roadside assistance and have the car towed to the dealer so the dealer can examine the car in that exact state where it has stalled. The case manager said we should pull over to the side of the road but we tried to explain that we can't pull over because the car has stalled. So she just said we should call roadside assistance.

In response to Honda's advice, another person commented: "Ridiculous advice. This always happens right at a busy intersection with signal light and cars behind us get angry and start honking occasionally."

---

[66] NHTSA, *U.S. Department of Transportation Fines Honda $70 million for Failing to Comply with Laws That Safeguard the Public* (Jan. 8, 2015), https://one.nhtsa.gov/About+NHTSA/Press+Releases/2015/DOT-fines-Honda-$70-million (last accessed Sept. 20, 2022).

[67] https://www.piloteers.org/threads/elite-shuts-off-at-stop-light.157005/ (last accessed Sept. 20, 2022).

126.    On information and belief, Honda had knowledge of this specific thread of complaints on *Piloteers.org* regarding the Engine Defect as it was cited in multiple NHTSA Complaints.[68] Further, several of the posts in this forum reference reporting the issues directly to Honda's customer service division, including one cited above, providing Honda with direct knowledge of the Defect and the hazards associated with the Defect.[69]

127.    On October 22, 2016, an owner of a 2015 Acura TLX posted about the Engine Defect on *TLXForums.com*, a message board devoted to the vehicle model.[70] The owner polled the forum: "Anyone had their engine failed to start after idle stop engaged? I have had this happen 3 or more times over last 2 weeks. Essentially, engine tries to start but fails, causing me to have to put the car in Park and hit start button. Rather frustrating as this takes time and causes cars behind you start honking." Someone replied that "[m]y salesperson was talking to me about it … [t]he last time I was in for service and he said another customer had that happen."

128.    Another owner commented in the *TLXForums.com* thread that "[i]t has happened to me about 5 times now over the past year. Each time it happens, I immediately take it to the dealer and they cannot find any error codes. They have tried a few software updates, but the problem keeps coming back." The same owner noted that "[t]he dangerous aspect [of the Defect] is that if you are on an incline when it happens, it starts rolling backwards whenever you take your foot off the brake." Someone else reported that "[o]nce it happens, the start/stop button doesn't do anything. I need to put the car in park and hit the start/stop button a few times before it restarts

---

[68]    *See* NHTSA ID Number: 11120858, dated Aug. 18, 2018; NHTSA ID NUMBER: 11426596, dated July 27, 2021.

[69]    *See, e.g.*, https://www.piloteers.org/threads/elite-shuts-off-at-stop-light.157005/ ("Honda customer service is a complete waste of time so far. The case manager said because the dealer is unable to replicate the issue, they advised that the next time the car stalls we should not attempt to restart the car but should instead call Honda roadside assistance and have the car towed to the dealer so the dealer can examine the car in that exact state where it has stalled.") (last accessed Sept. 20, 2022).

[70]    https://www.tlxforums.com/threads/engine-failing-to-start-after-idle-stop.31809/ (last accessed Sept. 20, 2022).

again." On information and belief, Honda had knowledge of this specific thread of complaints on *TLXForums.com* regarding the Engine Defect as it was cited in at least two NHTSA Complaints.[71]

129.    On August 31, 2022, a thread concerning the Engine Defect was started on *Passportforums.com*, a message board devoted to the vehicle model.[72] In particular, the owner recounted in detail the symptoms of the Defect:

> On 5 occasions since purchase of 2019 PP, the car has not restarted after removing foot from break with "shut down" activated. On most occasions there is no msg on dashboard. Also, transmission shows N and start/stop accomplishes nothing. The last time this happened I was in stop and go traffic on I35 during rush hour traffic. Finally, a msg came on dashboard with "accessory mode". Eventually, I was able to get it restarted after 2-3 minutes, but not immediately when it happened. Honda dealers have not found anything in car computer that this happened. Anyone experienced this or has suggestions

In response to this person's experience with the Defect, another owner of a 2019 Honda Passport stated that they had a similar experience and were forced to incur an out-of-pocket expense for a third-party product that completely removes Idle Stop functionality in order to find a temporary solution for the Defect:

> Happened to me once, ***talk about panic when you are sitting at light and wondering what just happened***? I drove from Charlotte to Raleigh NC - stopped for gas and boom at 2nd light after leaving. Cars honking and wondering what was going. No error messages so nothing helpful to diagnosis. Finally broke down and ordered auto idle stopper so hoping that solves any further issues. No battery issues I can tell and I had just driven solid distance for battery to be fully topped off. I generally try to hit the button to shut off but don't drive enough (working from home) to make it a solid habit. Maybe Honda can send me $85.

130.    Multiple customer reports of the Defect in Class Vehicles were also posted on *CARCOMPLAINTS.COM*. For example, on October 16, 2015, an owner of a 2016 Honda Pilot complained of the Engine Defect, stating that his "2016 Honda Pilot Elite has been back to the

---

[71] *See* NHTSA ID Number: 11408575, dated Apr. 17, 2021; NHTSA ID Number: 11459222, dated Apr. 1, 2022.

[72] https://www.passportforums.com/threads/car-not-re-starting-after-stop-with-engine-shut-down-activated.9060/#post-81950 (last accessed Sept. 20, 2022).

dealer four times for a fix to the auto idle stop problem. Each time they report a different fix and it works for a period of days or weeks, then stops again. Last visit they said it was because of a defective vehicle battery. Again it worked for less than two weeks. I really like this vehicle and do not want to avail myself of the State Lemon Law protections. I just want this issue fixed once and for all."[73] A month later, on November 18, 2015, another owner complained that their "Auto Engine Idle on/of dose [sic] not working," and that they took their vehicle to a Honda dealership.[74]

131. On July 4, 2018, the owner of a 2016 Honda Pilot reported on *CARCOMPLAINTS.COM* that the vehicle suffers from the Engine Defect and that Honda was made aware of the issue but could not or would not fix it:[75]

> The car stalls intermittently when auto idle stop is engaged and car is stationary. Instead of the engine starting up again after take foot off the brake and press the gas pedal, the car stalls completely and have to put the car in park, press the brake pedal and push the start button to get it on again. Sometimes have to try several times before car restarts. Dealer has been unable to find anything or replicate problem. First reported to dealer Oct. 2017, did software update, but happened again June and July.

132. On April 12, 2019, the owner of a 2016 Honda Pilot posted on *CARCOMPLAINTS.COM* that their vehicle "does not turn back on when the idle stop and go turns off the car. If I get go of the brake the car should turn back on but it hasn't on 3 occasions. This is a serious safety issue."[76] The owner reported the Defect to Honda and took the vehicle to a Honda dealership, but Honda did not "do anything" to fix the issue.

---

[73]https://www.carcomplaints.com/Honda/Pilot/2016/engine/auto_idle_stop_does_not_work.s html (last accessed Sept. 20, 2022).

[74]https://www.carcomplaints.com/Honda/Pilot/2016/engine/auto_idle_stop_does_not_work.s html (last accessed Sept. 20, 2022).

[75]https://www.carcomplaints.com/Honda/Pilot/2016/engine/engine-14.shtml (last accessed Sept. 20, 2022).

[76]https://www.carcomplaints.com/Honda/Pilot/2016/electrical/engine_wont_turnover_wont_s tart.shtml (last accessed Sept. 20, 2022).

133.    In response to a Youtube video posted by Honda, dated February 20, 2018, titled: "Acura – TLX – Auto Idle Stop" in which it provides step-by-step video instructions for the feature, one person noted that the feature routinely fails and that he or she has discussed the issue with an Acura dealership:[77]



> **J Strjo** 4 years ago (edited)
> This feature is the WORST on my 2015. I can't tell you the number of times I've been stopped at an intersection and the car won't turn back on. Local dealership has been unable to identify or resolve the problem. It's the number one reason I won't be buying any Acura with this feature in it again.Acura needs to get rid of this feature or give you a way to permanently disable it (versus having to turn it off every time you start your car).
> Show less

134.    Another person commented on Honda's Youtube video, warning others of the safety risks created by the Engine Defect:[78]



> **Trent Maracle** 2 years ago
> This feature could kill you!!!Nothing worse than pulling out in an intersection to take a left, stopping and having the engine shut off, then trying to continue only to having to wait for the car to start again. By the time you get going, the window of opportunity to get through traffic has closed and you end up getting T-boned by oncoming traffic! It would be one thing if there was an option to permanently disable this feature but you can't. You HAVE to remember to turn it off every time you start the car. As many settings as the car can remember, why can't this be one of them. Absolutely loathe this feature. There is a hack but the dealership will not do it.
> Show less
> 👍 4  👎  Reply

135.    On information and belief, Honda reviews third-party websites, including those dedicated to their vehicles, in order to monitor potential defects in their vehicles and to provide feedback to consumer complaints. For example, "Honda Automobile Customer Service[,] American Honda Motor Co., Inc." (username "HondaCustSrvc") directly responded to a post

---

[77] https://www.youtube.com/watch?v=NAyC2PcSKyU&t=3s (last accessed Sept. 20, 2022).

[78] *Id.*

concerning a potential defect found in Honda CRV models on a consumer message board dedicated to that model, *CRVOwnersClub.com*: [79]

> Hello Pip3754,
>
> We are with American Honda Customer Service. We are sorry to hear about your CRV battery issues and your experience with your local Honda dealership. We would like to further review your concern. Can you please contact us and provide your contact information with VIN #. We look forward to hearing from you.
>
> Thank you,
>
> Dillon
> Honda Automobile Customer Service
> American Honda Motor Co., Inc.
> 1919 Torrance Blvd.
> Torrance, CA 90501
> Contact Options:
> Twitter: @HondaCustSvc
> Automobile Customer Service Phone Number: 1-800-999-1009 opt. 7

136.    On information and belief, Honda's customer relations department, which interacts with authorized service technicians in order to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues, has received numerous reports of the Engine Defect. Customer relations also collects and analyzes field data, including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

137.    Honda's warranty department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles.

---

[79] *See, e.g.*, https://www.crvownersclub.com/threads/2017-crv-battery-going-dead-overnight.135193/ (May 15, 2017 post by "Honda Automobile Customer Service[,] American Honda Motor Co., Inc." in response to customer complaint concerning potential defect) (last accessed Sept. 19, 2022).

138.    On information and belief, NHTSA complaints typically account for a mere fraction of warranty claims related to the same issue.[80]

139.    Honda dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in case Honda later determines to audit the dealership or otherwise verify the warranty repair.

140.    For their part, service centers are meticulous about providing this detailed information about in-warranty repairs to Honda because Honda will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.

141.    Honda knew or should have known about the Engine Defect because of the high number of replacement parts it is reasonable to infer were ordered from Honda. All of Honda's service centers are required to order replacement parts, including starters and starter relays, directly from Honda. Other independent vehicle repair shops that service Class Vehicles also order replacement parts directly from Honda.

142.    Honda routinely monitors part sales reports and are responsible for shipping parts requested by dealerships and technicians. Thus, Honda has detailed, accurate, and real-time data regarding the number and frequency of replacement part orders. The increase in orders of auto-parts necessary to fix damage caused by the Engine Defect the Class Vehicles was known to Defendant and should have alerted it to the scope and severity of the Defect.

143.    Honda's knowledge of the Engine Defect is also revealed through its investigations into the Engine Defect and its communications sent to Honda dealerships—and explicitly, not to Class Members—relating to the Defect beginning in 2017.

144.    On January 12, 2017, Honda issued a "Dealer Message" to "[a]ll Honda Service Managers/Advisors," notifying them that Honda's TRS Group was "investigating certain 2016-

---

[80] *See* https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V770-6416.pdf (10 field reports, 152 warranty claims); https://static.nhtsa.gov/odi/rcl/2017/RMISC-17V418-5009.pdf (zero field reports, 3,826 warranty claims).

2017 Pilots with a customer complaint of the automatic idle stop inoperable."[81] Honda did not
warn drivers of 2016-2017 Pilots, nor did it warn drivers of other Class Vehicles that share the
same Idle Stop system, of this known Defect condition. In fact, Honda warned its personnel that
"*[the] message is solely directed to Honda dealership personnel; please handle accordingly*."

145.    The same Dealer Message was issued again on February 3 and 23, 2017, and March
10, 16, and 27, 2017. [82]

146.    Accordingly, Honda indisputably was aware of customer complaints relating to the
Engine Defect prior to January 12, 2017.

147.    On information and belief, Honda was receiving so many of the Defect in response
to its Dealer Messages that on February 27, 2018, Honda issued a Tech Line Summary Article to
its dealerships, noting that it was changing the way in which dealerships were to report Auto Idle
Stop System Issues in certain 2018 Honda Odyssey, 2016−18 Honda Pilot, 2016-2018 Acura
MDX, and 2015-2018 Acura TLX vehicles to Honda's "engineering staff."[83] Honda stated that the
previous method of reporting "made it hard for our engineering staff to understand what was

---

[81]  NHTSA ID Number: 10106849, Manufacturer Communication Number:
APAS02032017902, https://static.nhtsa.gov/odi/tsbs/2017/MC-10106849-9340.pdf.

[82]  NHTSA ID Number: 10106919, Manufacturer Communication Number:
APAS01122017901 (Feb. 3, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10106919-
9340.pdf; NHTSA ID Number: 10108053, Manufacturer Communication Number:
APAS02232017902 (Feb. 23, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108053-
9340.pdf; NHTSA ID Number: 10108268, Manufacturer Communication Number:
APAS03102017902 (Mar. 10, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108268-
9340.pdf; NHTSA ID Number: 10108294, Manufacturer Communication Number:
APAS03162017902 (Mar. 16, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108294-
9340.pdf; NHTSA ID Number: 10108333, Manufacturer Communication Number:
APAS03272017903 (Mar. 27, 2017) https://static.nhtsa.gov/odi/tsbs/2017/MC-10108333-
9340.pdf.

[83]  NHTSA ID Number: 10129804, Manufacturer Communication Number: ATS180206,
https://static.nhtsa.gov/odi/tsbs/2018/MC-10129804-9999.pdf; NHTSA ID Number: 10129807,
Manufacturer Communication Number: BTS180204, https://static.nhtsa.gov/odi/tsbs/2018/MC-
10129807-9999.pdf

specifically inhibiting the system." The same reporting instructions were repeated in a July 12, 2018 "ServiceNews Article" to Honda dealerships.[84]

148.   On May 10, 2018, Honda issued a "Dealer Message" to "[a]ll Honda Service Managers/Advisors," stating that Honda's TRS Group was "investigating certain 2018 Odysseys & Pilots with a customer complaint of the auto idle stop inoperative."[85]  Honda did not warn drivers of 2018 Odysseys and Pilots, nor did it warn drivers of any other Class Vehicle that shares the same Idle Stop system, of this known Defect condition. Rather, Honda warned its personnel that "[the] message is solely directed to Honda dealership personnel; please handle accordingly."

149.   On July 5, 2019, Honda issued Service Bulletin No. 19-071, tilted: "*Auto Idle Stop Does Not Work ([battery management system] BMS Inhibited)*," to its dealerships.[86] Therein, Honda reported 2018 and 2019 Honda Odyssey vehicles may exhibit a "symptom" where "[a]uto idle stop does not work." Honda stated that the "probable cause" of the symptom was that "[t]he [powertrain control module] PCM incorrectly calculates battery current, which prevents auto idle stop from working." To address the issue, Honda offered to "[u]pdate the [Programmed Fuel Injection] PGM-FI software, and reset the PCM."[87]

150.   On July 30, 2019, Honda issued another "Dealer Message" to "[a]ll Honda Service Managers/Advisors," stating that Honda's TRS Group was "investigating certain 2016-2017 Pilot

---

[84]  NHTSA ID Number: 10143160, Manufacturer Communication Number: A18070D, https://static.nhtsa.gov/odi/tsbs/2018/MC-10143160-9999.pdf; NHTSA ID Number: 10143214, Manufacturer Communication Number: B18070C https://static.nhtsa.gov/odi/tsbs/2018/MC-10143214-9999.pdf.

[85]  NHTSA ID Number: 10142619, Manufacturer Communication Number: APaS05102018902, https://static.nhtsa.gov/odi/tsbs/2018/MC-10142619-9999.pdf.

[86]  NHTSA ID Number: 10162451, Manufacturer Communication Number: A19-071, https://static.nhtsa.gov/odi/tsbs/2019/MC-10162451-0001.pdf.

[87]  *Id*. According to Honda, PGM-FI is a "feature helps provide outstanding power and driveability, with reduced emissions and better fuel efficiency—plus easier maintenance and repair." https://www.hondainfocenter.com/Shared-Technologies/Engines/Programmed-Fuel-Injection-PGM-FI/ (last accessed Sept. 20, 2022).

Tourings or Elites with a customer complaint of a no auto re-start condition after going into an auto idle stop. Customer should have been able to re-start the vehicle by placing the gear into the Park position and pressing the Start button."[88] Yet again, Honda did not warn drivers and instructed dealership personnel that the message was not intended for Class Members.

151.    That same day, July 30, 2019, Honda also issued the identical Dealer Message to Acura dealerships for certain 2015-2017 TLX vehicles.[89]

152.    On October 9, 2019, Honda issued a "Dealer Message" to "[a]ll Honda Service Managers/Advisors," stating that Honda's TRS Group was "investigating certain 2019-2020 Odysseys, Passports & Pilots with a customer complaint of the auto idle stop inop[erative]."[90] Yet again, Honda did not warn drivers and instructed dealership personnel that the message was not intended for Class Members. The same Dealer Message was sent on October 28, 2019,[91] November 14, 2019,[92] December 2, 2019,[93] January 7, 2020,[94] and January 27, 2020.[95]

---

[88]  NHTSA ID Number: 10163414, Manufacturer Communication Number: APaS07302019905 https://static.nhtsa.gov/odi/tsbs/2019/MC-10163414-0001.pdf

[89]  NHTSA ID Number: 10163447, Manufacturer Communication Number: BPaS07302019905, https://static.nhtsa.gov/odi/tsbs/2019/MC-10163447-0001.pdf

[90]  NHTSA ID Number: 10166508, Manufacturer Communication Number: APaS10092019912 https://static.nhtsa.gov/odi/tsbs/2019/MC-10166508-0001.pdf.

[91]  NHTSA ID Number: 10167157,Manufacturer Communication Number: APaS10282019913, https://static.nhtsa.gov/odi/tsbs/2019/MC-10167157-0001.pdf.

[92]  NHTSA ID Number: 10168078, Manufacturer Communication Number: APaS11142019912, https://static.nhtsa.gov/odi/tsbs/2019/MC-10168078-0001.pdf.

[93]  NHTSA ID Number: 10169067, Manufacturer Communication Number: APaS12022019907, https://static.nhtsa.gov/odi/tsbs/2019/MC-10169067-0001.pdf

[94]  NHTSA ID Number: 10170224, Manufacturer Communication Number: APaS01072020904, https://static.nhtsa.gov/odi/tsbs/2020/MC-10170224-0001.pdf

[95]  NHTSA ID Number: 10171025, Manufacturer Communication Number: APaS01272020905, https://static.nhtsa.gov/odi/tsbs/2020/MC-10171025-0001.pdf

153.    On January 28, 2020, Honda's TRS Group issued a "Dealer Message" relating to its "investigati[on] [regarding] certain 2016 Pilot Tourings or Elites with a customer complaint of a no auto re-start condition after going into an auto idle stop. Customer should have been able to re-start the vehicle by placing the gear into the Park position and pressing the Start button."[96] That same day, Honda issued an identical Dealer Message for 2016 MDX & 2015-2017 TLX vehicles to Acura Dealerships.[97]

154.    On March 30, 2022, Honda issued Service Bulletin No. 22-009, relating to 2015-2020 Acura TLX vehicles. Therein, Honda admitted that "[u]nder certain circumstances, after coming to a stop and engaging idle stop the vehicle may not restart automatically due to excessive cylinder pressure and/or low cranking torque."[98]

155.    In a Dealer Message issued the same day as Service Bulletin No. 22-009, Brad Ortloff, Honda's Manager of Auto Campaigns and Recall, claimed that the Engine Defect in 2015-2020 Acura TLX vehicles was related to the vehicle's battery: "During development, the idle stop enable criteria was mis-set allowing idle stop to improperly engage while battery health is low."[99] As a fix for the Defect, Honda offered to update the PGM-FI software installed in the vehicle's PCM. Honda stated that "the software update will decrease the Idle Stop operating range. As a result, the client may notice reduced idle stop engagement when their vehicle's battery is approaching the end of its useful life."[100]

---

[96]   NHTSA ID Number: 10171033, Manufacturer Communication Number: APaS01282020902, https://static.nhtsa.gov/odi/tsbs/2020/MC-10171033-0001.pdf.

[97]   NHTSA ID Number: 10171053, Manufacturer Communication Number: BPaS01282020, https://static.nhtsa.gov/odi/tsbs/2020/MC-10171053-0001.pdf

[98]   NHTSA ID Number: 10210101, Manufacturer Communication Number: B22-009, https://static.nhtsa.gov/odi/tsbs/2022/MC-10210101-0001.pdf.

[99]   NHTSA ID Number: 10210085, Manufacturer Communication Number: BBOM03302022901, https://static.nhtsa.gov/odi/tsbs/2022/MC-10210085-0001.pdf.

[100]   NHTSA ID Number: 10210100, Manufacturer Communication Number: B22-008, https://static.nhtsa.gov/odi/tsbs/2022/MC-10210100-0001.pdf.

156.    On April 9, 2022, Honda updated Service Bulletin No. 22-009 to state that the warranty extension only applies after the PGM-FI software update is completed.[101]

157.    On June 14, 2022, Honda filed a "Customer Letter" for "Defect Code 6AX," which it would be sending to owners of 2015–2020 TLX vehicles informing them of the Engine Defect.[102]

158.    Notably, on information and belief, the software updates offered by Honda for 2015-2020 Acura TLX and 2018-2019 Honda Odyssey vehicles, in Service Bulletin No. 22-009 and Service Bulletin No. 19-071, do not remedy the Engine Defect. Instead, the software updates shutdown the feature without any prior warning. Moreover, it has been reported by drivers that the Engine Defect continues to affect their vehicles after the software updates were performed.[103] And most obviously, neither Service Bulletin even attempts to remedy the Engine Defect in 2020MY Honda Odyssey, 2016-2020MY Honda Pilot, 2019-2020MY Honda Passport, and 2015-2020MY Acura MDX vehicles.[104] Finally, it was revealed through ODI's investigation into the Engine Defect that "ODI met with Honda on various occasions on th[e] issue," and has conducted its own

---

[101]    NHTSA ID Number: 10211082, Manufacturer Communication Number: B22-009, https://static.nhtsa.gov/odi/tsbs/2022/MC-10211082-0001.pdf.

[102]    NHTSA ID Number: 10215500, Manufacturer Communication Number: Defect Code 6AX, https://static.nhtsa.gov/odi/tsbs/2022/MC-10215500-0001.pdf.

[103]    *See*, *e.g.*, NHTSA ID Number: 11111894, dated July 17, 2018; NHTSA ID Number: 11473342, dated July 11, 2022; https://www.tlxforums.com/threads/engine-failing-to-start-after-idle-stop.31809/ (last accessed Sept. 20, 2022) ("They have tried a few software updates, but the problem keeps coming back"); https://www.carcomplaints.com/Honda/Pilot/2016/engine/engine-14.shtml (last accessed Sept. 20, 2022) ("First reported to dealer Oct. 2017, did software update, but happened again June and July.").

[104]    *See also* NHTSA ID Number: 11485710, dated Sept. 21, 2022 (owner of 2018 Acura TLX complaints that "[t]he Idle stop feature will NOT automatically restart and causes me to stall for an unsafe amount of time. There is a recall call for my Acura 2018 TLX but my VIN does not fall under the qualifying vehicles. I am very upset and this is a safety matter that needs to be addressed ASAP.").

investigations that have "found a correlation with customers' allegations for the Auto Start/Stop failure to restart the vehicle when the system is activated."[105]

159.    Auto manufacturers are required to file a report with NHTSA within five days of identifying any safety-related defects in its vehicles. 49 C.F.R. § 573 *et seq*.  The initial report is required to identify all vehicles "potentially containing the defect" and include "a description of the manufacturer's basis for its determination of the recall population and a description of how the vehicles or items of equipment to be recalled differ from similar vehicles or items of equipment that the manufacturer has not included in the recall." *Id*. § 573.6. Additionally, the report must contain a "description of the defect" and "identify and describe the risk to motor vehicle safety reasonably related to the defect[.]" *Id*.

160.    The purpose of these regulations is obvious: "To facilitate the notification of owners of defective and noncomplying motor vehicles …, and the remedy of such defects and noncompliances, by equitably apportioning the responsibility for safety-related defects and noncompliances with Federal motor vehicle safety standards among manufacturers of motor vehicles[.]" *Id*. § 573.2.

161.    Yet, despite Honda's duties to report safety defects, Honda has yet to issue any safety recalls for the Class Vehicles or offer an adequate remedy.

**E.    Honda Breached the Express Warranties Covering the Class Vehicles.**

162.    The Class Vehicles sold and leased by Honda included a written express warranty, which provides: "All new Honda [branded] vehicles are covered by a 3-Year/36,000-Mile Limited Warranty, plus a 5-Year/60,000-Mile Powertrain Limited Warranty[.]"[106]  For Acura-branded

---

[105] NHTSA Action Number: PE22005, "*No Restart After Auto Start/Stop Engages*," https://static.nhtsa.gov/odi/inv/2022/INOA-PE22005-9303.PDF.

[106] *E.g.*, https://automobiles.honda.com/odyssey# (last accessed Sept. 19, 2022).

vehicles, Honda provides a New Vehicle Limited Warranty for 4 years or 50,000 miles and a Powertrain Limited Warranty for 6 years or 70,000 miles.[107]

163.    Under the terms of the New Vehicle Limited Warranty and Power Train, Honda is required to "repair or replace any part that is defective in material or workmanship under normal use."[108]

164.    Buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

165.    Honda breached these warranties by, *inter alia*, failing to repair or remedy the Engine Defect in the Class Vehicles. Class members complained to authorized Honda dealerships and technicians about the Engine Defect, but did not receive an adequate repair, breaching the express and implied warranties provided by Honda.

166.    Honda's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the Engine Defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiffs and other Class members. Among other things, Plaintiffs and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and other Class members, and Honda knew of the Defect at the time of sale.

---

[107]  *E.g.*, https://owners.acura.com/Documentum/Warranty/Handbooks/BWL50467.pdf (last accessed Sept. 19, 2022).

[108]https://owners.honda.com/Documentum/Warranty/Handbooks/2020_Honda_Warranty_Ba sebook_Rev02_FINAL_-_SIS.pdf (last accessed Sept. 20, 2022); https://owners.acura.com/Documentum/Warranty/Handbooks/2020_Acura_Warranty_Basebook _Rev04_FINAL_-_SIS.pdf (last accessed Sept. 20, 2022).

## V.    FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS

167.    Absent discovery, Plaintiffs were unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Honda responsible for making false and misleading statements regarding the Class Vehicles. Honda necessarily is in possession of all of this information. Plaintiffs' claims arise out of Defendant's fraudulent omission/concealment of the Defect, despite their representations about the quality, reliability, and safety of the Class Vehicles.

168.    Plaintiffs allege that, at all relevant times, including specifically at the time they and Class members purchased their Class Vehicles, Honda knew, or was reckless in not knowing, of the Defect; Defendant had a duty to disclose the Defect based upon its exclusive knowledge; and Defendant never disclosed the Defect to Plaintiffs or the public at any time or place in any manner other than Dealer Messages, which were explicitly not intended for Plaintiffs, and inadequate Service Bulletins relating to the Class Vehicles.

169.    Honda actively concealed and omitted the Defect from Plaintiffs and Class members while simultaneously touting the safety and dependability of the Class Vehicles, as alleged herein. Plaintiffs were unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Honda responsible for such decisions.

170.    Honda knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Defect, as alleged herein. Defendant concealed and omitted the Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

171.    Honda concealed and omitted material information regarding the Defect at all times while making representations about the performance, safety, and dependability of the Class Vehicles on an ongoing basis, which continue to this day, as alleged herein. Honda still has not disclosed the truth about the full scope of the Defect in the Class Vehicles. Honda has never taken any action to inform consumers about the true nature of the Defect in Class Vehicles. And when

consumers brought their vehicles to Honda complaining of the Defect, Honda denied any knowledge of, or an adequate repair for, the Defect.

172.    Honda concealed and omitted material information regarding the true nature of the Defect in every communication it had with Plaintiffs and Class members and made representations about the quality, reliability, and safety of the Class Vehicles. Plaintiffs are not aware of any document, communication, or other place or thing in which Defendant disclosed the truth about the full scope of the Defect in the Class Vehicles. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Honda's website. There are channels through which Honda could have disclosed the Defect, including, but not limited to: (a) point of sale communications; (b) the owner's manual; and/or (c) direct communication to Class members through means such as state vehicle registry lists and e-mail notifications.

173.    Honda concealed and omitted the Defect from Plaintiffs and Class members and made representations about the quality, safety, dependability, and comfort of the Class Vehicles. Honda actively concealed and omitted the truth about the existence, scope, and nature of the Defect from Plaintiffs and Class members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and Honda promised in its marketing materials that Class Vehicles have qualities that they do not have.

174.    Honda actively concealed and omitted material information about the Defect in the Class Vehicles for the purpose of inducing Plaintiffs and Class members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations about the quality, safety, durability, and comfort of the Class Vehicles. Had Honda disclosed the truth, for example in its advertisements or other materials or communications, Plaintiffs and Class members (all reasonable consumers) would have been aware of it, and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## VI.     TOLLING OF STATUTES OF LIMITATIONS

175.    Any applicable statute(s) of limitations have been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced. Plaintiffs' claims were thus tolled pursuant to the discovery rule and for fraudulent concealment.

### A.     Discovery Rule

176.    As shown by Plaintiffs' experiences alleged above, Class members had no way of knowing about the Engine Defect in their Class Vehicles. Defendant concealed its knowledge of the Defect (as evidenced by, *inter alia*, Honda's Dealer Messages) while continuing to market and sell the Class Vehicles as safe, high-quality, and reliable vehicles.

177.    Within any applicable statutes of limitation, Class members could not have discovered through the exercise of reasonable diligence that Honda was concealing the conduct complained of herein and misrepresenting the true qualities of the Class Vehicles. As detailed above, Class members acted reasonably and diligently in attempting to find the source of the Idle Stop failures.

178.    Class members did not know facts that would have caused a reasonable person to suspect that there was an Engine Defect affecting their vehicle's Idle Stop functionality and an ordinary person would be unable to appreciate that the vehicle was defective.

179.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims in this litigation.

### B.     Fraudulent Concealment

180.    Defendant was under a continuous duty to disclose to Class members the existence of the Engine Defect found in the Class Vehicles.

181.    Defendant recklessly disregarded the true nature, quality, and character of the Class Vehicles by failing to disclose the existence of the Engine Defect.

182. The statute of limitations on any counts alleged in this action are tolled during the relevant period alleged herein due to Defendant's concealment of the adverse facts concerning the Engine Defect.

183. Defendant actively concealed from Class members the truth about the Idle Stop failures and related electrical issues as described herein.

184. As shown by Plaintiffs' experiences alleged above, Class members were not at fault for failing to discover the Engine Defect. Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice of the Defect. This ignorance of the true cause of the Idle Stop issues is common across Plaintiffs and each Class member.

## C.    Estoppel

185. Honda was, and is, under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Class Vehicles. Honda failed to disclose the existence of the Defect and actively concealed the true character, quality, and nature of the Class Vehicles while knowingly making representations about the quality and reliability of the Vehicles. Plaintiffs and Class members reasonably relied upon Defendant's knowing and affirmative representations and/or active concealment of these facts. Based on the foregoing, Honda is estopped from relying on any statutes of limitation in defense of this action.

## VII.   CLASS ALLEGATIONS

186. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the FEDERAL RULES OF CIVIL PROCEDURE on behalf of themselves and all others similarly situated.

187. Plaintiffs seek to represent a class ("Nationwide Class"), defined as:

All persons in the United States and its territories who purchased or leased a 2018-2020MY Honda Odyssey, 2016-2020MY Honda Pilot, 2019-2020MY Honda Passport, 2015-2020MY Acura TLX, or 2015-2020MY Acura MDX vehicle equipped with the Idle Stop system.

188. In addition, and in the alternative to the above, Plaintiffs seek to represent a class ("Illinois Class") defined as:

All persons in the State of Illinois who purchased or leased a 2018-2020MY Honda Odyssey, 2016-2020MY Honda Pilot, 2019-2020MY Honda Passport, 2015-

2020MY Acura TLX, or 2015-2020MY Acura MDX vehicle equipped with the Idle Stop system.

189.    Excluded from the Nationwide Class and the Illinois Class (collectively, "Classes") are Honda, its affiliates, employees, officers, and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this action. Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

190.    <u>Numerosity</u>: The Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant, Plaintiffs believe, and on that basis allege, that, at minimum, hundreds of thousands of Class Vehicles have been sold and/or leased in the United States.

191.    <u>Existence and Predominance of Common Questions of Law and Fact</u>: Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

(a)    whether the Class Vehicles were sold with the Defect;

(b)    whether Defendant engaged in the conduct alleged herein;

(c)    whether Defendant advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

(d)    whether Defendant knew of the Engine Defect but failed to disclose the problem and its consequences to its customers;

(e)    whether a reasonable consumer would consider the Engine Defect or its consequences to be material;

(f)    when Defendant discovered the Engine Defect in the Class Vehicles, and what, if anything, it did in response;

(g)    whether Defendant should be required to fully disclose the existence of the Engine Defect;

(h)     whether Defendant breached its express and/or implied warranties with respect to the Class Vehicles;

(i)     whether Defendant's conduct violates state law;

(j)     whether Plaintiffs and Class members received the benefit of the bargain when they purchased or leased their Class Vehicles;

(k)     whether Defendant was unjustly enriched; and

(l)     whether Plaintiffs and Class members experienced out-of-pocket losses as a result of the Defect, and if so, how much.

192.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs purchased Class Vehicles with the same Defect as did each member of the Classes. Furthermore, Plaintiffs and all members of the Classes sustained monetary and economic injuries, including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

193.    <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Classes that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

194.    <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense

to all parties, and to the Court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

195.    <u>Declaratory and Injunctive Relief</u>: Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

196.    Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## VIII.   CAUSES OF ACTION

**COUNT ONE:**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq*.)**
**(On Behalf of the Nationwide Class)**

197.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

198.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class.

199.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

200.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). Plaintiffs and Nationwide Class members are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

201.    Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

78

202.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

203.    Honda provided Plaintiffs and Nationwide Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Honda warranted that the Class Vehicles were fit for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

204.    Honda breached its implied warranties, as described herein, and is therefore liable to Plaintiffs under 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common defect in that they are all equipped with a defect in design and manufacturing of the Idle Stop system that makes the vehicles prone to stalling while in traffic, causing an unreasonable risk of death, serious bodily harm, and property damage to owners and lessees of the Class Vehicles. The Engine Defect rendered the Class Vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

205.    As discussed herein, on information and belief, Honda knew or should have known about the Engine Defect prior to sale based upon, among other facts: (a) Honda's pre-sale durability testing and part sales; (b) records of customer complaints provided to Honda; (c) NHTSA complaints; (d) Honda's post-sale defect investigations; (e) dealership repair records; (f) consumer complaints posted on the internet; (g) warranty and post-warranty claims; and (h) NHTSA ODI's investigation.

206.    Honda omitted information about the Engine Defect and its consequences from Plaintiffs and Class members, misrepresented the qualities of the Class Vehicles, and has failed to provide a fix for the Defect.

207.    Any effort by Honda to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim or otherwise limit such liability is null and void.

208.    Any limitations Honda might seek to impose on its warranties are procedurally unconscionable. There was unequal bargaining power between Honda and Plaintiffs, because, at the time of purchase and lease, Plaintiffs had no other options for purchasing warranty coverage other than directly from Honda.

209.    Any limitations Honda might seek to impose on its warranties are substantively unconscionable. Honda knew or should have known that the Class Vehicles were defective and that the Class Vehicles suffered from a safety defect and placed drivers at risk when used as intended long before Plaintiffs and Class members knew or should have known. Honda failed to disclose this defect to Plaintiffs and Class members. Thus, enforcement of the durational limitations on the warranties is harsh and would shock the conscience.

210.    Plaintiffs and other Class members have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Defendant was also aware that the ultimate consumers of the Class Vehicles (*i.e.*, the Class) required vehicles that would function safely, could be relied upon, and otherwise meet minimum industry standards. Additionally, privity is excused here because Plaintiffs and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

211.    Under 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and is not required to give Honda notice and an opportunity to cure until such time as the Court

determines the representative capacity of Plaintiffs under Rule 23 of the Federal Rules of Civil Procedure.

212. Plaintiffs would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Honda will not acknowledge any revocation of acceptance and immediately return any payments made, Plaintiffs have not re-accepted their Class Vehicles by retaining them.

213. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of all other Nationwide Class members, seek all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and Nationwide Class members in connection with the commencement and prosecution of this action.

214. Plaintiffs also seek the establishment of a Honda-funded program for Plaintiffs and Nationwide Class members to recover out-of-pocket costs incurred in attempting to rectify and mitigate the effects of the Engine Defect in their Class Vehicles.

### COUNT TWO:
### BREACH OF EXPRESS WARRANTY
### (On Behalf of the Nationwide Class)

215. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

216. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class for breach of express warranty pursuant to the Uniform Commercial Code ("UCC") § 2-313.

217. Defendant is a "merchant," a "seller," and "lessor" of motor vehicles under the UCC.

218. The Class Vehicles are "goods" within the meaning of the UCC.

219.    Defendant provided all purchasers and lessees of the Class Vehicles with the express warranties described herein. In its written express warranties, Defendant expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

220.    Defendant's written express warranties formed the basis of the bargain that was reached when Plaintiffs and other Class members purchased or leased their Class Vehicles.

221.    Defendant breached the express warranties through the acts and omissions described above.

222.    To the extent required, Plaintiffs and other Class members have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiffs and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Defendant.

223.    Defendant had actual knowledge of the Engine Defect and knew that it was unable to provide adequate remedy under the warranty. Defendant was also provided notice of the Engine Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge and internal investigations. Honda has not remedied its breach.

224.    Further, Defendant has refused to provide an adequate warranty repair for the Engine Defect, thus rendering the satisfaction of any notice requirement futile. As stated above,

customers that have presented their vehicles for warranty repair due to the Engine Defect have
been denied adequate repairs.

225.    The written express warranties fail in their essential purpose because the contractual
remedy is insufficient to make Plaintiffs and other Class members whole and because Defendant
has failed and/or has refused to adequately provide effective remedies within a reasonable time.

226.    Accordingly, recovery by Plaintiffs and other Class members is not limited to the
limited remedy of repair, and Plaintiffs, individually and on behalf of the other Class members,
seek all remedies as allowed by law.

227.    Also, as alleged in more detail herein, at the time that Honda warranted and sold or
leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and
were inherently defective, and Defendant improperly concealed material facts regarding its Class
Vehicles. Plaintiffs and other Class members were therefore induced to purchase or lease the Class
Vehicles under false pretenses.

228.    Honda had notice of its breach as alleged herein. Plaintiffs, individually and on
behalf of the Classes, also notified Honda of the Engine Defect and the breach of warranty alleged
herein through a notice letter, dated September 22, 2022.

229.    As a direct and proximate result of Defendant's breach of its express warranty,
Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

230.    Plaintiffs, on behalf of themselves and the Class, seek monetary damages, treble
damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT THREE:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Nationwide Class)**

231.    Plaintiffs reallege and incorporate by reference all preceding allegations as though
fully set forth herein.

232.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class for
breach of implied warranty pursuant to UCC § 2-314.

233.    Defendant is a "merchant," a "seller," and "lessor" of motor vehicles under the
UCC.

234.    Defendant was, at all relevant times, the manufacturer, distributor, warrantor, seller
and/or lessor of the Class Vehicles. Defendant knew or had reason to know of the specific use for
which the Class Vehicles were purchased or leased.

235.    Defendant provided Plaintiffs and other Class members with an implied warranty
that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for
which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of
providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter
alia*, the Class Vehicles suffered from the Engine Defect at the time of sale that creates the undue
risk of the engine stalling while driving. Therefore, the Class Vehicles are not fit for their particular
purpose of providing safe and reliable transportation.

236.    Defendant impliedly warranted that the Class Vehicles were of merchantable
quality and fit for such use. This implied warranty included, among other things, a warranty that
the Class Vehicles manufactured, supplied, distributed, and/or sold by Defendant were safe and
reliable for providing transportation, and would not result in the vehicles stalling in the middle of
traffic.

237.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale
and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and other
Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer
from a defective design(s) and/or manufacturing defect(s).

238.    Defendant had actual knowledge of the Engine Defect, and wrongfully and
fraudulently concealed these material facts from Plaintiffs and the Class. Defendant was provided
notice of these issues through, *inter alia*, warranty claims, its defect investigations, complaints
posted on the internet, and complaints lodged by consumers with the NHTSA – which Defendant
routinely monitors – before or within a reasonable amount of time after the allegations of the
Defect became public. Plaintiffs, individually and on behalf of the Classes, also notified Honda of

the Engine Defect and the breach of warranty alleged herein through a notice letter, dated September 22, 2022.

239. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

240. Plaintiffs and other Class members have had sufficient direct dealings with either Defendant or its agents – such as its dealerships, consumer affairs departments, and technical support – to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiffs and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

241. Plaintiffs, on behalf of themselves and the Class, seek monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT FOUR:**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class or,**
**Alternatively, on Behalf of the Illinois Class)**

242. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

243. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of unjust enrichment, which is materially uniform in all states. In the alternative, Plaintiffs bring this claim on behalf of the Illinois Class under the laws of Illinois.

244.    Defendant designed, manufactured, produced, distributed, marketed, and/or sold the Class Vehicles during the relevant period herein.

245.    Plaintiffs and members of the Class conferred non-gratuitous benefits upon Defendant, without knowledge that the Class Vehicles contained the Defect.

246.    Defendant appreciated, or had knowledge of, the non-gratuitous benefits conferred upon it by Plaintiffs and members of the Class.

247.    Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class, with full knowledge and awareness that, as a result of Defendant's unconscionable wrongdoing, Plaintiffs and members of the Class were not receiving products of high quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

248.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

249.    Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Plaintiffs and members of the Class are entitled to, and hereby seek, disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits in a manner established by the Court.

### COUNT FIVE:
### FRAUDULENT CONCEALMENT
### (On Behalf of the Nationwide Class or,
### Alternatively, on Behalf of the Illinois Class)

250.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

251.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of fraudulent concealment, which is materially uniform in all states. In the alternative, Plaintiffs bring this claim on behalf of the Illinois Class under the laws of Illinois.

252.    Honda fraudulently concealed and suppressed material facts concerning the quality of the Class Vehicles and the existence of the Defect.

253.    Despite advertising the Class Vehicles as safe, reliable, and being of high quality, Honda knew when it manufactured, marketed, and sold or leased the Class Vehicles that the Class Vehicles suffered from a design and/or manufacturing defect that reduced the Class Vehicles' value and subjected the Class Vehicles to the risk of stalling while driving and that rendered the Class Vehicles unreliable and posed significant safety hazards to drivers.

254.    Honda failed to disclose these facts to consumers at the time it manufactured, marketed, and sold or leased the Class Vehicles, and Honda knowingly and intentionally engaged in this concealment in order to boost sales and revenue, maintain its competitive edge in the automobile market, and obtain windfall profit. Through its active concealment and/or suppression of these material facts, Honda sought to increase consumer confidence in the Class Vehicles, and to falsely assure purchasers and lessors of the same that the Vehicles were of sound quality and that Honda was a reputable manufacturer that stands behind the automobiles it manufactures. Honda engaged in this behavior to protect its profits, avoid warranty replacements, avoid recalls that would impair the brand's image, cost it money, and undermine its competitiveness in the automobile industry.

255.    Plaintiffs and Class members were unaware, and could not reasonably discover on their own, that Honda's representations were false and misleading, or that it had omitted material facts relating to the Class Vehicles.

256.    Honda had a duty to disclose, rather than conceal and suppress, the full scope and extent of the Defect because:

(a)    Honda had exclusive or far superior knowledge of the Defect and concealment thereof;

(b)    the facts regarding the Defect and concealment thereof were known and/or accessible only to Honda;

(c)    Honda knew that Plaintiffs and Class members did not know about, or could not reasonably discover, the Defect and concealment thereof; and

(d)    Honda made representations and assurances about the qualities of the Class Vehicles, and about the existence of a repair for the Defect that were misleading, deceptive, and incomplete without the disclosure of the fact that the Class Vehicles suffered from a latent and inherent design and/or manufacturing defect.

257.    These omitted and concealed facts were material because a reasonable consumer would rely on them in deciding to purchase or lease the Class Vehicles, and because they substantially reduced the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Whether the Class Vehicles were defective, of sound quality, safe, reliable, and whether Honda stood behind such Vehicles would have been an important factor in Plaintiffs' and the Class members' decisions to purchase or lease the Vehicles. Plaintiffs and Class members trusted Honda not to sell them vehicles that were defective and significantly overpriced.

258.    Honda intentionally and actively concealed and suppressed these material facts to falsely assure consumers that their Class Vehicles were free from known defects, as represented by Honda and reasonably expected by consumers.

259.    Plaintiffs and Class members were unaware of these omitted material facts and would have paid less for the Class Vehicles, or would not have purchased/leased them at all, if they had known of the concealed and suppressed facts. Plaintiffs and Class members did not receive the benefit of their bargain due to Honda's fraudulent concealment. Plaintiffs' and Class members' actions in purchasing the Class Vehicles were justified. Honda was in exclusive control of the material facts, and such facts were not known or reasonably knowable to the public, Plaintiffs, or Class members.

260.    Plaintiffs and Class members relied to their detriment upon Honda's reputation, fraudulent misrepresentations, and material omissions regarding the quality, safety, and reliability of the Class Vehicles.

261.    As a direct and proximate result of Honda's deceit and fraudulent concealment, including its intentional suppression of true facts, Plaintiffs and Class members suffered injury. They purchased and leased Class Vehicles that had a diminished value by reason of Honda's concealment of, and failure to disclose, the Defect. Plaintiffs and Class members also paid substantial money to (unsuccessfully) repair the Defect.

262.    Accordingly, Honda is liable to the Nationwide Class and/or Classes for their damages in an amount to be proven at trial.

263.    On information and belief, Honda has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class members. Honda also continues to conceal material information regarding the Defect.

264.    Honda's acts were done deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class members' rights. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT SIX:**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**(CAL. CIV. CODE §1750, *et seq*.)**
**(On Behalf of the Nationwide Class)**

265.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

266.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

267.    Plaintiffs allege, on information and belief that: (a) the decisions of Honda concerning the advertising, marketing, and warranty policies and procedures emanate from Honda's headquarters in Torrance, California; (b) Honda's decisions on how to present Class Vehicles in advertising in the United States emanate from its headquarters in Torrance, California; (c) decisions as to recalls, services bulletins, and whether to make warranty repairs all emanate from Honda's headquarters in Torrance, California; and (d) the relevant personnel from Honda

work in Honda's headquarters in Torrance, California or coordinate and make decisions concerning the above through facilities and other personnel in Torrance, California. For these reasons, Plaintiffs and the Class' claims emanate from Honda's actions in California and it is appropriate for Honda to be held to comply with California law on a nationwide basis.

268.    Defendant is a "person" as that term is defined in CAL. CIV. CODE §1761(c).

269.    Plaintiffs and the Class members are "consumers" as that term is defined in CAL. CIV. CODE §1761(d).

270.    Honda engaged in unfair and deceptive acts in violation of the CLRA, by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2)  Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5)  Representing that goods or services have sponsorships, approval, characteristics, ingredients, uses, benefits or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

(a)(7)  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9)  Advertising goods and services with intent not to sell them as advertised.

271.    Honda's unfair or deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

272.    Honda knew that the Class Vehicles were defectively designed or manufactured, would prematurely fail to perform their essential function, and were not suitable for their intended use.

273.    Honda was under a duty to Plaintiffs and the Class members to disclose the defective nature of the Class Vehicles and the existence of the Engine Defect because:

(a)    Defendant was in a superior position to know the true state of facts about the Engine Defect and associated repair costs in the Class Vehicles;

(b)    Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles had an Engine Defect until manifestation of the Defect;

(c)    Defendant knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover the Engine Defect and the associated repair costs that it causes until the manifestation of the Defect; and

(d)    Defendant actively concealed the Engine Defect and the associated repair costs by knowingly failing to recall Class Vehicles.

274.    In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Defendant has knowingly and intentionally concealed material facts and breached its duty to disclose.

275.    The facts concealed or not disclosed by Honda to Plaintiffs and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

276.    On September 22, 2022, Plaintiffs mailed Defendant a demand via certified mail pursuant to CAL. CIV. CODE §1782.

277.    Plaintiffs and Class members' injuries were proximately caused by Honda's fraudulent and deceptive business practices.

278.    Plaintiffs and the Class members seek equitable relief, and will amend this claim to seek damages after the notice period.

## COUNT SEVEN:
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE §17200, *et seq.*)
### (On Behalf of the Nationwide Class)

279.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

280.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

281.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." CAL. BUS. & PROF. CODE §17200.

282.    Defendant violated the UCL by engaging in unlawful, unfair, and deceptive business acts and practices.

283.    Defendant is a "person" as defined by CAL. BUS. & PROF. CODE §17201.

284.    Pursuant to CAL. BUS. & PROF. CODE §17204, each of the Plaintiffs named herein, and the members of the proposed Class, have suffered injury in fact and have lost money or property because of the unfair competition set forth herein.

285.    Plaintiffs allege, on information and belief, that: (a) the decisions of Honda concerning the advertising, marketing, and warranty policies and procedures emanate from Honda's Torrance, California headquarters; (b) Honda's advertising decisions on how to present and/or market Class Vehicles in the United States emanate from its headquarters in Torrance, California; (c) decisions as to recalls, services bulletins, and whether to make warranty repairs all emanate from Honda's headquarters in Torrance, California; and (d) the relevant personnel from Honda operate from Honda's headquarters in Torrance, California or coordinate and make decisions concerning the above through facilities and other personnel in Torrance, California. For these reasons, Plaintiffs and the Class' claims emanate from Honda's actions in California and it is appropriate for Honda to be held to comply with California law on a nationwide basis.

286.    Honda's conduct, as described herein, was and is in violation of the UCL. Honda's conduct violates the UCL by, among other things: (a) failing to disclose the existence of the Engine Defect in the Class Vehicles; (b) marketing and promoting the Class Vehicles as being free from defect, including the Engine Defect which causes the Class Vehicles to fail to perform their essential function and creates safety risks; (c) knowingly and intentionally concealing the existence of the Defect in the Class Vehicles; (d) violating California laws, including the CLRA; and (e) breaching its express and implied warranties.

287.    Honda intentionally and knowingly misrepresented and omitted material facts regarding the Class Vehicles with intent to mislead Plaintiffs and other Class members.

288.    In purchasing or leasing the Class Vehicles, Plaintiffs and other Class members were deceived by Honda's failure to disclose the Engine Defect found in the Class Vehicles.

289.    Plaintiffs and other Class members reasonably relied upon Honda's false misrepresentations and omissions. They had no way of knowing that Defendant's representations were false, misleading, and incomplete. As alleged herein, Defendant engaged in a pattern of deception and public silence in the face of a known Engine Defect in the Class Vehicles. Plaintiffs and other Class members did not, and could not, discover Defendant's deception on their own.

290.    Defendant knew or should have known that its conduct violated the UCL.

291.    Defendant owed Plaintiffs and other Class members a duty to disclose the truth about the Engine Defect because the Defect created a safety hazard and Defendant: (a) possessed exclusive knowledge of the Defect; (b) intentionally concealed the Defect from Plaintiffs and the Class; and/or (c) made incomplete representations by failing to warn the public or to recall the Class Vehicles due to the Defect.

292.    Defendant had a duty to disclose the existence of the Defect in the Class Vehicles, because Plaintiffs and other Class members relied on Defendant's material misrepresentations and omissions.

293.    Defendant's conduct proximately caused injuries to Plaintiffs and other Class members that purchased or leased the Class Vehicles and suffered harm as alleged herein.

294.    Plaintiffs and other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and/or other Class members incurred costs related to the Defect, and overpaid for their Class Vehicles that have suffered a diminution in value.

295.    Plaintiffs and the Class members are suffering from continuing injuries because Honda has failed to issue an adequate remedy for the Defect found in each Class Vehicle. Defendant's unlawful acts and practices complained of herein affect the public interest.

296.    Defendant's misrepresentations and omissions alleged herein caused Plaintiffs and other Class members to make their purchases or leases of their Class Vehicles. Absent those misrepresentations and omissions, Plaintiffs and other Class members would not have purchased or leased these vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not suffer from the Engine Defect and failed to live up to industry standards.

297.    Accordingly, Plaintiffs and other Class members have suffered injury-in-fact, including lost money or property, as a result of Defendant's misrepresentations and omissions.

298.    Plaintiffs request that this Court enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant, and order restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under CAL. BUS. & PROF. CODE §17200, including reasonable attorneys' fees and costs under CAL. CIV. PROC. CODE §1021.5.

## COUNT EIGHT:
## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE §17500, *et seq.*)
### (On Behalf of the Nationwide Class)

299.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

300.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

301.    CAL. BUS. & PROF. CODE §17500 states:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .

302.    Honda caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known, to Honda to be untrue and misleading to consumers, including Plaintiffs and Class members.

303.    Honda has violated CAL. BUS. & PROF. CODE §17500 because the misrepresentations and omissions regarding the quality, safety, and reliability of the Class Vehicles and the Defect contained in Class Vehicles as well as the associated safety risks and repair costs that result from it as set forth in this Complaint were material and likely to deceive a reasonable consumer.

304.    Honda has also violated CAL. BUS. & PROF. CODE §17500 because the misrepresentations and omissions regarding the existence of a repair for the Defect and Defendant's ability and intention to render such a repair as set forth in this Complaint were material and likely to deceive a reasonable consumer.

305.    Plaintiffs and Class members have suffered an injury in fact, including the loss of money or property, as a result of Honda's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and Class members relied on the misrepresentations and/or omissions of Honda with respect to the quality, safety, and reliability of the Class Vehicles as well as the existence of a repair for the Defect. Honda's representations turned out to be false because as a result of the Defect that could result in stalling while operating the vehicle under normal driving conditions, and the failure of essential safety features, the Class Vehicles are unsafe, unreliable, and not of high quality. Additionally, no permanent and reliable

repair exists for the Defect. Had Plaintiffs and Class members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.

306.    Accordingly, Plaintiffs and Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

307.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business. Honda's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

308.    Plaintiffs, individually and on behalf of the Class, request that this Court enter such Orders or judgments as may be necessary to restore to Plaintiffs and Class members any money Honda acquired by unfair competition, including restitution and/or restitutionary disgorgement and all other relief allowed under CAL. BUS. & PROF. CODE §17500, including reasonable attorneys' fees and costs under California CAL. CIV. PROC. CODE §1021.5.

**COUNT NINE:**
**BREACH OF EXPRESS WARRANTY**
**(CAL. COM. CODE §§2313, 10210)**
**(On Behalf of the Nationwide Class)**

309.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

310.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

311.    Defendant is a "merchant" (as defined by CAL. COM. CODE § 2104(1)), a "seller" (as defined by CAL. COM. CODE § 2103(d)), and "lessor" of motor vehicles (as defined by CAL. CIV. CODE § 2985.7(b)).

312.    Plaintiffs' and the Class' claims emanate from Honda's actions in California, and thus, the application of California extraterritorially to the claims of the Class in this action is proper. As alleged herein, Honda's advertising, marketing, and warranty policies and procedures emanate from Honda's headquarters in Torrance, California. In addition, upon information and belief, Defendant's advertising decisions emanated from its headquarters in Torrance, California,

as well as its decisions as to recalls, services bulletins, and whether to make warranty repairs. Further, Defendant's relevant personnel are located at facilities in Torrance, California.

313.   Pursuant to CAL. COM. CODE § 2313(a)(1), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

314.   Pursuant to CAL. COM. CODE § 10210(a)(1), "[a]ny affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise."

315.   The Class Vehicles are "goods" within the meaning of the UNIFORM COMMERCIAL CODE and relevant state law, including CAL. COM. CODE § 2105(1).

316.   Defendant provided all purchasers and lessees of the Class Vehicles with the express warranties described herein. In its written express warranties, Defendant expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

317.   Defendant's written express warranties formed the basis of the bargain that was reached when Plaintiffs and other Class members purchased or leased their Class Vehicles.

318.   Defendant breached the express warranties through the acts and omissions described above.

319.   Plaintiffs and other Class members have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because

Plaintiffs and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

320.    Defendant had actual knowledge of the Engine Defect and knew that it was unable to provide adequate remedy under the warranty. Defendant was also provided notice of the Engine Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge and internal investigations. Honda has not remedied its breach.

321.    Further, Defendant has refused to provide an adequate warranty repair for the Engine Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to the Engine Defect have been denied adequate repairs.

322.    The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and other Class members whole and because Defendant has failed and/or has refused to adequately provide effective remedies within a reasonable time.

323.    Accordingly, recovery by Plaintiffs and other Class members is not limited to the limited remedy of repair, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

324.    Also, as alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Defendant improperly concealed material facts regarding its Class Vehicles. Plaintiffs and other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

325.    Honda had notice of its breach as alleged herein. Plaintiffs, individually and on behalf of the Classes, also notified Honda of the Engine Defect and the breach of warranty alleged herein through a notice letter, dated September 22, 2022.

326.    As a direct and proximate result of Defendant's breach of its express warranty, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

327.    Plaintiffs, on behalf of themselves and the Class, seek monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT TEN:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE §§ 2314, 10212)**
**(On Behalf of the Nationwide Class)**

328.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

329.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

330.    Defendant is a "merchant" (as defined by CAL. COM. CODE § 2104(1)), a "seller" (as defined by CAL. COM. CODE § 2103(d)), and "lessor" of motor vehicles (as defined by CAL. CIV. CODE § 2985.7(b)).

331.    The Class Vehicles are "goods" within the meaning of the UNIFORM COMMERCIAL CODE and relevant state law, including CAL. COM. CODE § 2105(1).

332.    Plaintiffs and the Class' claims emanate from Honda's actions in California, and thus, the application of California extraterritorially to the claims of the Class in this action is proper. As alleged herein, Honda's advertising, marketing, and warranty policies and procedures emanate from Honda's headquarters in Torrance, California. In addition, upon information and belief, Defendant's advertising decisions emanated from its headquarters in Torrance, California, as well as its decisions as to recalls, services bulletins, and whether to make warranty repairs. Further, Defendant's relevant personnel are located at facilities in Torrance, California.

333.    Defendant was, at all relevant times, the manufacturer, distributor, warrantor, seller and/or lessor of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

334.     Pursuant to CAL. COM. CODE § 2314(1) "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Goods are merchantable if they are "fit for the ordinary purposes for which such goods are used" and "[c]onform to the promises or affirmations of fact made on the container or label if any." CAL. COM. CODE § 2314(2)(c),(f).

335.     Defendant provided Plaintiffs and other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the Engine Defect at the time of sale that creates the undue risk of the engine stalling while driving. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

336.     Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for providing transportation, and would not result in the vehicles stalling in the middle of traffic.

337.     Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and other Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

338.     Defendant had actual knowledge of the Engine Defect, and wrongfully and fraudulently concealed these material facts from Plaintiffs and the Class. Defendant was provided notice of these issues through, *inter alia*, warranty claims, its defect investigations, complaints posted on the internet, and complaints lodged by consumers with the NHTSA – which Defendant routinely monitors – before or within a reasonable amount of time after the allegations of the Defect became public. Plaintiffs, individually and on behalf of the Classes, also notified Honda of

the Engine Defect and the breach of warranty alleged herein through a notice letter, dated September 22, 2022.

339.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

340.    Plaintiffs and other Class members have had sufficient direct dealings with either Defendant or its agents – such as its dealerships, consumer affairs departments, and technical support – to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiffs and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

341.    Plaintiffs, on behalf of themselves and the Class, seek monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT ELEVEN:**
**BREACH OF EXPRESS WARRANTY**
**(810 ILL. COMP. STAT. 5/2-313, 810 ILL. COMP. STAT. 5/2A-210)**
**(On Behalf of the Illinois Class)**

342.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

343.    Plaintiffs bring this claim individually and on behalf of the other members of the Illinois Class.

344.    Honda is a "merchant" (as defined by 810 ILL. COMP. STAT. 5/2-104(1)), a "seller" (as defined by 810 ILL. COMP. STAT. 5/2-103(1)(d)), and a "lessor" (as defined by 810 ILL. COMP. STAT. 5/2A-103(1)(p)) of Class Vehicles.

345.    The Class Vehicles are "goods" (as defined by 810 ILL. COMP. STAT. 5/2-105(1) and 810 ILL. COMP. STAT. 5/2A-103(h)).

346.    Pursuant to 810 ILL. COMP. STAT. 5/2-313(1)(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

347.    Pursuant to 810 ILL. COMP. STAT. 5/2A-210(1)(a), "[a]ny affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise."

348.    In its written express warranties, Honda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

349.    Honda's written express warranties formed the basis of the bargain that was reached when Plaintiffs and other Class members purchased or leased their Class Vehicles.

350.    Honda breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and Class members with Class Vehicles containing a Defect that was never disclosed to Plaintiffs and Class members; (b) failing to repair or replace the Class Vehicles at no cost within the warranty periods; and (c) supplying products and materials that failed to conform to the representations made by Honda.

351.    Plaintiffs and Class members have given Honda a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Honda can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

352.     The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and other Class members whole and because Honda has failed and/or has refused to adequately provide effective remedies within a reasonable time.

353.     Accordingly, recovery by Plaintiffs and other Class members is not limited to the limited remedy of repair, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

354.     Also, as alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Honda improperly concealed material facts regarding its Class Vehicles. Plaintiffs and other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

355.     Honda had notice of its breach as alleged herein.

356.     As a direct and proximate result of Honda's breach of its express warranty, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

**COUNT TWELVE:**
**BREACH OF IMPLIED WARRANTY OR MERCHANTABILITY**
**(810 ILL. COMP. STAT. 5/2-314, 810 ILL. COMP. STAT. 5/2A-212)**
**(On Behalf of the Illinois Class)**

357.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

358.     Plaintiffs bring this claim individually and on behalf of the other members of the Illinois Class.

359.     Honda is a "merchant" (as defined by 810 ILL. COMP. STAT. 5/2-104(1)), a "seller" (as defined by 810 ILL. COMP. STAT. 5/2-103(1)(d)), and a "lessor" (as defined by 810 ILL. COMP. STAT. 5/2A-103(1)(p)) of Class Vehicles.

360.     The Class Vehicles are "goods" (as defined by 810 ILL. COMP. STAT. 5/2-105(1) and 810 ILL. COMP. STAT. 5/2A-103(h)).

361.     Pursuant to 810 ILL. COMP. STAT. 5/2-314(1), "a warranty that the goods shall be

merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

362.    Pursuant to 810 ILL. COMP. STAT. 5/2A-212(1), "a warranty that the goods will be merchantable is implied in a lease contract if the lessor is a merchant with respect to goods of that kind."

363.    Goods are merchantable if they are "fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations of fact made on the container or label if any." 810 ILL. COMP. STAT. 5/2-314(2)(c), (f); 810 ILL. COMP. STAT. 5/2A-212(2)(c), (f).

364.    Defendant was, at all relevant times, the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

365.    Defendant provided Plaintiffs and other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the Engine Defect at the time of sale that creates the undue risk of the engine stalling while driving. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

366.    Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Defendant, were safe and reliable for providing transportation, and would not result in the vehicles stalling in the middle of traffic.

367.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and other Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

368.    Defendant had actual knowledge of the Engine Defect, and wrongfully and fraudulently concealed these material facts from Plaintiffs and the Class. Defendant was provided notice of these issues through, *inter alia*, warranty claims, its defect investigations, complaints posted on the internet, and complaints lodged by consumers with the NHTSA – which Defendant routinely monitors – before or within a reasonable amount of time after the allegations of the Defect became public. Plaintiffs, individually and on behalf of the Classes, also notified Honda of the Engine Defect and the breach of warranty alleged herein through a notice letter, dated September 22, 2022.

369.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

370.    Plaintiffs and other Class members have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Defendant was also aware that the ultimate consumers of the Class Vehicles (*i.e.*, the Class) required vehicles that would function safely, could be relied upon, and otherwise meet minimum industry standards. Additionally, privity is excused here because Plaintiffs and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

371.    Plaintiffs, on behalf of themselves and the Class, seek monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT THIRTEEN:**
**BREACH OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILL. COMP. STAT. §505/1 *et seq.*)**
**(On Behalf of the Illinois Class)**

372.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

373.   Plaintiffs bring this claim individually and on behalf of the other members of the Illinois Class.

374.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits unfair or deceptive acts or practices in connection with any trade or commerce, "including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILL. COMP. STAT. 505/2. The Illinois CFA also prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

375.   Honda has violated the Illinois CFA's prohibition on deceptive conduct in that it used unconscionable business practices by failing to disclose to Plaintiffs and other members of the Class, in its public statements touting the safety of the Class Vehicles including at the point of sale, that the Class Vehicles contain the Engine Defect.

376.   As a direct and proximate result of Honda's conduct, Plaintiffs and other members of the Class have been harmed in that they purchased Class Vehicles they otherwise would not have; paid more for Class Vehicles than they otherwise would have; and are left with Class Vehicles of diminished value and utility because of the Defect. Meanwhile, Honda has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

377.    Plaintiffs seek damages and appropriate equitable relief, including an Order requiring Honda to adequately disclose and repair the Defect, and an Order enjoining Honda from incorporating the Defect into its vehicles in the future.

378.    Based on the foregoing, Plaintiffs and the Class are entitled to all remedies available pursuant to the Illinois CFA, including refunds, actual damages, liquidated damages, punitive damages, attorneys' fees, and other reasonable costs. Plaintiffs and the Class also request that the Court award equitable relief, including an Order requiring Honda to adequately disclose and repair the Defect and an Order enjoining Honda from incorporating the Defect into its vehicles in the future.

**COUNT FOURTEEN:**
**BREACH OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILL. COMP. STAT. § 505/1 *et seq*.)**
**(On Behalf of the Illinois Class)**

379.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

380.    Plaintiffs brings this claim individually and on behalf of the other members of the Illinois Class.

381.    The Illinois CFA prohibits unfair or deceptive acts or practices in connection with any trade or commerce, "including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILL. COMP. STAT. 505/2. The Illinois CFA also prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

382.    As alleged more fully herein, Honda has violated Illinois' prohibition on unfair conduct because its acts, omissions, policies, and course of conduct: (a) offend public policy; (b) are immoral, unethical, oppressive, and unscrupulous; and (c) cause substantial injury to consumers in violation of the Illinois CFA. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d

403, 417 (2002). Its unfair business practices include failing to disclose, at the point of sale or otherwise, that the Class Vehicles contain the Engine Defect and pose a safety hazard.

383.    As a direct and proximate result of Honda's conduct, Plaintiffs and other members of the Class have been harmed in that they purchased Class Vehicles they otherwise would not have; paid more for Class Vehicles than they otherwise would have; and are left with Class Vehicles of diminished value and utility because of the Defect. Meanwhile, Honda has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

384.    Plaintiffs seek damages and appropriate equitable relief, including an Order requiring Honda to adequately disclose and repair the Defect, and an Order enjoining Honda from incorporating the Defect into its vehicles in the future.

385.    Based on the foregoing, Plaintiffs and the Class are entitled to all remedies available pursuant to the Illinois CFA, including refunds, actual damages, liquidated damages, punitive damages, attorneys' fees, and other reasonable costs. Plaintiffs and the Class also request that the Court award equitable relief, including an Order requiring Honda to adequately disclose and repair the Defect and an Order enjoining Honda from incorporating the Defect into its vehicles in the future.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully pray that the Court:

A.    Issue an Order certifying this action as a class action pursuant to Rule 23 of the FEDERAL RULES OF CIVIL PROCEDURE; declaring that Plaintiffs are proper Class representatives; and appointing Plaintiffs' counsel as Class Counsel;

B.    Award Plaintiffs and Class members damages, restitution, and disgorgement in an amount to be determined at trial;

C.    Order appropriate injunctive and/or declaratory relief, including, but not limited to, an Order that requires Defendant to repair, recall, and/or replace the Class Vehicles and to extend

the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Defect;

      D.     Award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses, including pursuant to CALIFORNIA CODE OF CIVIL PROCEDURE §1021.5;

      E.     Award pre- and post-judgment interest at the maximum legal rate; and

      F.     Grant all such other relief as is just and proper.

## X.   DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable.

DATED:  September 28, 2022

*s/ Elizabeth A. Fegan*

FEGAN SCOTT LLC
ELIZABETH A. FEGAN
150 South Wacker Drive, 4th Floor
Chicago, IL  60606
Telephone:  312/741-1019
312/264-0100 (fax)
beth@feganscott.com

FEGAN SCOTT LLC
JONATHAN D. LINDENFELD
(*pro hac vice* to be filed)
140 Broadway, 46th Floor
New York, NY  10005
Telephone:  332/216-2101
312/264-0101 (fax)
jonathan@feganscott.com

LAW OFFICES OF DAVID FREYDIN
DAVID FREYDIN
8707 Skokie Blvd # 312,
Skokie, IL 60077
Telephone:  312/544-0365
866/575-3765 (fax)
david.freydin@freydinlaw.com

SHINDLER, ANDERSON, GOPLERUD
   & WEESE, PC
J. BARTON GOPLERUD
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA  50265
Telephone:  515/223-4567
515/223-8887 (fax)
goplerud@sagwlaw.com


*Attorneys for Plaintiffs and the Proposed Classes*